## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| SAINT LOUIS UNIVERSITY, )<br>a Missouri benevolent corporation, )<br> )<br>           Plaintiff, )<br> )<br>v. )<br> )<br>AVIS MEYER, )<br> )<br>           Defendant. )<br> ) | Case No. 4:07-cv-01733 |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FULL AND COMPLETE INTERROGATORY ANSWERS (d/e 34)

COMES, NOW, Defendant, Avis Meyer ("Meyer"), by and through his attorneys of record, and opposes St. Louis University's ("Plaintiff" or "SLU") Motion (d/e 34) to Compel Full and Complete Interrogatory Answers from Meyer.

As discussed in greater detail below, Meyer through interrogatory responses and testimony from his deposition has answered Plaintiff's interrogatories fully and completely and are based on Meyer's knowledge, information and good faith interpretation of those interrogatories. *See* Exhibit A attached hereto, Meyer's Answer to Interrogatories. Moreover, with respect to Interrogatory No. 12, which requests information about media outlets with whom Meyer has spoken, to the extent Meyer may have misunderstood the Interrogatory or failed to remember interviews, there is no harm to Plaintiff because Plaintiff was already aware of such interviews. Clearly, there is no nefarious plan by Meyer to attempt to hide the existence of interviews that are the subject of a public broadcast or article, particularly when both parties were interviewed or were requested to be interviewed Plaintiff has the opportunity to explore,

1

and did fully explore, the details of such interviews in Meyer's deposition, and no harm has resulted nor is there any need to update such interrogatory to include information resulting from the deposition.

Plaintiff's motion to compel is moot because Plaintiff is fully within possession of all of the facts relevant to each interrogatory.

I. **NOTWITHSTANDING PLAINTIFF'S ARGUMENT OTHERWISE, UPDATING THE INTERROGATORIES WOULD BE MOOT BECAUSE PLAINTIFF IS IN POSSESSION OF ALL RELEVANT FACTS**

   A. **Nothing in Meyer's Deposition Contradicts His Answer to Interrogatory No. 2**

Plaintiff's Interrogatory No. 2 states:

> 2. Identify all persons with knowledge of the Non-Profit Organization, including but not limited to those persons with knowledge of the Non-Profit Organization's:
> a. Formation;
> b. Incorporation;
> c. Existence;
> d. Dissolution or Termination.

*See* Exhibit 1 to Plaintiff's Motion, (d/e 34, p.5).

Meyer objected to the vagueness of "all persons with knowledge of the Non-Profit Organization" for Interrogatory No. 2. *See* Exhibit A, Answers to Interrogatories, p. 2. Meyer answered these two interrogatories by stating that he and then-*University News* editor Diana Benanti were persons with such knowledge.[1] Id.

During Meyer's deposition, in response to Plaintiff's questioning, Meyer stated with respect to knowledge of Meyer's formation of the non-profit organization, that at some point in time, "The staff [of the *University News*] probably knew about it by that time." See Exhibit B,

---

[1] By the time of the filed complaint (d/e/ 1), Diana Benanti had transferred out of SLU since SLU withdrew her tuition remission (provided as editor of the *University News*) the previous school year. *See* Exh. B, Meyer Depo., at p. 125.

June 4, 2008 Deposition of Avis Meyer, 138:1-2. Plaintiff attempts to use this statement to show that Meyer's response to Interrogatory 2 is incomplete. However, this statement does not prove that Meyer's answer to Interrogatory 2 is incomplete because Meyer's deposition answer states only that the *University News* staff **may** have been aware of formation of a non-profit organization. The statement does not establish that these individuals had knowledge of the formation of the organization. The term "knowledge" has many possible definitions *(See* <u>Exhibit C</u> attached hereto, printout of *Dictionary.com* dictionary entries for "knowledge"), but pertinent definitions require one "with knowledge" to have firsthand understanding through facts and not merely one who discovers by rumor or hearsay. Moreover, Meyer's deposition answer does not even definitively conclude that the staff was aware through rumor or hearsay.

At most, Meyer's testimony establishes that certain individuals on the *University News* staff may have been aware of the formation of the non-profit organization through rumor or hearsay, which does not amount to knowledge of such fact. As such, though Plaintiff has gone to great lengths to create a conflict between Meyer's testimony and the response to Interrogatory No. 2, no such conflict exists.

Plaintiff's counsel also makes much about Meyer's misunderstanding in the deposition that Interrogatory No. 2 required the identification of people who were familiar with all four subparts of Interrogatory No. 2, rather than any of the four subparts.[2] To the extent Meyer misunderstood the Interrogatory when preparing his answers and not merely while under the pressure of his deposition, the error is harmless because, as Plaintiff's counsel elicited during the deposition, no other parties need be identified.

Even if Meyer should have included the staff of the *University News* as an answer to Interrogatory No. 2, there is no prejudice to Plaintiff because Plaintiff is now aware of the staff's

---

[2] See <u>Exh. B</u>, Meyer Dep., pp. 137-139 regarding his understanding of Interrogatory No. 2

potential awareness and has the full opportunity to subpoena the staff of the *University News* to determine their knowledge of the non-profit organization.

The duty to update interrogatory responses generally does not include information disclosed to the opposing party in a deposition. See Rule 26(e)(1); *Tlamka v. Serrell*, 2002 WL 500656 (D.Neb. 2002); *see Farmland Indus., Inc. v. Morrison-Quirk Grain Corp.*, 54 F.3d 478, 482 (8th Cir. 1995) (deficiencies in a party's disclosures do not require amendments or additional disclosures if the deficiencies are remedied in deposition testimony); *see also Coleman v. Keebler Co.,* 997 F.Supp. 1102, 1107 (N.D. Ind. 1998) (plaintiff was not required to supplement initial disclosures to include names of two additional witnesses whom she brought to defendant's attention during course of the deposition questioning).

As such, ***even if Plaintiff were correct*** that the staff of the *University News* should have been identified in response to Interrogatory No. 2, its present motion to compel should still fail because Plaintiff received the additional information in response to deposition questions.

### B. Nothing in Meyer's Deposition Contradicts His Answer to Interrogatory No. 4

Plaintiff's Interrogatory No. 4 states:

> 4. Identify all persons with whom you have communicated regarding the Non-Profit Organization, including but not limited to those persons with whom you have communicated concerning the Non-Profit Organization's:
> a. Formation;
> b. Incorporation;
> c. Existence;
> d. Dissolution or termination.

Plaintiff's argument that it has not received a complete response with respect to Interrogatory No. 4 are not meritorious. Plaintiff's counsel was provided with a full opportunity at Meyer's deposition to obtain answers to its questions regarding with whom Meyer

4

communicated regarding the nonprofit organization, which it fully utilized. The fact is that no such other parties exist beyond the individual identified in response to the Interrogatory.[3]

This objection to Meyer's response to Interrogatory No. 4 represents nothing more than an attempt to drive up the costs of this litigation to punish Meyer. Plaintiff's counsel does not contend that Meyer was untruthful at his deposition where Meyer was fully questioned on the matter. Therefore, it is difficult to understand how Meyer needs to amend Interrogatory No. 4 when his deposition exposes no inconsistencies with his answer to Interrogatory No. 4.

Again, Plaintiff's counsel complains about Meyer's misunderstanding in his deposition that Interrogatory No. 4 required only the identification of people who were familiar with all four subparts of Interrogatory No. 4 and not merely a single subpart. Again, to the extent Meyer might have made the same error when making his interrogatory responses and not merely under the pressure of his deposition, the error is harmless because no other parties need be identified.

### C.  Meyer Has Identified All Facts Relevant To Interrogatory No. 9

Plaintiff's Interrogatory No. 9 states:

> Identify all facts concerning the dissolution or termination of the Non-Profit Organization on or about August 21, 2007, including but not limited to the reason the Non-Profit Organization was dissolved and/or terminated.

Plaintiff argues that Meyer's answer to Interrogatory No. 9 explains the "why" of the dissolution but Meyer did not provide the "who, what, when and where" of the dissolution. *See* Plaintiff's Memo (d/e 35, p. 5). However, as Meyer testified at his deposition, there was no "who, what, when and where" as the dissolution was Meyer's decision in light of the *University News'* decision to accept the charter offered by St. Louis University for its operation on that campus. See Exh. B, Meyer Dep., at p. 146. Meyer filed the paperwork for the articles of

---

[3] *See* Exh. B, Meyer Dep., p. 146 regarding then-editor K. Lewis' acceptance of the revised charter as opposed to communications regarding the corporation paperwork.

5

incorporation as <u>reserving</u> the disputed name <u>should</u> the students decide to make the paper independent from the SLU and <u>should</u> the students decide to continue under the name as filed with the Secretary of State. *See* <u>Exh. B</u>, Meyer Dep., pp. 76:12-14, 87:3-5 and 171:16-23. Meyer further testified that since the editor of the *University News* accepted the new charter from Plaintiff, Meyer saw no reason "to save" the name for the students. *See* <u>Exh. B</u>, Meyer Dep., p. 146:18-19. Accordingly, Meyer answered that he dissolved the non-profit organization "because a decision was made that the non-profit corporation was not necessary and would not be utilized." *See* <u>Exh. A</u>, Answers to Interrogatories, p. 6.

In moving for further responses to Plaintiff's interrogatories, Plaintiff initially argues that Meyer's creation and dissolution of the non-profit corporation goes to the "very heart" of infringement and dilution of Plaintiff's intellectual property. *See* Plaintiff's Memo (d/e 35, p. 2). For the counts of this complaint, though, trademark infringement "is defined by § 32(1) and 43(a) of the Lanham Act 15 U.S.C. §§ 114(a) and 1125(a)(1) and requires a finding of 'use in commerce'" of the offending term. *Carey Licensing, Inc. v. Erlich,* 2007 WL 3146559, *6 (E.D. Mo. 2007); s*ee also Allen Homes Inc. v. Weersing,* 510 F.2d 360 (8th Cir. 1975) (trademark rights are conferred by use of the mark in commerce). With respect to the more innocuous act of filing incorporation and dissolution papers, "it is hornbook rule of law that a trademark must be appurtenant to some existing enterprise to which it is related. . . no rights are required through mere invention or creation of a name or symbol, or mere adoption or the intention to use it. The gist of trademark rights is its actual use in trade." *Modular Cinemas of America, Inc. v. Mini Cinema Corp.,* 348 F.Supp. 578, 582 (D.N.Y. 1972)(holding that it is axiomatic that use and not priority of incorporation is decisive).

Plaintiff continues its argument by stating Meyer gave the "incredible response" that

6

Meyer counted himself twice on the voting persons of the nonprofit corporation dissolution papers.[4] See Plaintiff's Memo, (d/e 35, p. 5). Meyer testified that prior to filing the at-issue corporation paperwork, he had never registered an entity with the Secretary of State. *See* Exh. B, Meyer Dep., p. 84:82. In filing this paperwork, Meyer did not seek professional assistance, but instead, received assistance from a clerk at the Secretary of State's office. *See* Exh. B, Meyer Dep., p. 88:15-17.

Meyer testified that he thought the paperwork was "registering a name" and the paperwork was the only way he could register it according to the clerk at the Secretary of State's Office. *See* Exh. B, Meyer Dep., p. 90:5-6. Meyer testified that "I filled the blanks according to what they [Secretary of State] told me." *See* Exh. B, Meyer Dep., p. 92:11-12. In particular, Meyer testified that that the clerk needed to know "what agent represents this organization, and so, I said 'I put what?' And she said "put organization agent", so I said 'okay'". *See* Exh. B, Meyer Dep., p. 80:5-9. Upon filing the dissolution paperwork, Meyer filled out the number of memberships outstanding as "two" stating:

> "I'm thinking of myself as Organizing Agent and Secretary, both" *See* Exh. B, Meyer Dep., p. 170:13-14; and

> "I might have been thinking about Diana and I might have been thinking about myself as Secretary and Organizing Agent. It was done quickly, as you can see from the scribble, just to get it done. Never any intention to mislead." *See* Exh. B, Meyer Dep., p. 172:11-15.

Plaintiff continues its argument that Meyer "for some reason used SLU letterhead" for his dissolution correspondence with the Secretary of State. *See* Plaintiff's Memo (d/e 35, p. 5).

---

[4] Plaintiff is less than forthcoming when it states: "This is important because Meyer provided SLU with a different set of papers than were actually submitted to the Secretary of State, raising questions as to his willingness to provide SLU with accurate information." See Motion (d/e 35, p.5). In fact, prior to the inception of this litigation, Meyer directly provided a copy of dissolution papers to Plaintiff's counsel and during discovery Meyer provided a copy of the filed stamped dissolution papers indicating "two" voters.

7

During questioning on why Meyer used this letterhead, Meyer answered "It's what I had at hand when I did it." See *Exh. B*, Meyer Dep., p. 73:15. Counsel continued questioning "And was that the only reason that you used University letterhead?" *See* Exh. B, Meyer Dep., p. 73:21-22. Meyer answered "It's what I had available." *See* Exh. B, Meyer Dep., p. 73:23-24. Counsel continued questioning "You didn't have any personal paper available?" *See* Exh. B, Meyer Dep., p. 73:25. Meyer answered "Apparently not, or I wouldn't have used this. There is a pile of paper near the computer. It's probably what I used to crank [it] out." *See* Exh. B, Meyer Dep., p. 74:1-3.

Therefore, having received at Meyer's deposition further information which Plaintiff apparently seeks, it is difficult to understand what more can be accomplished through Plaintiff's motion to compel, other than to needlessly increase costs.

### D. Meyer's Deposition Testimony Identifies All Facts Relevant to Interrogatory No. 12, Such That A Motion to Compel Is Moot

Plaintiff's Interrogatory No. 12 states:

> Identify all facts concerning any interviews you granted or participated in, including but not limited to any interview with KWMU or St. Louis Magazine, during which the Non-Profit Organization or Saint Louis University's campus paper, *The University News,* was discussed or mentioned.

Meyer objected to this Interrogatory as *inter alia* vague and overly burdensome because it requested information within Plaintiff's control. Meyer did not recite facts concerning the interviews because "facts concerning the interviews" is overly vague and reciting every "fact" related to an interview is overly burdensome. Regardless, Plaintiff had a full opportunity to depose Meyer on every fact of any interviews given by Meyer to the media making any omission by Meyer harmless. In short, Meyer does not have a nefarious plan to intentionally omit the existence of media interviews, particularly when the results of such interviews will be a public

broadcast or newspaper article. With respect to further communications regarding the press, Meyer provided the following reporter information: Charles Klotzer and Roy Malone of the *St. Louis Journalism Review* (*See* Exh. B, Meyer Dep. p. 27:4); Matt Frank, Matt Hathaway and Kavita Kumar of the *Post Dispatch* (See Exh. B, Meyer Dep. p. 27:7-9); an unremembered person from the *Chronicle of Higher Education* (*See* Exh. B, Meyer Dep. p. 27:12-13); and an unremembered person from the *Student Press Law Center* (*See* Exh. B, Meyer Dep. p. 27:17-20).

Therefore, Meyer submits that Plaintiff's motion to compel is moot because Meyer has already provided the information that Interrogatory No. 12 seeks through his depositions answers.

**II.     MEYER SHOULD NOT BE ORDERED TO PAY THE ATTORNEY'S FEES AND COSTS ASSOCIATED WITH PLAINTIFF'S MOTION**

As discussed above, Meyer submits that this Court should not grant Plaintiff's Motion to Compel because Plaintiff has been provided with all information relevant to Interrogatories 2, 4, 9 and 12 and there is no further information to supplement Meyer's interrogatory answers.

Plaintiff's motion seeks an award of attorneys' fees incurred by Plaintiff in preparing its motion to compel. See Plaintiff's Memo (d/e 35, p.6). However, a court should not award expenses if the court finds there was a justifiable reason for opposing the motion. *Davis v. U.S Bancorp*, 383 F.3d 761 (8th Cir. 2004).

Further, the sanctions under Rule 37 of the Federal Rules of Civil Procedure are not mandatory sanctions. *Whittle v. Blankenship*, 2007 WL 4287725 (E.D. Mo. 2007)(*citing Davis v. U.S. Bancorp*, 383 F.3d 761 (8th Cir. 2004)). In *Davis*, the court held that the courts "may find the party's failure to include a witness in the initial Rule 26(a)(1) disclosures was substantially justified or harmless. *Davis*, 383 F.3d at 766 (citing Rule 37(c)(1)). Meyer submits that any

alleged omission by him in his interrogatory responses is harmless because Plaintiff's counsel fully explored the area of each interrogatory question with him during deposition, thereby rendering any motion to compel moot. Simply put, Plaintiff is in possession of all of the information for which it seeks.

Moreover, the Eighth Circuit has adopted a narrow reading of Rule 37(d) and held that the award of monetary sanctions under Rule 37(d) is limited to reimbursement for reasonable expenses and not for the purpose of punishment or deterrence. *Ranger Transp., Inc. v. Wal-Mart Stores*, 903 F.2d 1185, 1188 & n.5 (8th Cir. 1990). Meyer submits that the filing of a motion to compel the updating of interrogatories for which Plaintiff is already in possession of all relevant information is not a reasonable expense for which Plaintiff is entitled to reimbursement.

### III. CONCLUSION

For the reasons set forth above, Meyer respectfully requests the Court to deny Plaintiff's Motion to Compel Full and Complete Interrogatory Answers from Defendant Avis Meyer in its entirety.

Respectfully Submitted,

By: */Brian J. Gill*
Brian J. Gill, #57,324
Nelson D. Nolte, #53,470
Scott A. Smith, #55,870
Polster, Lieder, Woodruff & Lucchesi, L.C.
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131-3615
(314) 238-2400
(314) 238-2401 (fax)

E-mail: nnolte@patpro.com
E-mail: ssmith@patpro.com

E-mail: bgill@patpro.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2008, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

        Frank B. Janoski, #3480
        Bridget Hoy, #109375
        Lewis, Rice & Fingersh, L.C.
        500 North Broadway, Suite 2000
        St. Louis, Missouri 63102
        T (314) 444-7600
        F (314) 241-6056
        E-Mail:  fjanoski@lewisrice.com
                bhoy@lewisrice.com

ATTORNEYS FOR PLAINTIFF

*s/Brian J. Gill*