**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAINT LOUIS UNIVERSITY, | ) | |
| a Missouri benevolent corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. <u>4:07-cv-01733</u> |
| v. | ) | |
| | ) | |
| AVIS MEYER, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AVIS MEYER'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I-VI OF THE**</u>
<u>**COMPLAINT**</u>

I.      <u>INTRODUCTION</u>

On October 11, 2007, Plaintiff Saint Louis University (hereafter "Plaintiff" or "SLU")
filed its Complaint (d/e 1) in the U.S. District Court for the Eastern District of Missouri against
Defendant Avis Meyer ("Defendant" or "Avis" or "Dr. Meyer") seeking: under Count I
trademark infringement under 15 U.S.C. § 1114 of the registered mark SAINT LOUIS
UNIVERSITY; under Counts II and III trademark infringement and false designation of origin
under 15 U.S.C. § 1125(a) and Missouri common law of the unregistered terms "The University
News" and "A Student Voice Serving St. Louis University Since 1921"; under Count IV unfair
competition based upon unspecified marks under 15 U.S.C. § 1125(a); under Count V unfair
competition based upon the terms "The University News" and "A Student Voice Serving St.
Louis University Since 1921" under Missouri Common Law; and, under Count VI dilution of the
terms "Saint Louis University," "The University News," and the caption "A Student Voice
Serving Saint Louis University Since 1921" under Missouri Revised Statute § 417.061, *et seq.*

1

Dockets.Justia.com

Plaintiff's allegations of infringement are baseless and asserted without any genuine factual support. Accordingly, Dr. Meyer now seeks summary judgment in his favor as to Counts I-VI. Specifically, Counts I-VI of Plaintiff's complaint require that Plaintiff show use of the alleged trademark in commerce by Meyer. The only act which Dr. Meyer undertook with respect to the marks in question is that he registered a nonprofit corporation in the name of "The University News, A Student Voice Serving St. Louis University Since 1921." It is indisputable that Dr. Meyer dissolved the nonprofit corporation only months later and before this suit and never established a newspaper or even took any concrete steps toward the establishment of a newspaper. Because Plaintiff can show no use in commerce by Dr. Meyer of any of its alleged marks, Dr. Meyer is entitled to summary judgment.

II.     BACKGROUND

Avis Meyer is a tenured professor who is presently employed by Plaintiff and has been for over thirty years. (Dep. of Avis Meyer, p. 33, ll. 1-25 , attached hereto as Exhibit 1 and referred to hereinafter as "Exh. 1"). Since 1974, Avis has been an adviser for the *University News*, a campus student newspaper. (Affidavit of Avis Meyer, ¶2, attached hereto as Exhibit 2 and referred to hereinafter as "Exh. 2").[1] Plaintiff, through its own website, describes Avis as "one of the ten most memorable, influential and effective teachers" at Saint Louis University. (Exh. 2 at ¶ 3). Plaintiff continues to describe Avis as "[o]ne of the most honored teaching faculty on campus." (Exh. 2 at ¶ 3). Plaintiff even established the "Avis Meyer Outstanding Adviser Award." (Exh. 2 at ¶ 3). The student newspaper has established the "Avis Meyer U. News Staff and Alumni Scholarship". (Exh. 2 at ¶ 3). Additionally, Avis has received numerous other awards. (Exh. 2 at ¶ 3).

---

[1] On or about June 3, 2008, Plaintiff informed Avis that he was not allowed in the publishing room of the student newspaper. (Exh. 2 at ¶ 2 ).

As advisor of the *University News*, Avis would work eight to ten hours on the weekly publication at night mainly as a copy editor. (Exh. 1 p. 42, ll. 8-14). As advisor, Avis "hardly ever" attended *University News* staff meetings, but rather granted the students freedom and independence to operate the newspaper. (Exh. 1 p. 61, ll. 24-25; p. 62, ll. 1-15). On occasion, Avis would write obituaries for the *University News* but did not write editorials for the *University News*. (Exh. 1 p. 45, l. 24; p. 46; l. 5). Instead, Avis reviewed editorials for grammar and punctuation as opposed to content. (Exh. 1 p. 46, ll. 4-7). For his service to the *University News*, Avis was paid by Plaintiff a yearly stipend of $1,500. (Exh. 1 p. 45, l. 15).

In the Spring of 2007, Plaintiff was in the process of revising the charter for the *University News*. (Exh. 1 p. 76, l. 16; p. 108, l. 22). The student staff of the *University News* were concerned that the new charter would end the independence of the newspaper based on the language of the new charter. (Exh. 1 p. 76, ll. 17-18). In review of a draft charter, the student staff of the *University News* considered moving the student newspaper off-campus. (Exh. 1 p. 108, ll. 1-6; p. 148, ll. 12-25; p. 149, ll. 1-4). Since the student staff had considered moving the student newspaper off-campus, Avis filed, with the Missouri Secretary of State on March 16, 2007, articles of incorporation for a non-profit organization titled: "University News, A Student Voice Serving Saint Louis University Since 1921." (Exh. 1 p. 86, ll. 10-19). In particular, Avis filed this paperwork to "save the name" for the students in case the student staff decided not to accept a revised charter and also decided to move the newspaper off-campus. (Exh. 1 p. 76, ll. 2-3, ll. 12-14; p. 87, ll. 3-5; p. 128, ll. 21-25-p. 129, l. 1).

Prior to this filing, Avis had never registered an entity with the Secretary of State. (Exh. 1 p. 83, ll. 24-25; p. 84, ll. 1-2). A clerk at the Secretary of State's office assisted Avis in filling out the incorporation paperwork. (Exh. 1 p. 88, ll. 15-18). This clerk also conducted an online

archive name search for the name "University News" and for the name "University News, A Student Voice Serving Saint Louis University Since 1921." (Exh. 1 p. 88, ll. 18-25; p. 89, ll. 1-3). Avis did not obtain legal or business advice on filing the articles of incorporation. (Exh. 2 ¶4).

In April of 2007, there was a meeting between the student staff and the Plaintiff regarding a revised charter. (Exh. 1 p. 162, ll. 22-23; p. 163, ll. 1-2). The Plaintiff's Board of Trustees at this time had not decided on a final version of the revised charter. (Exh. 1 p. 132, ll. 4-7). Further, about this time, the semester ended, and Avis took a two-month trip abroad during the summer recess. (Exh. 1 p. 71, ll. 13-15). While out of the country, Plaintiff sent, on June 22, 2007, a letter to Dr. Meyer regarding the filed incorporation paperwork. (Exh. 1 p. 70, ll. 6-7). Avis's daughter signed for receipt of the letter, as Avis was out of the country. (Exh. 1 p. 71, ll. 13-14). Avis curtailed his trip abroad and returned home in early August of 2007 to attend to a brother who suffered a heart attack and to attend to a sick father. (Exh. 1 p. 146 ll. 22-25; p. 147, ll. 1-7).

On August 16, 2007, Plaintiff sent another letter to Avis Meyer regarding the incorporation papers. (Exh. 1 p. 71, l. 25; p. 72, ll. 16-17). Around this time, the editor of the *University News* told Avis that the student staff had decided to accept the revised charter. (Exh. 1, p. 131, ll. 1-2). On or about August 21, 2007, Avis filed with the Secretary of State papers dissolving the non-profit corporation and forwarded the dissolution paperwork to SLU via its counsel. (Exh. 1 p. 72, l. 17; 169, ll. 15-18; Exh. 2 ¶ 4). Avis Meyer did not seek legal assistance or business assistance in filing the dissolution papers; but instead, spoke via telephone with a clerk with the Secretary of State's office regarding the requirements for dissolution papers. (Exh. 1 p. 83, ll. 7-20).

Although from March 16, 2007 to August 21, 2007, there was registered at the Missouri Secretary of State a non-profit corporation by the name of "The University News, A Student Voice Service St. Louis University Since 1921," Avis did not undertake any action to start a newspaper or conduct *any* business in the name of the non-profit corporation registered with the Secretary State or using Plaintiff's trademarks. (Exh. 1 p. 197, ll. 14-20). No board of directors was ever established for the non-profit corporation. (Exh. 1 p. 81, ll. 23-24 to p. 82, ll. 2-3).

Simply put, Plaintiff has failed in its burden to come forward with evidence that at least establishes a genuine issue of material fact that could support its allegations that Meyer has used Plaintiff's trademarks "in commerce." Despite the Plaintiff's failed burden, Avis has offered without an admission of wrongdoing to an injunction enjoining him from using "Saint Louis University"; "The University News", and the caption "A Student Voice Serving Saint Louis University Since 1921" or any confusingly similar variation, except to the extent that any such usage is a "fair use," for example in describing Avis' previous work with the student newspaper and in Avis' current work as professor. (Exh. 2, ¶ 8).

III.    DISCUSSION OF APPLICABLE LAW

    A.    The Standard For Summary Judgment

In 1986, the Supreme Court handed down a trilogy of cases that has made summary judgment a more useful tool to weed out factually baseless claims, particularly where, as here, the non-moving party has the burden of proof. *Matsushita Electrical Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). This Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Celotex Corp.477 U.S. at* 322. The substantive law determines which facts are critical and which are non-relevant, wherein "[o]nly disputes over facts that might affect the outcome will properly preclude summary judgment." *Anderson,* 477 U.S. at 248. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

Under Fed. R. Civ. P. 56(c), "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleadings…" When affidavits or other evidence of record pierce the allegations, the burden shifts to the non-moving party to respond with affidavits or other evidence of record to show genuine issues of facts for trials. *Anderson*, 477 U.S. at 248. Thus, in a summary judgment motion, the burden is on the moving party to demonstrate "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.

Thus, once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of *material fact*, not the mere existence of some alleged factual dispute. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 247. For a summary judgment decision, the Court must view the facts in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255. The Court's function, however, is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.*

B. <u>The Law Of Federal Trademark Infringement and Unfair Competition Require That SLU Show That Dr. Meyer Has Used The Alleged Trademarks "In Commerce"</u>

In a suit for federal trademark infringement or unfair competition, Plaintiff must prove <u>use in commerce</u> of the alleged mark. Congress has the power to regulate trademarks under the

Commerce Clause of the U.S. Constitution. *U.S. Const. art. I, § 8 cl. 3.* Use "in commerce" means commerce that Congress has the power to regulate under the Constitution's Commerce Clause. Sections 32(1) and 43(a) of the Lanham Act, codified at 15 U.S.C. §§ 1114(1) and 1125(a), define trademark infringement and unfair competition.

For Count I of the Complaint (d/e 1), infringement of a registered trademark, 15 U.S.C. § 1114(1) recites:

> "(1) Any person who shall, without the consent of the registrant
> (a) **use in commerce** any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be **used in commerce** upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114 (emphasis added).

For Counts II and IV of the Complaint (d/e 1), infringement of an unregistered mark and false designation of origin, 15 U.S.C. § 1125(a) recites:

> "(1) Any person who, on or in connection with any goods or services, or any container for goods, **uses in commerce** any word term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil

action by any person who believes that he or she is or is likely to be damaged by such act."

15 U.S.C. § 1125(a) (emphasis added).

Therefore, both § 1114 and § 1125(a) require "use in commerce" of the asserted trademark by the accused infringer.

C.    Missouri Common Law Trademark Infringement and Unfair Competition Require That SLU Show That Dr. Meyer Has Used The Alleged Trademarks

With respect to Counts III and V of the Complaint (d/e 1), Missouri courts look to federal law as authority in shaping its common law trademark infringement and unfair competition jurisprudence. *Adbar Company L.C. v. PCAA Missouri, LLC*, 2008 WL 68858 (E.D. Mo. 2008). "Missouri common law regarding unfair competition is coextensive with federal law." *Words & Data, Inc. v. GTE Communications Services, Inc.*, 765 F.Supp. 570, 577 (W.D. Mo. 1991)(citing *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1321 n.6 (8th Cir. 1984)).

Moreover, the Restatement (Third) of Unfair Competition §18 (1990), generally followed by Missouri courts, states that "A designation is 'used' as a trademark, trade name, collective trademark, or certification mark when the designation is displayed or otherwise made known to prospective purchasers in the ordinary course of business in a manner that associates the designation with the goods, services, or business of the user."[2]

Therefore, Missouri law, like federal law, requires that the accused infringer have used the mark on goods or in conjunction with services "in the ordinary course of business." *Id.*

D.    Missouri State Dilution Claims Require That SLU Show That Dr. Meyer Has Used The Alleged Trademarks

---

[2] As a parallel, for Missouri state registered marks, Missouri statute also provides that "a trademark shall be deemed to be "used" in this state (a) on goods when it is placed in any manner on the goods or their containers or on displays or documents associated with the goods or their sale or on the tags or labels affixed thereto and such goods are sold or otherwise distributed in the state, and (b) on services when it is used or displayed in the sale or advertising of services and the services are rendered in this state".   Mo. Rev. Stat. §417.005(8).

With respect to Count VI of the Complaint (d/e 1), The Missouri Anti-Dilution Act, *see* Mo. Rev. Stat. § 417.061(1), provides that "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark ... shall be a ground for injunctive relief." *Frosty Treats, Inc. v. Sony Computer Entertainment America, Inc.*, 426 F.3d 1001, 1011 (8ᵗʰ Cir. 2005). Courts applying that statute have required that the trademark owner "establish that the mark or trade dress is distinctive and registered under state statute, *see* Mo. Rev. Stat. §§ 417.005-417.066, or valid at common law, and that the defendant's use of the plaintiff's mark creates a likelihood of dilution of the distinctive quality of the plaintiff's mark." *Frosty Treats*, at 1011 (citing *Gilbert/Robinson, Inc. v. Carrie Beverage- Missouri, Inc.,* 758 F.Supp. 512, 527 (E.D.Mo. 1991), *aff'd,* 989 F.2d 985 (8th Cir. 1993).

The Eighth Circuit, in affirming a district court's rejection of a claim under the Missouri anti-dilution statute, has stated, "[t]he gravamen of a dilution complaint is that the [defendant's] <u>continuing use</u> of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that ... the plaintiff's mark will eventually be deprived of all distinctiveness." *Frosty Treats*, at 1011(emphasis added)(citing *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1332 (8th Cir.1984) (internal quotation omitted); *see also Gilbert/Robinson,* 758 F.Supp. at 527).

IV.    <u>SLU CAN PROVIDE NO EVIDENCE THAT DR. MEYER HAS MADE A TRADEMARK USE OF SLU'S MARKS</u>

In its interrogatory response, SLU identifies five acts which it asserts Meyer undertook to infringe its trademarks.[3]   However, as discussed below, none of those acts constitute the

---

[3] Plaintiff asserts that: 1. Meyer improperly registered a non-profit corporation; 2. Meyer used SLU intellectual property to raise funds or lease space; 3. Meyer advertised the non-profit corporation; 4. Meyer provided a false impression that SLU abandoned rights; and 5. unknown and undiscovered acts by Meyer. (Exh. 3, No. 6 at pp. 7-8.)

necessary trademark use to prove trademark infringement, unfair competition or trademark dilution.

1.      <u>Registration Of A Corporate Name Is Not Trademark Use</u>

SLU asserts **"**Meyer improperly registered a non-profit corporation which incorporates SLU's valuable intellectual property with the intent to trade off the goodwill of Saint Louis University and its student newspaper."   (Plaintiff Response to Defendant's First Set of Interrogatories is attached hereto as <u>Exhibit 3</u> and hereinafter referred to as Exh. 3; See, No. 6 at p. 7).

Trademark infringement requires a finding of "use in commerce" of the at-issue term. *Carey Licensing, Inc. v. Erlich,* 2007 WL 3146559, *6 (E.D. Mo. 2007); *see also Allen Homes Inc., v. Weersing,,* 510 F.2d 360 (8th Cir. 1975) (trademark rights are conferred by use of the mark in commerce).   As discussed above, mere registration of a trademark is not "use in commerce … in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."   15 U.S.C. § 1114(1).   It is undisputed that Meyer never started a newspaper and the nonprofit corporation never conducted any business.   As a result SLU can not point to any trademark use of SLU's alleged marks by Meyer.

"[I]t is hornbook rule of law that a trademark must be appurtenant to some existing enterprise to which it is related; it can not exist in gross."   *Modular Cinemas of America, Inc. v. Mini Cinemas Corp.*, 348 F.Supp. 578, 582 (D.C.N.Y. 1972).   In the *Modular* case, the defendant argued that its use began with its act of incorporation.   *Id*.   The *Modular* Court ruled that trademark rights are not "acquired through mere invention or creation of a name or symbol, or through mere adoption or the intention to use it."   *Id*.   A property in a trademark does not exist

"except a right pertaining to an *established* business with which the mark is employed." *Modular Cinemas,* 348 F.Supp. at 582. It is "axiomatic…that use and not priority of incorporation is decisive." *Id.* (emphasis added).

    2.    <u>SLU Has No Evidence That Meyer Used SLU's Trademarks To Raise Funds or Lease Space For a Newspaper</u>

SLU also asserts "Meyer used SLU's valuable intellectual property for purposes of raising funds and leasing space to publish a newspaper to be distributed to the Saint Louis University community." (Exh. 3, No. 6, at p. 8).

Defendant's interrogatories to Plaintiff asked for facts that support Plaintiff's allegations. Plaintiff's answers to interrogatories provide nothing more than generalized allegations and do not constitute facts and have no support in the record. (Exh. 3, No. 6 at p. 8). In addition to interrogatories, Defendant submitted production requests that were likewise directed to the production of evidence that Plaintiff believes support its allegations. Yet, Plaintiff has produced no documents that show any evidence of Avis Meyer using SLU's marks raising funds and leasing space to publish a newspaper to be distributed to the Saint Louis University community.

Avis testified that the student staff decided that the cost of relocating the newspaper off-campus would be impractical. (Exh. 1, p. 108, ll. 1-8). Therefore, an independent newspaper was never initiated. (Defendant's Supplemental Answers to Interrogatories is attached hereto as <u>Exhibit 4</u> and hereinafter referred to as Exh. 4; See supplemental answer to No. 11 at pp. 7 & 8).

Regardless, even if Meyer had raised funds or leased space for a newspaper, such acts do not constitute trademark use because such acts are not associated with the sale of a good or offering of a service to the public that is likely to cause confusion between Plaintiff's and Defendant's goods or services in the minds of the public.

3.    SLU Has No Evidence That Meyer Advertised The Non-Profit Corporation As Distributing a Newspaper

SLU also asserts that "Meyer advertised the non-profit corporation's operations as publishing a student newspaper that would be distributed to and among the Saint Louis University community in competition with any campus paper published by Saint Louis University."  (Exh. 3, No. 6 at p. 8.)  Again, Plaintiff's answers to interrogatories provide nothing more than generalized allegations that do not constitute facts and have no support in the record.  Plaintiff has produced no documents that show any evidence of Avis advertising the non-profit corporation's operations as publishing a student newspaper that would be distributed to and among the Saint Louis University community in competition with any campus paper published by Saint Louis University.

4.    SLU's Argument That Meyer's Dissolution Of The Nonprofit Corporation Was An Indication That SLU Has Abandoned Its Rights Is Not A Trademark Use That Can Support A Claim of Trademark Infringement

SLU further asserts "Meyer placed in the public record documents which give the impression that Saint Louis University was affiliated with, approved of, or sponsored the dissolution of the non-profit corporation, giving the false and confusing impression that SLU had abandoned its rights."  (Exh. 3, No. 6, at p. 8.)

For abandonment of rights, the Lanham Act requires proof of an "intent not to resume" use of the mark by the trademark owner.  *Lanham Act* § 45, 15 U.S.C. § 1127.  The "[r]estatement takes the position that the 'intent not to resume' standard today also governs non-federal law cases concerning the abandonment of common law marks."  *McCarthy on Trademarks*, § 17:11; 2006 Thompson/West, Rel. 38, 6/2006 citing *Restatement (Third) of Unfair Competition* § 30(2) (1995).  Clearly, no member of the public that sees the dissolution of a nonprofit corporation named "University News, A Student Voice Serving St. Louis University

Since 1921" believes that SLU's is abandoning **trademark rights** in the federally registered mark SAINT LOUIS UNIVERSITY or the terms "The University News" and "A Student Voice Serving St. Louis University Since 1921."

Regardless, the abandonment of a corporate name by a third party is not a trademark use that renders one liable for trademark infringement because it creates no confusion in the minds of consumers as to the source of Plaintiff's goods or services.

5.       SLU's Final "Act" of Infringement Also Does Not Support Trademark Infringement

Perhaps realizing that it has no trademark uses by Meyer upon which it can base a legitimate claim of trademark infringement, SLU alleges a final catchall of what is essentially "things we do not yet know about." (Exh. 3, No. 6 at p. 8). A hope to obtain information in the future cannot avoid summary judgment after discovery has been completed, as in this case.

Under this catchall, SLU also refers to personal emails which were deleted by Dr. Meyer about which the Court has already entertained a motion for spoliation. In short, none of these emails are going to be the sole evidence of a commercial use of a trademark, if they contained any evidence at all. By nature, a trademark use will be a public use, and the deleted emails will not be the sole evidence of a commercial use of a trademark, particularly if the alleged trademark is for a student newspaper. SLU cannot rely on private conversations or correspondences to support a trademark use. (See also: *Hysitron Inc. v. MTS Systems Corp.*, 2008 WL 3161969 (D.Minn. 2008)("a company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark.") (citing *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 409 (2nd Cir. 2005)(finding no use in commerce where the defendants generated internet pop-up ads by including another plaintiff's trademark in an unpublished directory of terms).

Plaintiff has argued that Avis' creation and dissolution of a non-profit organization constitutes infringement and dilution of Plaintiff's trademarks (See, Plaintiff's Memorandum In Support of Motion to Compel, d/e #35 p. 2). But, Plaintiff points to no other act by Dr. Meyer that would constitute a use in commerce of Plaintiff's alleged marks. Additionally, Plaintiff has not provided any evidence of likelihood of confusion, or to cause mistake or likelihood to cause dilution. As discussed above, Plaintiff cannot merely rest on its pleadings to defeat the present summary judgment motion. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 248. Rather, Plaintiff must now come forward with evidence that a genuine issue of material fact exists as to its allegations. *This Plaintiff cannot do.* Because Plaintiff has failed to meet this burden, summary judgment is warranted and should be granted in favor of Meyer on all Plaintiff's allegations.

V.    CONCLUSION

That Dr. Meyer's effort to register the name "The University News, A Student Voice Service St. Louis University Since 1921" was misguided cannot be denied. However, SLU has sued Dr. Meyer for trademark infringement, unfair competition, false designation and dilution; and, SLU has no evidence of trademark use of these terms by Dr. Meyer. No newspaper was ever created and the non-profit corporation created by Dr. Meyer has long since been dissolved. SLU's rights in its trademarks cannot be infringed by a hypothetical newspaper.

Because there is no genuine issue of material fact that Dr. Meyer has employed any trademark use of SLU's asserted trademarks or name, Dr. Meyer is entitled to judgment as a matter of law, and the Court should enter judgment in his favor with respect to Counts I-VI.

*******************

Respectfully Submitted,

POLSTER, LIEDER, WOODRUFF & LUCCHESI, L.C.


By: _s/ Brian J. Gill_____
      Nelson D. Nolte, #53,470
      Scott A. Smith, #55,870
      Brian J. Gill, #57,324
      12412 Powerscourt Drive, Suite 200
      St. Louis, Missouri 63131-3615
      (314) 238-2400
      (314) 238-2401 (fax)
      E-mail: nnolte@patpro.com
      E-mail: ssmith@patpro.com
      E-mail: bgill@patpro.com
      ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2008, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

      Frank B. Janoski, #3480
      Bridget Hoy, #109375
      Lewis, Rice & Fingersh, L.C.
      500 North Broadway, Suite 2000
      St. Louis, Missouri 63102
      T (314) 444-7600
      F (314) 241-6056


      ATTORNEYS FOR PLAINTIFF


      _s/ Brian J. Gill_