IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAINT LOUIS UNIVERSITY,<br>a Missouri benevolent corporation,<br><br>Plaintiff,<br><br>v.<br><br>AVIS MEYER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 4:07CV1733 CEJ<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I–VI OF THE COMPLAINT

**I. INTRODUCTION.**

Plaintiff Saint Louis University, a benevolent non-profit entity, was forced to file this lawsuit in October of 2007. It did so after it learned a few months earlier of the unlawful use of its intellectual property by Defendant Avis Meyer – one of its own professors. It only did so after Meyer created a publicly confusing record and then refused to provide SLU with any information as to the extent of his use of SLU's trademarks or any assurances that no activities under that name would take place in the future. To not act is to act, and as a result of Meyer's initial wrongful acts and his subsequent refusal to remedy them, SLU, among other things, was left open to potential attacks on its intellectual property and uncertainties as to its ability to fully protect its rights going forward. A trademark owner may not simply sleep on its rights;[1] thus, to protect its valuable intellectual property, SLU was forced to file suit and seek an order from this

---

[1] See, e.g., Kellogg Co. v. Exxon Corp., 209 F.3d 562, 574 (6th Cir. 2000) (stating that the point at which a trademark owner "knew or should have known that it now had a provable claim for infringement" was the point that the trademark owner's "duty to defend its trademark was triggered, and it was from this point that any delay must be measured [for purposes of laches]"); see also Cushman v. Mutton Hollow Land Dev., 782 S.W.2d 150, 155, 161, 163 (Mo. Ct. App. 1990) (enjoining defendant from using plaintiffs' tradename in violation of Missouri common law unfair competition and the Missouri antidilution statute, Mo. Rev. Stat. § 417.061, when defendant merely proposed to use such name in conjunction with future land development project but had not yet publicized such use).

1493213 08

Court with regard to Meyer's unauthorized conduct and an injunction and damages to remedy the harm to SLU.

It was Meyer's actions that triggered SLU's need to seek the Court's assistance to remedy the harm caused by Meyer's surreptitiously created and dissolved non-profit corporation. Nonetheless, in response to Plaintiff's claims, Meyer engaged in the most egregious of discovery abuses and now has filed a motion for summary judgment foisting a single, meritless argument: he argues that he did not "use" SLU's marks *sufficiently* or *in the right way* to be found in violation of the law. To the contrary, as discussed in more detail below and supported by the evidence of record, Meyer's registration of a non-profit corporation using SLU's trademarks, coupled with Meyer's deliberate creation of a confusing and deceptive public record that gives the false impression that SLU was involved in or approved of the registration and dissolution of the entity, is sufficient use in commerce to create liability for trademark infringement.[2] Additionally, Meyer has discussed with individuals all over the country and around the world his plans – and the logistics necessary – to take SLU's campus paper "offshore" and independent using SLU's intellectual property, adding additional acts of use in commerce. These actions are not only sufficient use in commerce to establish trademark infringement but are activities that create a likelihood of confusion, constitute unfair competition, and are diluting SLU's valuable intellectual property.

SLU needs an injunction from this Court regarding Meyer's wrongful actions so that it can protect its intellectual property going forward in light of the permanent, confusing and deceptive public record Meyer has created. SLU also seeks damages to remedy the harms

---

[2] The "use" gleaned thus far has come from what Meyer has been willing to admit or what SLU has been able to presently discover through its own efforts. Because of Meyer's admitted deliberate destruction of documents, we will never know the full extent of Meyer's conduct. Thus, SLU has requested sanctions against Meyer and an adverse inference as to the extent of Meyer's "use", all of which are currently pending before this Court.

caused by Meyer's actions. For these reasons, explained in more detail below, Meyer's request for summary judgment is not well taken with regard to SLU's Counts I – VI and must be denied.

## II. MEYER IS NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS I – VI.

Meyer seeks summary judgment on all but one of SLU's claims against him[3] on the single faulty proposition that Meyer did not "use" SLU's intellectual property *enough* to constitute use in the trademark, dilution or unfair competition sense. Meyer's assessment is factually and legally wrong.

### A. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), a court may only grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Roberts v. U.S., 225 F. Supp. 2d 1138, 1147 (E.D. Mo. 2001). In analyzing whether there is a genuine issue of material fact, a trial court is "required to view the facts in a light most favorable to the non-moving party, and must give the non-moving party the benefit of any inferences that can logically be drawn from those facts." Roberts, 225 F. Supp. 2d at 1147; see also Adbar Co., L.C. v. PCAA Missouri, LLC, 4:06-CV-1689, 2008 WL 68858, *3 (E.D. Mo. Jan. 4, 2008).

### B. Meyer's Conduct Constitutes Use In Commerce That Has Created a Likelihood of Confusion Precluding Summary Judgment on SLU's Trademark Infringement Claims.

Meyer's summary judgment request hinges on his claim that his only "use" of SLU's marks was the mere registration of the non-profit corporation.[4] Even on the limited evidence

---

[3] A trial will be necessary to fully resolve this lawsuit in any event because Defendant has not moved for summary judgment on SLU's Count VII for violation of Mo. Rev. Stat. § 417.150, *et seq.*

[4] Meyer conflates "use" with "in commerce." Although he does not exactly argue that there was no "in commerce" use, to the extent he makes that argument in reply, it is noted that under the Lanham Act, "commerce" is defined as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. "The Supreme Court has characterized the 'in commerce' requirement as broad and with a 'sweeping reach.'" Council of Better Business

3

available to Plaintiff and the Court,[5] this case is not so factually narrow. Meyer took the University's marks, registered a non-profit corporation, shared his proposals to start an independent paper using that name with persons around the world, apparently looked into leasing space for the entity, used the University's letterhead to correspond with a Missouri State governmental office on behalf of his non-profit entity, and placed in the permanent, official records of the Missouri Secretary of State filings that give the false indication that SLU was affiliated with the non-profit entity and approved of its creation and dissolution. Ex. 3, Affidavit of B. Hoy at ¶ 5 and Tab C, enclosing true and accurate copies of documents produced by SLU in this litigation showing Meyer's submissions to the Missouri Secretary of State, referenced as SLU/AM 000001 - 00009; Ex. 1, Meyer Dep., pp. 72–76, 80–82, 85–86, 88–93, 106–08, 112–13; 143–44, 166–75; Ex. 2, *St. Louis Magazine* Article (Complaint [docket no. 1] ¶ 20, Ex. D). He did so to set up a newspaper that would use the name and caption of SLU's newspaper, run the same types of stories as SLU's newspaper, use the same editorial staff presently involved in publishing SLU's newspaper, and distribute the paper to the same geographic area – i.e., SLU's campus and alumni. See Ex. 4, Defendant's Supplemental Answers to Plaintiff's First Set of Interrogatories, at No. 11. He did all of this while being perfectly aware that SLU was using that very name and caption for its own campus paper and without taking any efforts to obtain SLU's consent or approval, or even notify SLU of his actions. See Ex. 5, Defendant's Response to

---

Bureaus v. Bailey & Assoc., 197 F. Supp. 2d 1197, 1212 (E.D. Mo. 2002) (quoting Steele v. Bulova Watch Co., 344 U.S. 280, 283–84 (1952)) (other citation omitted). Certainly, by example, Meyer's unauthorized use of SLU letterhead on behalf of his non-profit organization to correspond with a government agency through the mail or by fax is something regulated by Congress.

[5] Meyer has routinely destroyed the very evidence he knew he had to preserve and produce. See Ex. 1, Meyer Dep. at pp. 14, 22–26, 179, 183–84, 187–88. As stated in Plaintiff's Motion for Sanctions and related filings [dkt nos. 36, 37, & 45], which is pending before the Court, Plaintiff is, at the very least, entitled to an adverse inference that it may presume that the contents of the deleted documents would have been adverse to Defendant Meyer regarding his use of SLU's intellectual property. Should the Court deny the Motion, however, there still exists in the record sufficient evidence to present genuine issues of fact whether Defendant used SLU's intellectual property.

Plaintiff's First Request for Admissions, Nos. 2, 3, 4, 6, 7. Indeed, he used his home address and paid cash when setting up the non-profit corporation in the apparent hope that no SLU Administrative personnel would learn of his actions, but then once discovered, he used SLU's contact information, letterhead and fax to effect the dissolution of this entity. See Ex. 3, Affidavit of B. Hoy at ¶ 5 and Tab C, enclosing true and accurate copies of documents produced by SLU in this litigation showing Meyer's submissions to the Missouri Secretary of State, referenced as SLU/AM 000001 - 00009; Ex. 1, Meyer Dep., pp. 72–76, 80–81, 88–91, 166–75. The only plausible reason for these activities was to cause harm to SLU.

Meyer argues in his papers he was oblivious to the legal ramifications of his actions. Even if that mattered, his explanation is not plausible. He has owned at least one business in the past and understands the importance of a business name and also has admitted that the marks are valuable to SLU. Ex. 1, Meyer Dep., pp. 28–29, 48, 77–78, 116. He has admitted to forming the corporate entity so that the name and tagline of SLU's newspaper could be used by the student newspaper staff in the event a new charter between the University and newspaper staff was not worked out. See, e.g., Ex. 1, Meyer Dep., pp. 76, 85–86; Ex. 2, *St. Louis Magazine* Article (Complaint [docket no. 1] ¶ 20, Ex. D). His actions were intentional and designed to harm the University and its rights. In the end, Meyer caused the misleading paperwork to be permanently, publicly available on the Missouri Secretary of State's website and on official documents. As in Yost, Meyer's conduct is certainly sufficient evidence at the summary judgment stage to create a genuine issue of material fact as to Meyer's use in commerce, in connection with services, of a name which is likely to confuse, regardless of his understanding of what he had done.[6]

---

[6] Indeed, the record indicates a clear likelihood of confusion. SLU found out about the registration when it was doing a routine internet review of filings related to its own entities (those registered with or under the Saint Louis University mark). See Ex. 9, Galli Aff., at ¶¶ 7-8. Meyer's registration was included in the list. Someone unfamiliar with SLU's policies and the fact that SLU had not been involved in the creation of the non-profit entity using the nearly

Simply put, Meyer's view of the facts relevant to this case is myopic. Considering all aspects of Meyer's conduct as set forth above, genuine disputes of material fact exist regarding Meyer's "use in commerce" of Plaintiff's marks.

Meyer also miscomprehends the law with regard to use in commerce. This case is significantly similar to <u>Committee v. Yost</u>, where a U.S. Court of Appeals reversed a district court's grant of summary judgment to a defendant, finding sufficient use in commerce in the summary judgment record to proceed to trial. 92 F.3d 814, 823 (9th Cir. 1996). There, the defendant was aware of the plaintiff's use of its name in connection with an environmental education service and checked the state corporate records to determine whether the name was registered with the State. <u>Id.</u> at 817. The plaintiff had inadvertently let the corporate registration lapse and the State therefore allowed the registration of a new entity by the defendant using the same name.[7] <u>Id.</u> at 817–18. The defendant apparently intended to use the name for its own environmental organization and presumably benefit from the goodwill already established by the plaintiff. See <u>id.</u> at 817–18, 823. The only other activity by the defendant before the filing of the

---

identical name as SLU's campus paper would undoubtedly think (based upon, for example, Meyer's use of SLU's letterhead, address and fax line) that Meyer acted with authority and that SLU had chosen to cease use of its name. This will have a potentially adverse effect on SLU in the form of future controversy, litigation, and public scrutiny, and supports a finding of likelihood of confusion. In addition, Meyer has admitted to intentionally copying the name of SLU's campus newspaper. See Ex. 5, Defendant's Response to First Request for Admissions, Nos. 2, 3, 4, 6, 7. He actually tried to get as close as his memory allowed to SLU's marks and regretted that he missed one word. Ex. 1, Meyer Dep., pp. 143–44. Meyer's intentional copying gives rise to a presumption of a likelihood of confusion. <u>Daddy's Junky Music v. Big Daddy's Family Music</u>, 109 F.3d 275, 286 (6th Cir. 1997) (summary judgment for defendant precluded because genuine issue of fact existed as to likelihood of confusion where an intent on the part of the defendant to copy the plaintiff's marks is a significant factor gave rise to a presumption of a likelihood of confusion); <u>Emerson Elec. Co. v. Emerson Quiet Kool Corp.</u>, 577 F. Supp. 668, 678 (E.D. Mo. 1983) (enjoining defendant). Even if confusion was not presumed, five of the six likelihood of confusion factors weigh heavily in favor of SLU and against Meyer, and the fifth factor (actual confusion) is in dispute and not necessary for a finding of infringement. See <u>Anheuser-Busch, Inc. v. Balducci Publications</u>, 28 F.3d 769, 774 (8th Cir. Mo. 1994) (identifying likelihood of confusion factors).

[7] It is not the function of the Secretary of State to determine trademark rights. Rather, the Secretary of State merely checks for an identical registration to see if the name has already been used by another entity. If none exists at the time, the new registration is allowed without regard to superior trade name or trademark rights held by another. See Missouri Secretary of State Website, Frequently Asked Questions, at No. 3, http://www.sos.mo.gov/business/trademarkfaqs.asp (last visited Oct. 21, 2008).

trademark infringement lawsuit was a presentation given by one of the incorporators. Id. at 823. The Court of Appeals held that the acts of forming a corporate entity under the name and referring to itself with that the name during the presentation were sufficient to create a genuine issue of fact at the summary judgment stage that the defendants were liable under the Lanham Act "for using in commerce, in connection with services, a name with is likely to confuse." Id.

In both Yost and the case before this Court, the defendant was keenly aware of the plaintiff's use of the marks and indeed checked the Secretary of State archives to see if the plaintiff had a valid corporate registration. Id. at 817; Ex. 1, Meyer Dep., pp. 88–89. Finding none, both defendants chose to register an entity under the same name, with the intent to provide nearly identical services under that name. Yost, 92 F.3d at 817; Ex. 1, Meyer Dep., pp. 88–89. In Yost, the defendants made a presentation using the name to give it an air of credibility based upon the plaintiff's reputation. Yost, 92 F.3d at 818, 823. Here, Meyer took similar actions by announcing to the then-Editor in Chief of SLU's paper, and others on the paper's staff, that he had captured the name so that *The University News* would not "die on her watch." He also had discussions with others around the country and the world about the logistics of operating an independent paper under that name. Ex. 1, Meyer Dep., pp. 106–08, 112–13, 124, 133–34, 138–43, 145–46; Ex. 6, Benanti Dep., pp. 61–69, 80–81. Although informally, he also apparently looked into funding sources for the anticipated publication. Ex. 1, Meyer Dep., pp. 106–08, 112–13; Ex. 2, *St. Louis Magazine* Article (Complaint [docket no. 1] ¶ 20, Ex. D).

In Yost, registration and initial activities under the plaintiff's name was enough to preclude summary judgment in defendant's favor. Yost, 92 F.3d at 823. In Meyer's case, he did that and much more. When SLU finally learned that Meyer had registered a non-profit corporation using its intellectual property, it demanded that Meyer dissolve the corporation and

cease any operations. Ex. 1, Meyer Dep., pp. 69–71; Ex. 7, Meyer Dep., Ex. 3 (Letter from F. Janoski, dated June 22, 2007); Ex. 8, Meyer Dep., Ex. 4 (Letter from F. Janoski, dated Aug. 16, 2007). Rather than effect the dissolution using his home address, as he did when he registered it (presumably to keep it a secret from SLU because he knew SLU would not be pleased), incredibly he sent correspondence to the Secretary of State on SLU's letterhead seeking dissolution of the entity. See Ex. 1, Meyer Dep., pp. 72–74; Ex. 3, Affidavit of B. Hoy at ¶ 5 and Tab C, enclosing documents produced by SLU in this litigation showing Meyer's submissions to the Missouri Secretary of State, referenced as SLU/AM 000001 - 00009. He used SLU's return address and faxed the paperwork from a SLU fax machine, leaving a "SLU" fax line across the top of the paperwork. Ex. 1, Meyer Dep., pp. 72–74, 80–81, 90–91; Ex. 3, B. Hoy Aff. at ¶ 5 and Tab C, enclosing true and accurate copies of documents produced by SLU in this litigation showing Meyer's submissions to the Missouri Secretary of State, referenced as SLU/AM 000001 - 00009. He caused the correspondence and paperwork to be placed in the Secretary of State's public records for all to see. This undoubtedly leaves a third party with the impression that SLU had been involved in the incorporation and dissolution of the entity, perhaps even abandoning its rights in its marks. This creation of a public record, available on the Internet, cannot reasonably be seen as anything less than "use in commerce" for purposes of the Lanham Act.

Additionally, Meyer's cited legal authority is not sound. On pages 10–11 of his Memorandum, Meyer quotes extensively from Modular Cinemas of America, Inc. v. Mini Cinemas Corp., 348 F. Supp. 578, 582 (S.D.N.Y. 1972) [docket no. 56]. The quotations are lifted from that court's discussion of what actions must be taken to acquire superior trademark rights. Surely, Meyer is not claiming that he has any superior trademark rights to the rights of SLU. Rather, the question before the Court is whether Meyer's actions create a likelihood of

confusion, and therefore constitute trademark infringement. Even the Modular court recognized the distinction. Thus, the quotations cited by Meyer are inapplicable.

At the very least, when considering the law appropriately, genuine disputes of material fact exist as to Meyer's improper use of SLU's marks in commerce and summary judgment should not be granted.

### C. Meyer is not entitled to Summary Judgment on Count V for Violations of Missouri Common Law Unfair Competition.

Furthermore, SLU's claim in Count V for unfair competition in violation of Missouri common law is separate and distinct from a trademark infringement claim, and is established by "any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for the goods or business of another." Nat'l Motor Club of Missouri, Inc. v. Noe, 475 S.W.2d 16, 20 (Mo. 1972). "The tort of unfair competition is amorphic in nature." Adbar Co., L.C. v. PCAA Mo., LLC, 4:06CV1689 (JCH), 2008 U.S. Dist. LEXIS 776, *32 (E.D. Mo. Jan. 4, 2008). It "is not an objective thing and has no objective reality. It is merely an intellectual concept convenient to describe a process which goes on in courts of law. It is as specious to attempt a sweeping, all-inclusive definition of 'unfair competition' as to try to define the legal term 'reasonable.'" Adbar Co., L.C., 4:06CV1689 (JCH), 2008 U.S. Dist. LEXIS 776, at *32–*33 (quoting Cushman v. Mutton Hollow Land Dev., 782 S.W.2d 150, 157 (Mo. Ct. App. 1990) (quoting 1 J. McCarthy, Trademarks & Unfair Competition § 1:3 (2d ed. 1984)) (internal quotations omitted). The Missouri Court of Appeals has described unfair competition as "a species of commercial hitch-hiking which the law finds offensive, and, therefore prohibits. The law of unfair competition is but a reaffirmation of the rules of fair play." Cushman, 782 S.W.2d at 157 (quoting Shrout v. Tines, 260 S.W.2d 782, 788 (Mo. App. 1953)) (internal quotations omitted). Missouri common law unfair competition

allows plaintiffs an avenue of recovery against defendants who "engage[] in questionable business practices" that "violate society's notions of fair play and fundamental fairness." See Adbar Co., L.C., 4:06CV1689 (JCH), 2008 U.S. Dist. LEXIS 776, at *35.

It is a general principle under Missouri law that "in determining whether or not unfair competition exists each case must be judged on its own particular facts." Cushman, 782 S.W.2d at 158 (quoting Better Business Bureau, Etc. v. Chappell, 307 S.W.2d 510, 516 (Mo. App. 1957); also citing Cunetto House of Pasta v. Tuma, 689 S.W.2d 690 (Mo. App. 1985); Thomas Patrick, Inc. v. KWK Inv. Co., 206 S.W.2d 359 (Mo. 1947)). In Cushman, the Missouri Court of Appeals, Southern District, addressed a plaintiff's unfair competition claim for injunctive relief and damages against a defendant who allegedly misappropriated plaintiffs' trade name. 782 S.W.2d at 157. The plaintiffs owned and operated for many years a theme park and related businesses under the name "Mutton Hollow." Id. at 153–55. The defendant property developer subsequently purchased adjoining real estate which he proposed to turn into a campground and R.V. park. Id. at 155. After unsuccessful negotiations with the plaintiffs in which defendant sought an easement for access to his property, defendant "determined to develop and advertise [his] property under the names 'Mutton Hollow Land Development, Inc.' and 'Mutton Hollow R.V. Resort Association.'" Id. <u>Immediately upon learning of the defendant's plans to use their name and before defendant actually developed the property or advertised his plans</u>, plaintiffs filed suit. Id. Defendant engaged in no other "use" of plaintiffs' name before plaintiffs sued for relief. See id. After a bench trial, the trial court denied plaintiffs' request for an injunction, apparently on the grounds that, inter alia, defendant and plaintiffs were not engaged in competing businesses and defendant's use of the name "Mutton Hollow" was not likely to cause confusion.

Id. at 156. The Court of Appeals reversed, granting the plaintiffs' request for an injunction and awarding costs of the action to plaintiffs.[8] Id. at 163.[9]

Importantly, the court in Cushman rejected the trial court's and the defendant's view that plaintiffs had to show competition between plaintiffs and defendant as well as confusion in the minds of the public. Id. at 161 ("It is no longer necessary that the parties be engaged in competitive businesses . . . or that an actual diversion of business be shown.") (quoting Thomas Patrick, Inc., 206 S.W.2d at 360) (internal quotations omitted); see also Thomas Patrick, Inc., 206 S.W.2d at 359, 361 (enjoining defendant from using corporate name which included part of plaintiff's pre-existing name, even though defendant had yet to advertise or display its name; defendant's use of the name consisted entirely of (1) forming a corporation and (2) purchasing real estate). Though the court did find evidence of actual confusion which "occurred even in advance of any publicity by the defendant using the name 'Mutton Hollow[,]'" (emphasis added) it went on to state that, contrary to defendant's assertions, it is not a "prerequisite to injunctive relief . . . that there be proof of actual deception or that plaintiff has suffered actual damage or injury to goodwill. It is enough to show a probability of deception or confusion may result; such threatened future injury is sufficient basis for relief." Cushman, 782 S.W.2d at 161 (quoting Missouri Federation of The Blind v. National Federation of The Blind, Inc., 505 S.W.2d 1, 6 (Mo. Ct. App. 1973)) (internal quotations omitted).

---

[8] The Court of Appeals specifically did not address plaintiffs' request for money damages having found plaintiffs failed to present any evidence of their damages during the bench trial below. Cushman, 782 S.W.2d at 163.

[9] At first glance, it may appear unclear whether the Court of Appeals rested its decision upon its analysis of the Missouri Antidilution statute, Mo. Rev. Stat. § 417.061, or upon its common law unfair competition analysis. See id. at 161 ("However, further discussion of the findings concerning competition and confusion is not necessary. The topics referred to in those findings are the subject of a statute . . . .") (citing Mo. Rev. Stat. § 417.061). However, the court goes on to state, "[since] plaintiff's mark has acquired secondary meaning, as discussed above, relief is also appropriate under Missouri's Anti-Dilution Statute [quoting another case]. . . . This is true in this case." Cushman, 782 S.W.2d at 162 (internal quotations and citation omitted) (emphasis added). Clearly, this indicates the court's view that plaintiff was entitled to relief under both common law unfair competition and the antidilution statute.

11

In this case, an order from this Court as to Defendant Meyer's wrongful conduct could clear the public record created by Meyer and prohibit Meyer from such future conduct as to the use of SLU's newspaper name. As Cushman and the other cases cited above make clear, Defendant Meyer's assertion that Missouri common law is not separate and distinct from a federal Lanham Act claim is without merit. Furthermore, Plaintiff SLU, like the plaintiffs in Cushman, is entitled to equitable relief to prevent the "threatened future injury" posed by Meyer's intentionally misleading and deceptive formation and subsequent dissolution of the non-profit corporation. See, e.g., Cushman, 782 S.W.2d at 161; Ex. 3, Affidavit of B. Hoy at ¶ 5 and Tab C, enclosing true and accurate copies of documents produced by SLU in this litigation showing Meyer's submissions to the Missouri Secretary of State, referenced as SLU/AM 000001 - 00009; Ex. 1, Meyer Dep., pp. 72–76, 80–82, 85–86, 88–93, 106–08, 112–13; 143–44, 166–75. Meyer's acts have created a strong likelihood that the public will be confused as to whether SLU was associated with or approved of the formation and dissolution of the non-profit corporation and whether SLU intended to give up its valuable rights as a result. See Cushman, 782 S.W.2d at 161 (discussing confusion as to source, sponsorship, and affiliation). At the very least, this "threatened future injury" precludes Meyer's request for summary judgment.

Additionally, Meyer's argument that he is not liable for his willful, intentional conduct because he did not "use[] [SLU's] mark on goods or in conjunction with services" must, as a matter of law, fail. Defendant's Memorandum in Support, at p. 8 [docket no. 56]. Such an argument, had it been raised by the defendant developer, in Cushman would not have precluded relief since the court issued plaintiffs' requested injunction even though the defendant had not engaged in any publicity but merely proposed to use a name similar to the plaintiffs'. See Cushman, 782 S.W.2d at 155, 161, 163.

12

Defendant Meyer makes the sweeping conclusion that there is a requirement of use in commerce for a Missouri Unfair Competition claim. Rather, there is at least a genuine dispute of material fact that due to his activity in discussing with third parties his plans and the intentionally misleading and deceptive way in which he dissolved the non-profit corporation, he created a false impression in the minds of the public as to SLU's involvement in or approval of the nonprofit corporation, thus supporting an unfair competition claim. Moreover, there may have been even more activity by Defendant however, his intentional destruction of evidence places Plaintiff at a huge disadvantage in determining this. Summary judgment is thus not appropriate.

### D. Meyer is not entitled to Summary Judgment on Count VI for Dilution of SLU's marks.

"The underlying rationale of the dilution doctrine is that the <u>gradual diminution</u> or <u>whittling away</u> of the value of a trade-mark, resulting from use by another constitutes an invasion of the senior user's property right and good will in his mark and gives rise to an independent wrong." <u>Cushman</u>, 782 S.W.2d at 162 (quoting 2 J. McCarthy, <u>Trademarks and Unfair Competition</u> § 24:13 (2d ed. 1984)) (internal quotations omitted) (emphasis added) (reversing trial court judgment and enjoining defendant who merely intended to use plaintiffs' marks in connection with property development scheme and had not yet publicized such intended use).

To prevail on a claim of dilution under Missouri Revised Statute § 417.061, *et seq.*, a plaintiff need not show actual competition between itself and the defendant, nor must plaintiff show any evidence of confusion. <u>Hallmark Cards, Inc. v. Hallmark Dodge, Inc.</u>, 634 F. Supp. 990, 1000 (W.D. Mo. 1986) (judgment for plaintiff following bench trial). Rather, to be entitled to an injunction under the statute, a plaintiff must demonstrate that its mark is valid at common law or registered with the state of Missouri, that its mark is distinctive, and that the defendant's use of plaintiff's mark would create a likelihood of dilution of the mark's distinctive character.

Hallmark Cards, Inc., 634 F. Supp. at 1000. A plaintiff is entitled to an automatic injunction under the statute upon making the requisite showing. Anheuser-Busch, Inc., 28 F.3d at 777 n.5 (reversing trial court's judgment for defendant following bench trial).

Meyer seeks summary judgment on the ground that he did not "use in commerce" plaintiff's marks. First, neither the statute nor the case law absolutely requires that a defendant make a so-called "trademark use" of the plaintiff's marks, as Meyer contends. The Missouri antidilution statute, rather, "provides greater protection than the Lanham Act by expressly permitting claims 'notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.'" Anheuser-Busch, Inc., 28 F.3d at 777 (8th Cir. Mo. 1994) (quoting Mo. Rev. Stat. § 417.061).

Second, Meyer completely fails to grasp the unique facts of this case and admit the true implications of his conduct. Meyer's assertion in his deposition that the registration "cost them [SLU] nothing" demonstrates his failure to appreciate that there is, even today, continuing harm being suffered by SLU as a direct result of his intentionally deceptive and misleading filings which have created a false and misleading permanent public record. See Ex. 10, Weixlmann Aff., at ¶ 8; Ex. 3, Affidavit of B. Hoy at ¶ 5 and Tab C, enclosing true and accurate copies of documents produced by SLU in this litigation showing Meyer's submissions to the Missouri Secretary of State, referenced as SLU/AM 000001 - 00009; Ex. 1, Meyer Dep., pp. 72–76, 80–82, 85–86, 88–93, 106–08, 112–13, 134 *l.* 22–23, 143–44, 166–75. The public record that Meyer created potentially "whittles away" at the value of SLU's marks by creating the false impression that SLU intended to abandon its rights in the name of its campus paper, which in fact it continues to publish today and values as significant intellectual property. See Cushman, 782

S.W.2d at 162; Ex. 10, Affidavit of J. Weixlmann, ¶¶ 5, 7 (discussing value and continuing use); Ex. 11, Affidavit of K. Porterfield at ¶ 4 (discussing continuing use).

In any event, based upon this summary judgment record, all of the elements of a dilution claim are either met, or at the least are in dispute. First, Defendant Meyer does not contest that Plaintiff SLU enjoys strong rights in its name and other marks and that those marks have been in continuous use for many decades. Therefore, Meyer has presented no issue of fact as to whether SLU's marks are valid at common law. Likewise, Meyer has not contested that SLU's marks are distinctive, indeed Meyer could not point to evidence creating any genuine issue of fact on this element of SLU's claim under § 417.061 had Meyer even made such an argument. As to the final element, there exists on the record available in light of Meyer's destruction of evidence, at bare minimum, a genuine issue of fact whether Meyer's actions create a likelihood of dilution of the marks' distinctive character due to the ongoing, permanent and public record that gives the false and misleading impression that Meyer had authority from SLU to create, and then dissolve, a non-profit corporation that published a weekly student newspaper under the name *The University News, A Student Voice Serving Saint Louis University Since 1921.*" Meyer had no such right or authority and absent an injunction indicating the wrongfulness of Meyer's conduct, could act as the first step of a gradual diminution or whittling away of SLU's rights. Summary judgment on Count VI is clearly unwarranted.

## III. CONCLUSION.

For the aforementioned reasons, Defendant's motion for summary judgment should be denied.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ Bridget Hoy
 Frank B. Janoski, #3480
 Bridget Hoy, #109375
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Fax: (314) 612-1307
Email: fjanoski@lewisrice.com
Email: bhoy@lewisrice.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I further certify that on the 21st day of October, 2008, the foregoing was filed with the Clerk of Court to be served via the Court's ECF system upon all counsel of record.

/s/ Bridget Hoy
Bridget Hoy
LEWIS, RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Facsimile: (314) 612-7837
E-mail: bhoy@lewisrice.com