### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| SAINT LOUIS UNIVERSITY, | ) | |
| a Missouri benevolent corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:07-cv-01733 |
| v. | ) | |
| | ) | |
| AVIS MEYER, | ) | |
| | ) | |
| Defendant. | ) | |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION
### FOR SUMMARY JUDGMENT AS TO COUNTS I-VI OF THE COMPLAINT

COMES NOW Defendant Avis Meyer (hereafter "Defendant" or "Meyer"), by and through his undersigned attorneys, and replies to Plaintiff Saint Louis University's ("SLU") Response (d/e 66) in Opposition to Defendant's Motion for Summary Judgment (d/e 56) as to Counts I-VI of the Complaint. Meyer's Motion for Summary Judgment should be granted because SLU has failed to show any genuine issue of material fact that Defendant has employed any trademark use of SLU's asserted trademarks or name.

## I.  INTRODUCTION

On October 11, 2007, Plaintiff Saint Louis University (hereafter "Plaintiff" or "SLU") filed its Complaint (d/e 1) in the U.S. District Court for the Eastern District of Missouri against Defendant Avis Meyer ("Defendant" or "Avis" or "Dr. Meyer").

Plaintiff's allegations are baseless and asserted without any genuine factual support. The only act which Dr. Meyer undertook with respect to the marks in question is that he registered a nonprofit corporation in the name of "The University News, A Student Voice Serving St. Louis

University Since 1921" for possible use by Plaintiff's own students.  Plaintiff cites no authority

for the proposition that merely registering a corporation is trademark use that can constitute

infringement.  The fact that merely registering a corporation is not trademark use is dispositive of

this case and as a result this Court should grant Dr. Meyer's motion for summary judgment.

Plaintiff's response attacks the motion for summary judgment for "foisting a single,

meritless argument" that Defendant did not "use SLU's marks *sufficiently* or *in the right way*" or

"*enough*".  (d/e 66, pp. 2, 3).  To the contrary, Defendant did not argue such *sufficiency* or *right*

way; but instead, Defendant properly argued under the law that Defendant did not use the marks

*at all* for trademark use.  Since, as the Plaintiff knows, the Counts require use of the marks, it is

disingenuous for the Plaintiff to characterize the motion as foisting a meritless argument.  In

reality, the use requirement is the crux of the case.

In its response, Plaintiff includes in its claim a quotation stating "The Supreme Court has

characterized the 'in commerce' requirement as broad and 'with a sweeping reach'."  (d/e 66 pp.

4-5 n. 4).  SLU mischaracterizes both the quote from the cited case *Better Business Bureaus* and

Meyer's argument concerning use.  SLU fails to inform this Court of the actual standard the

Supreme Court addressed in *Steele* is that "[A] mark shall be deemed to be used in commerce ...

on services when it is used or displayed in the sale or advertising of services and the services are

rendered in commerce, or the services are rendered in more than one State…" *Council of Better*

*Business Bureaus, Inc. v. Bailey &Associates, Inc.,*197 F.Supp.2d 1197, 1212 *(citing Steele v.*

*Bulova Watch Co.*, 344 U.S. 280, 283-84 (1952).  SLU's misleading quotation is an improper

attempt to read out the requirement that to qualify as use in commerce, the mark must be actually

used or displayed on goods and services and the goods must be offered or services must be

rendered in commerce.  Meyer's argument that he has made no use of SLU's mark's to establish

trademark infringement, unfair competition and dilution is entirely consistent with *Council of Better Business Bureaus* and *Steele* and is dispositive of this case.

Plaintiff's Response lists the following acts as Defendant's infringing use of the marks: registration of a non-profit corporation; allegations that Meyer shared his proposals to start an independent paper using that name with persons around the world; allegations that Meyer looked into leasing space for the entity; allegations that Meyer used the University's letterhead to correspond with a Missouri State governmental office to dissolve his non-profit entity; and allegations that Meyer placed in the permanent, official records of the Missouri Secretary of State filings that give the false indication that SLU was affiliated with the non-profit entity and approved of its creation and dissolution. (d/e 66, p. 4). However, these actions are not trademark use.

In its interrogatory response, SLU identifies five acts which it asserts Meyer undertook to infringe its trademarks.[1] Plaintiff does not offer any supported legal argument establishing these activities as actionable use of the marks. None of these acts constitute the necessary trademark use to prove trademark infringement, unfair competition or trademark dilution. Thus, Plaintiff's assessment is factually and legally incorrect.

## II. DISCUSSION OF APPLICABLE LAW

### A. Dr. Meyer's Conduct Does Not Constitute Use In Commerce

Plaintiff alleges under Count I trademark infringement under 15 U.S.C. § 1114 of the registered mark SAINT LOUIS UNIVERSITY, Registration Number 1,729,449. (d/e 1, ¶24).

The goods and services listed under this registered mark are:

---

[1] Plaintiff asserts that: 1. Meyer improperly registered a non-profit corporation; 2. Meyer used SLU intellectual property to raise funds or lease space; 3. Meyer advertised the non-profit corporation; 4. Meyer provided a false impression that SLU abandoned rights; and 5. unknown and undiscovered acts by Meyer. (d/e 56-3 at pp. 7-8).

"clothing; namely T-shirts, sweat shirts, sweat pants, sweat tops, gym shirts, casual shorts, socks, sweaters, headwear and jackets"; "educational services; namely, providing courses of instruction at the college level, and instruction in athletic clinics for the sports of basketball, soccer, baseball, field hockey, tennis,swimming, volleyball, golf, and softball; entertainment services; namely, conducting intercollegiate games and tournaments in the sport of basketball, soccer, baseball, field hockey, tennis, swimming, volleyball, golf and softball."

The entire record is completely silent to evidence of Meyer's use in commerce of the only registered mark SLU asserts on services and goods listed in the asserted registration. The assertion of un-presented evidence cannot avoid summary judgment. *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir. 2007)("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Accordingly, Meyer is entitled to summary judgment on Count I as a matter of law as there is no dispute as to a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

Plaintiff alleges under Counts II-VI, trademark infringement, false designation of orgin, unfair competition and dilution of the mark "University News" and the related Caption "A Student Voice Serving Saint Louis University Since 1921."

Defendant's reason for filing the incorporation paperwork was generated by his concern for the student staff's hesitation of acceptance of the revised charter.

Dr. Meyer testified that he filed the incorporation paperwork:

> To try "to save the name for the students' use, not to make any profit at all, to save the name for the students in case they needed it . . . " ("d/e 56-2, Exh. 1" p. 76, ll. 12-14) (emphasis added).

> "I was trying to save it [name] for the students". (d/e 56-2, Exh. 1, p. 93, ll. 2-4; p. 128, l. 25-p. 129; ln.1) (emphasis added).

The following excerpt below from Avis' deposition further explains Avis' reason:

> A: The intent was to save the name in the event that the students decided

they would not be able to publish the paper and would have to go on line or do something else. (emphasis added)

Q: And so, if the students were going to have to, let's say go off-campus, it was your intent that the newspaper would – whatever publication that they came up with would be under that particular name?

A: If that's what they wanted. <u>It was up to them</u>. (emphasis added).

Q: Had you had any discussions with any students in that regard?

A: No.

Q: Had you had any discussions with Ms. Benanti?

A.: No, not until after the fact, after registration.

Q: Any why would you think that they might want to continue under that name?

A: I didn't know for certain. I wanted to give them that opportunity, that chance, <u>if that's what they decide</u>. They might not. (d/e 56-2, Exh. 1, p. 86, ll. 10-25—p. 87, ll. 1-5) (emphasis added).

Plaintiff's response mischaracterizes Defendant's testimony as the Plaintiff incorrectly submits that the <u>Defendant would</u> "use the name, run the stories, use the same staff and distribute the paper." (d/e 66, p. 4) Any hypothetical off-campus student newspaper would have been operated by the Plaintiff's own students and not the Defendant. (d/e 56-2, Exh. 1, p. 76, ll. 85-86). Further, the name of any independent or off-campus newspaper would have been decided by the student staff. (d/e 56-2, Exh. 1, p. 93, ll. 4, and d/e 56-3, Exh. 4 Defendant's Supplemental Answers to Interrogatory No. 11, pp. 7-8). Assuming Plaintiff's mischaracterizations were correct, which they are not, Plaintiff still argues that Defendant <u>would</u> use, run, distribute etc. (d/e 66, p. 4). Plaintiff, however, does not provide any legal support that intent to use or possible future use is an actionable trademark use under the trademark laws. A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment. *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 730 (8th Cir. 2003)(citing *Nat'l. Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 2003)).

Plaintiff then makes the contradictory argument that Defendant formed the corporate entity so the name and tagline <u>could be used by the student newspaper staff</u> in the event a new

charter was not worked out. (d/e 66, p. 5). The charter, however, was worked out and the student staff did not use the name or tagline without authority from Plaintiff. (d/e 56-2, Exh. 1, p. 131 ll. 1-2 ). In his deposition and supplemental answers, Defendant identified by name the student staff to whom he may have communicated the incorporation paperwork, i.e., the students who would run the alleged infringing student newspaper. (d/e 56-2, Exh. 1, p. 102, ll. 19-25, and d/e 56-3, Exh. 4 Supplemental Answer No. 2). Incredibly, Plaintiff never took the depositions of its own, identified students to ascertain any alleged use by Defendant.[2] Instead, Plaintiff resorts to its spoliation argument that any Defendant communications proving use have been destroyed by Defendant. (d/e 66, pp. 2, 5, 13 and 15).

Plaintiff then alleges without support that Defendant used his home address and paid cash when setting up the non-profit corporation "in the apparent hope that no SLU Administrative personnel would learn of his action, but then once discovered, he used SLU's contact information, letterhead and fax to effect the dissolution of this entity" for the "only plausible reason for these activities was to cause harm to SLU" or "presumably to keep it a secret from SLU because he knew SLU would not be pleased." (d/e 66, pp. 5, 8). Plaintiff, however, has not provided any evidence of these alleged reasons and that the harm has happened.

In dissolving the non-profit organization, however, Defendant used SLU's letterhead for a dissolution letter to the Secretary of State as this was the available paper to Defendant. During questioning as to why Defendant used this letterhead, Defendant answered "It's what I had at hand when I did it". (d/e 56-2, Exh. 1, p. 73, l. 15). Counsel continued questioning "And was that the only reason you used the University letterhead?" (d/e 56-2, Exh. 1, p. 73, ll. 21-22). Defendant answered, "It's what I had available". (d/e 56-2, Exh. 1, p. 73, ll. 23-24). Counsel continued questioning "You didn't have any personal paper available?" (d/e 56-2, Exh. 1, p. 73,

---

[2] Plaintiff has not deposed any identified alumni or ex-administration of SLU, either.

l. 25).  Meyer answered, "Apparently not, or I wouldn't have used this."  (d/e 56-2, Exh. 1, p. 74, ll. 1-3).

Plaintiff concludes without support that Defendant's incorporation and dissolution filings were intentional and designed to harm SLU and its rights since Defendant owned a previous business and understands the importance of a business name. (d/e 66, p. 5). This conclusion, however, is based on a small, independent ice cream store that Defendant owned in 1969 or 1970.  (d/e 56-2, Exh. 1, p. 28, ll.25-p. 29, ll. 1-16).  This is not the type of business experience that makes Meyer a savvy businessman schooled in the selection of trademarks for potential use.

Plaintiff further mischaracterizes Defendant's testimony with conclusory statements that Defendant "shared his proposals to start an independent paper using that name with persons around the world" (d/e 66, p. 4) and discussed with individuals around the world regarding an independent paper using Plaintiff's intellectual property (d/e 66, pp. 2, 7).  Since Plaintiff did not substantiate these statements, Defendant assumes Plaintiff is referring to Defendant's testimony about Tom Downey, a former *University News* editor (20 years ago) employed by *Boeing* in France.  (d/e 56-2, Exh. 1, p. 107, ll. 3-4). Defendant testified:

> A:  …he [Downey] called about something, I don't remember what it was, it wasn't about the paper at all.  He's a former editor, we stay in touch, all these kids stay in touch with me, and would just talk about things in general, …  He called and told me how he was doing an this came up."
> Q.  And how did this come up?
> A.  He asked how the paper was doing, and I said "actually, they are rewriting the charter", and he said "again?"  Because this was done in 1998-99, and he's aware of it, after his time. (d/e 56-2, Exh. 1, p. 108, ll.11-24).

> Q.  Did you ask Mr. Downey, with regard to, or ask him any advice with regard to the name of the newspaper?
> A.  No, that never came up.  (d/e 56-2, Exh. 1, p. 110, ll. 3-6).

The evidentiary record is clear that Defendant did not share "his proposals to start an independent paper <u>using that name</u> with persons around the world" as mischaracterized by Plaintiff. Since there is no evidence that Dr. Meyer and Mr. Downey discussed any naming, there is no evidence that Meyer discussed naming "with persons around the world."

Plaintiff concludes that Defendant's corporation filings caused misleading paperwork to be permanently, publicly available on the Missouri Secretary of State's website and on official documents leading to "<u>certainly</u> sufficient evidence at the summary judgment stage to create a genuine issue of material fact as to Defendant's use in commerce, in connection with services, of a name which is likely to confuse…" (d/e 66, p.5)(emphasis added). Plaintiff makes this conclusion with an analogy to the *Committee v. Yost* decision. 92 F.3d 814 (9th Cir. 1996).

Plaintiff's analysis for the *Yost* decision is not sound. Plaintiff first submits that the *Yost* defendant <u>intended</u> to use the at-issue name; but then abandons the intended use and submits that the *Yost* defendant <u>actually</u> used the name. (d/e 66, pp. 6, 7). Plaintiff characterizes this actual use as simply a presentation given by the *Yost* defendant. (d/e 66, p. 7). Plaintiff then concludes that under the *Yost* decision, registration and "initial activities" under the *Yost* plaintiff's name was enough to preclude summary judgment in the *Yost* defendant's favor. (d/e 66, p. 7).

However, in *Yost*, the defendant, within 24 hours of learning that plaintiff had forfeited its charter, formed a new corporation using the plaintiff's name. *Yost*, 92 F.3d at 817. The defendant had "been considering forming an organization to advance their on environmental issues [diametric to plaintiff's views] for several years and had discussed possible names, but took no action until they learned of CIHD's [plaintiff] corporate forfeiture." *Id*.

About five months later, defendant testified at a public hearing held by the U.S. Air Force on a training range proposal. *Id*. at 818. At this public hearing, defendant testified that he was

president of CIHD which was supportive of the proposal. *Id*. The defendant knew his position "to be diametrically and publicly opposed by plaintiff CIHD". *Id*. During trial, defendant "acknowledged that he made this statement to add to his credibility as an environmentalist to support the training range proposal." *Id*. The trial court found that there was actual confusion and that the defendant "knowingly, intentionally and deliberately adopted and used [the CIHD name] in order to cause confusion, obstruct [CIHD's] pursuit of its environmental agenda, and thereby obtain an advantage in the snail de-listing litigation by preventing [CIHD's] intervention." *Id*.

In the case before this Court, Plaintiff not only equates Defendant's corporate paperwork and notifying Diana Benanti, after the fact of such paperwork, as the activities of the *Yost* defendant; but also asserts that Defendant's corporation paperwork is "that and much more." (d/e 66, p. 7). In other words, Plaintiff proffers that Defendant's corporation paperwork is more than testifying in front of the U.S. Government with the intent of providing views diametric to plaintiff under the title of president of plaintiff's name to purposely obstruct plaintiff's intervention in litigation. In the instant case, Plaintiff disingenuously labels the *Yost* defendant's acts as "initial activities." (d/e 66, p.7). On the contrary, the *Yost* defendant <u>actually used</u> the name of the plaintiff for five months after adopting plaintiff's name in connection with services of the plaintiff to the extent there was actual confusion by consumers. *Yost*, 92 F.3d at 818. Plaintiff's analogy comparing this case to that of the *Yost* decision is unfounded.

Plaintiff then alleges without support that the corporation paperwork placed in the public records of the Secretary of State "<u>undoubtedly</u> leaves a third party with the impression that SLU had been involved in the incorporation and dissolution of the entity, perhaps even <u>abandoning</u> its rights in its marks." (d/e 66, p. 8)(emphasis added). Plaintiff, however, has not provided any

evidence that this has happened or that this is even likely to happen. The assertion of un-presented evidence cannot avoid summary judgment. *Morgan,* 486 F.3d at 1039. Instead, the Plaintiff provides the affidavit of Vice President Kent Porterfield who contradictorily states that SLU <u>continuously uses</u> the marks. (d/e 66, Exh. 11). Plaintiff again reiterates that the record of the Secretary of State leaves Plaintiff open to attack of <u>abandonment</u> for its valuable intellectual property; however, there is no evidence that third parties are going to see a *corporate* registration and then believe that SLU has abandoned its trademarks.

Information buried in the files of the Secretary of State's is not going to lead the public to believe SLU is abandoning its trademark rights in its name. Such an argument is ridiculous and further illuminates SLU's complete lack of evidence of trademark use of its marks by Meyer. SLU cites no case law to support this argument that a document buried in the Secretary of State's Office that shows dissolution of a corporation equates to an abandonment of a trademark despite its continuous open use of the marks and ownership of a federally registration under a different name. Anyone investigating SLU's ownership of trademarks, will focus on its use of the marks and its federal registration of trademarks, which remains intact.

**B.** **Missouri Unfair Competition Law Requires That SLU Show That Dr. Meyer Has Used The Trademarks**

Under its argument for Missouri unfair competition, Plaintiff quotes from the trade name case *Adbar Co., L.C. v. PCAA Mo., LLC*, 2008 WL 68858 (E. D. Mo. 2008). In *Adbar*, this Court stated "[T]he same facts which support a trademark infringement claim also support an unfair competition claim." *Adbar*, 2008 WL at \*12 (citing *Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.*, 758 F.Supp. 512 (E.D.Mo. 1991)). "Because Missouri does not have a 'well developed body of trademark law,' the Court may look general trademark principles." *Id*. (citing *Bass Busters, Inc. v. Gapen Mfg. Co.*, 420 F.Supp. 144 (W.D.Mo. 1976)). In *Adbar*, the

10

defendant not only represented that its operation was a continuation under the plaintiff's name but the plaintiff had presented evidence that the defendant directed customers away from the plaintiff. *Id.* at \*12. Thus, in *Adbar*, the defendant actually *used* the plaintiff's name to misdirect customers, as distinguished from the present case.

The Missouri Court of Appeals explains unfair competition as "<u>commercial</u> hitch-hiking." *Cushman v. Mutton Holow Land Dev.*, 782 S.W.2d 150, 157 (Mo. Ct. App. 1990) (emphasis added). The *Cushman* court further observed that the term "unfair competition" as used to describe "<u>commercial</u> activities" is subjective when divorced from "concrete" examples. *Id.* (emphasis added).

The *Cushman* court found evidence of actual confusion, which is distinguishable from the present case. The *Cushman* court stated it is "enough to show a probability of deception or confusion may result; such threatened future injury is sufficient basis for relief." *Cushman*, 782 S.W.2d at 161. The present case is further distinguished from Plaintiff's reliance on this *Cushman* quote since, here, there is no "threatened future injury" as Dr. Meyer dissolved the non-profit corporation months before the lawsuit was filed. Further, Dr. Meyer has repeatedly asserted throughout this proceeding that he has not used the phrase "The University News, A Student Voice Serving Saint Louis University Since 1921" in any manner other than the registration of the non-profit organization and has no intention to use the marks in the future.[3]

---

[3] In the Answer, Defendant denied having the intent to publish a newspaper using the name "University News, A Student Voice Serving Saint Louis University Since 1921." (d/e 7, ¶16). Additionally, Defendant denied publishing or likely to soon publish a newspaper under a name which incorporates Plaintiff's mark St. Louis University. (d/e 7, ¶29). Defendant denied having or intending to falsely advertise in interstate commerce that he is distributing a newspaper published, authorized or sponsored by or affiliated with Plaintiff. (d/e 7, ¶¶62 and 74). Furthermore, Defendant denied using or intending to use in commerce Plaintiff's trademarks in connection with the distribution or advertising of a weekly newspaper. (d/e 7, ¶ 86). Defendant then confirmed his non-use of Plaintiff's marks in his admissions. (Admissions ¶8). During his deposition, Defendant stipulated that he has not used the phrase "The University News, A Student Voice Serving Saint Louis University Since 1921" in any manner other than the registration of the non-profit organization. (d/e 56-2, Exh., p. 197, ll. 14-20). In his supplemental answer to

Accordingly, there is no threatened future injury to show genuine issues of fact for trial.

Plaintiff returns to its argument that the corporation paperwork creates "a strong likelihood that the public will be confused as to whether SLU was associated with or approved of the formation and dissolution of the non-profit corporation and whether SLU intended to give up its valuable rights as a result." (d/e 66, p. 12). As before, Plaintiff, however, does not provide any evidence to support this allegation. In response to summary judgment, it is incumbent for Plaintiff to come forward with evidence which when viewed in the light most favorable to it would qualify it for relief. SLU's argument that Meyer's dissolved corporation is a trademark use is completely without support in law or fact.

### C.      Dr. Meyer Has Not Violated The Missouri State Dilution Statute

Courts applying the Missouri Anti-Dilution Act, *see* Mo. Rev. Stat. § 417.061(1) have required that the trademark owner "establish that the mark or trade dress is distinctive and registered under state statute, *see* Mo. Rev. Stat. §§ 417.005-417.066, or valid at common law, and that the defendant's use of the plaintiff's mark creates a likelihood of dilution of the distinctive quality of the plaintiff's mark." *Frosty Treats, Inc. v. Sony Computer Entertainment America, Inc.*, 426 F.3d 1001, 1011 (8th Cir. 2005)(emphasis added)(citing *Gilbert/Robinson, Inc. v. Carrie Beverage- Missouri, Inc.,* 758 F.Supp. 512, 527 (E. D. Mo. 1991), *aff'd,* 989 F.2d 985 (8th Cir. 1993)).

The Eighth Circuit, in affirming a district court's rejection of a claim under the Missouri anti-dilution statute, has stated, "[t]he gravamen of a dilution complaint is that the [defendant's] continuing use of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that ... the plaintiff's mark will eventually be deprived

---

Plaintiff's Interrogatory No. 6, Defendant also made this stipulation. (d/e 56-3, Exh. 4 p. 6). In his affidavit supporting Defendant's Motion For Summary Judgment, Defendant again made this stipulation. (d/e 56-2).

of all distinctiveness." *Frosty Treats*, at 1011(emphasis added)(citing *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1332 (8th Cir.1984) (internal quotation omitted); *see also Gilbert/Robinson,* 758 F.Supp. at 527)).

Under its Missouri Dilution Claim, Plaintiff alleges that the corporation paperwork creates a "continuing harm being suffered by SLU." (d/e 66, p.14). Again, Plaintiff does not provide any evidence of this continuing harm. SLU repeats its argument that the corporation paperwork creates a "false impression that SLU intended to abandon its rights" while it "continues to publish [the *University News*]." SLU's admitted continued use and federal registration of its marks clearly eliminates any false impression by dissolution of Meyer's corporation, even assuming the dissolution would ever be attributed to SLU.

Next, Plaintiff attempts to improperly shift its own burden to Dr. Meyer by alleging that Dr. Meyer has not presented issues of fact regarding valid marks, distinctiveness etc. (d/e 66, p. 15). The Eighth Circuit requires that the <u>trademark owner</u> "establish that the mark or trade dress is distinctive and registered under state statute, *see* Mo. Rev. Stat. §§ 417.005-417.066, or valid at common law, <u>and that the defendant's use of the plaintiff's mark creates a likelihood of dilution</u> of the distinctive quality of the plaintiff's mark." *Frosty Treats,* 426 F.3d at 1011. (emphasis added). Plaintiff has not established it burden. SLU fails to carry its burden since SLU has produced no evidence of a state registration or the distinctiveness of its mark.

Throughout its response, Plaintiff returns to its spoliation argument (d/e 66, pp.2, 4 13, 15) about which the Court has already entertained a pending motion. In short, none of the personal emails are going to be the sole evidence of a trademark use by Meyer for a newspaper, if they contained any evidence at all. By nature, a trademark use will be a public use, and the

deleted emails could not be the sole evidence of a commercial use of a trademark, particularly if the alleged trademark is for a student newspaper.

SLU cannot rely on private conversations or correspondences to support a trademark use. *Hysitron Inc. v. MTS Systems Corp.*, 2008 WL 3161969 (D.Minn. 2008)("[A] company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark.")(citing *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 409 (2nd Cir. 2005)(finding no use in commerce where the defendants generated internet pop-up ads by including another plaintiff's trademark in an unpublished directory of terms)(see also *Cherie Amie, Inc. v. Windstar Apparel, Corp.*, 2002 WL 460065 (S.D.N.Y 2002)(internal use [shipments] do not constitute use in commerce)(citing *Planetary Motion Inc. v. Techsplosion, Inc.*, 261 F.3d 1188 (11th Cir. 2001); *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260 (5th Cir. 1975)).

## III.    CONCLUSION

Through this proceeding, Plaintiff has publicly characterized Defendant as: not credible, arrogant, egregious, attaching evil motive to SLU, cavalier, inappropriate, acting in bad faith and myopic.[4]  However, SLU has sued Dr. Meyer for trademark infringement, unfair competition, false designation and dilution, and SLU has no evidence of trademark use of the terms by Dr. Meyer.  No newspaper was ever created and the non-profit corporation created by Dr. Meyer has long since been dissolved.  SLU's rights in its trademarks cannot be infringed by a hypothetical newspaper.

Because there is no genuine issue of material fact that Dr. Meyer has employed any trademark use of SLU's asserted trademarks or name, Dr. Meyer is entitled to judgment as a matter of law, and the Court should enter judgment in his favor with respect to Counts I-VI.

---

[4] d/e 35, d/e 37, d/e 44, d/e 45 and d/e 66.

Respectfully Submitted,

POLSTER, LIEDER, WOODRUFF & LUCCHESI, L.C.


By: *s/ Brian J. Gill*
Nelson D. Nolte, #53,470
Brian J. Gill, #57,324
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131-3615
(314) 238-2400
(314) 238-2401 (fax)
E-mail: nnolte@patpro.com
E-mail: bgill@patpro.com
ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2008, the foregoing was filed electronically with the

Clerk of Court to be served by operation of the Court's electronic filing system upon the

following:

Frank B. Janoski, #3480
Bridget Hoy, #109375
Lewis, Rice & Fingersh, L.C.
500 North Broadway, Suite 2000
St. Louis, Missouri 63102
T (314) 444-7600
F (314) 241-6056

ATTORNEYS FOR PLAINTIFF


*s/ Brian J. Gill*