```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


SAINT LOUIS UNIVERSITY,         )
                                )
          Plaintiff,            )
                                )
     v.                         )     No. 4:07-CR-1733 CEJ
                                )
AVIS MEYER,                     )
                                )
          Defendant.            )
```

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motions for summary judgment. Plaintiff has filed responses in opposition and the issues are fully briefed.

The campus newspaper at Saint Louis University is titled, "The University News," and its caption reads, "A Student Voice of Saint Louis University Since 1921." On March 16, 2007, defendant Avis Meyer filed articles of incorporation for a non-profit entity named, "The University News, a Student Voice Serving Saint Louis University Since 1921." Plaintiff Saint Louis University alleges that defendant's actions infringe its intellectual property. Plaintiff asserts claims of trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114 (Count I); trademark infringement and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); common law trademark infringement (Count III); unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count IV); common law unfair

competition (Count V); dilution, in violation of Mo. Rev. Stat. §§ 417.091 *et seq.* (Count VI); and misuse of a benevolent society's name, in violation of §§ 417.150 *et seq.* (Count VII). Defendant moves for summary judgment on Counts I through VI, arguing that there is no evidence that he used the accused marks in commerce. Defendant has filed an alternative summary judgment motion in which he contends that plaintiff is not entitled to money damages on any of its claims.

**I.  Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986);

Fed. R. Civ. P. 56(c). Once the moving party has met his burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

**II. Background**

Plaintiff owns U.S. Trademark Registration No. 1,729,449 for the mark "SAINT LOUIS UNIVERSITY." Plaintiff also claims protection for its unregistered marks, "The University News" and the associated caption, "A Student Voice Serving Saint Louis University Since 1921." Defendant does not dispute plaintiff's contention that these marks have become uniquely associated with the University through extensive use and promotion.

Defendant is a tenured professor employed by plaintiff. Between 1974 and early 2008, he acted as an advisor to The University News, the student newspaper. In the spring of 2007, the university's administration proposed a revision of the newspaper's charter. Diana Benanti, the editor-in-chief at the time, testified that members of the administration warned the

editorial board that the staff should be prepared to "go independent" and move off campus.

On March 16, 2007, defendant went to the office of the Missouri Secretary of State and asked to "register" the name "The University News." He testified that his purpose was to "reserve" the name for the students' use, in the event that the university discontinued publication of the paper on campus. According to defendant, a clerk at the Secretary of State's office completed an "archive search" for the names "University News" and "University News, a student voice serving St. Louis U." and determined that the names were not registered. Defendant then completed and filed articles of incorporation for a non-profit entity that he named "The University News, a Student Voice Serving Saint Louis University Since 1921."

Defendant told Ms. Benanti that he had "registered" the name for the students' use. Shortly thereafter, Ms. Benanti's tenure as editor-in-chief ended, and the decision whether to continue publication under the university's auspices fell to her successor. In the summer of 2007, the incoming editorial board accepted the university's terms for the new charter. On August 21, 2007, defendant filed with the Missouri Secretary of State articles of dissolution for the non-profit entity he had incorporated, accompanied by a letter typed on University News letterhead. Defendant used a university fax machine to send the documents and

a "SLU Communication" fax line appears across the top of the paperwork on file with the Secretary of State. No newspaper or other publication was ever produced by the corporation the defendant formed.

Defendant testified that, outside the act of filing articles of incorporation, he did not use the phrase "The University News, A Student Voice Serving Saint Louis University Since 1921" in any manner; he did not use the name for fund-raising, to rent space to publish a newspaper, or to advertise the establishment of a publication in competition with plaintiff's paper. Plaintiff has not identified any instance in which defendant publicly used the accused marks.

### III. Discussion

The parties' legal dispute concerns plaintiff's rights to its protected marks and whether defendant's actions have imperiled the integrity of those marks. Plaintiff alleges that, by incorporating an entity with the name, "The University News, a Student Voice Serving Saint Louis University Since 1921," defendant infringed its registered trademark, "SAINT LOUIS UNIVERSITY," and its unregistered marks, "The University News" and "a Student Voice Serving Saint Louis University Since 1921." Plaintiff also asserts that the corporation the defendant formed constitutes a false designation of origin that is likely to

deceive the public that the university sponsors an unauthorized publication.

The Lanham Act imposes civil liability on "any person who . . . without the consent of the registrant . . . use[s] in commerce any reproduction . . . or colorable imitation of a registered mark." 15 U.S.C. § 1114(1)(a). The Act similarly imposes liability on any person who "uses in commerce any term, name, symbol, or device . . . or false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of goods, services or commercial activities." 15 U.S.C. § 1125(a). General trademark principles also apply to plaintiff's trademark claim under the Missouri common law. Adbar Co., L.C. v. PCAA Missouri, LLC, Case No. 06-CV-1689 (JCH), 2008 WL 68858 *12 (E.D. Mo. Jan. 24, 2008).

Defendant contends that he is entitled to summary judgment because he never used the infringing marks in commerce. Plaintiff identifies the following activities as use in commerce: (1) defendant used the infringing marks when he registered a nonprofit corporation; (2) defendant "shared his proposals" to start an independent newspaper using the new name; (3) he looked into leasing new space for the newspaper; (4) he used the niversity's letterhead to correspond with the office of the Secretary of State on behalf of his incorporated entity; and (5) he "placed in the permanent, official records of the Missouri Secretary of State

filings that give the false indication that [plaintiff] was affiliated with the non-profit entity and approved of its creation and dissolution."

The record contains no evidence that defendant "shared his proposals" to start an independent newspaper using the incorporated name or that he attempted to lease space for such an enterprise. It is, however, undisputed that defendant formed a corporation bearing the plaintiff's registered trademark and unregistered marks, that defendant used the "University News" letterhead in communicating with the Secretary of State's office, and that a public record exists of the formation and dissolution of defendant's corporation. The question is whether any of these undisputed facts establishes use in commerce.

Plaintiff cites the case of <u>Committee for Idaho's High Desert v. Yost</u>, 92 F.3d 814 (9th Cir. 1996), for its contention that defendant's conduct is actionable under the Lanham Act. The defendants in <u>Yost</u> were individuals associated with agricultural and cattle organizations who were opposed to the listing of a particular snail on the endangered species list. Plaintiff, the Committee for Idaho's High Desert, was an environmental group instrumental in getting the snail listed. When defendants learned that the Committee had inadvertently allowed its corporate charter to lapse, they promptly incorporated under the same name. They subsequently testified at a public hearing in support of an Air

Force training range. They identified themselves as officers of the successor committee in the hopes of enhancing their environmentalist credentials while advocating a position they knew the Committee denounced. The Court of Appeals reversed the district court's dismissal of the individual defendants, finding that the act of forming the corporation <u>and</u> publicly testifying in the corporation's name were sufficient to hold the individual officers liable "for using in commerce, in connection with services, a name which is likely to confuse." <u>Id.</u> at 823.

In the instant case, there is no evidence that defendant used the accused marks in public. Defendant told the newspaper's editor-in-chief Diana Benanti that he had "reserved the name" of the paper for the students' use, should they want it. However, "[a] company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services." <u>1-800 Contacts, Inc. v. WhenU.Com, Inc.</u>, 414 F.3d 400, 409 (2nd Cir. 2005); <u>see also</u> <u>Meta-Films Assoc. Inc. v. MCA, Inc.</u>, 568 F. Supp. 1346 (D. Cal. 1984) (defendants' internal use of plaintiffs' title is not infringement); Louis Altman, 4 Callmann on Unfair Competition,

Trademarks and Monopolies § 22:25 n.1 (4th ed. 2004) ("A fortiori, a defendant who does not sell, but merely uses internally within his own company, the trademarked product of another, is not a trademark infringer or unfair competitor by virtue of such use."); J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 23.5 (4th ed. 1996) ("In-house, private use where the trademark is not seen publicly is not sufficient to constitute infringement."). In this case, defendant took steps to make the infringing name available to the students who ultimately decided not to use it. Defendant's actions amount to no more than "internal utilization."

Plaintiff points to the fact that defendant used "University News" letterhead when he canceled the articles of incorporation. Thus, plaintiff asserts, the University is forever associated with the incorporation and dissolution of defendant's entity, perhaps leading others to believe that plaintiff abandoned its rights in the marks. The conduct that plaintiff claims to be infringing was the defendant's use of the university's marks in incorporating the non-profit entity; the Court fails to see the legal import of the defendant's later use of the letterhead to cancel the articles of incorporation. Furthermore, the Court notes that plaintiff has brought a separate claim for misuse of a benevolent society's name, under Mo. Rev. Stat. §§ 417.150 *et seq*.

As plaintiff points out, the law of unfair competition is designed to prevent "commercial hitchhiking" and "attempts to trade on another's reputation." Better Business Bureau Advertising Club, Inc. v. Chappell, 307 S.W.2d 510, 514 (Mo. Ct. App. 1957). Plaintiff contends, correctly, that it "is no longer necessary that the parties be engaged in competitive business . . . or that an actual diversion of business be shown." Cushman v. Mutton Hollow Land Dev., 782 S.W.2d 150, 157 (Mo. Ct. App. 1990). However, plaintiff is not relieved of the obligation to show "that the public is likely to be confused as to the source or sponsorship of the defendant's services." Dynamic Sales Co., Inc. v. Dynamic Fastener Service, Inc., 803 S.W.2d 129, 132 (Mo. Ct. App. 1990) (quoting Pan American World Airways, Inc. v. Pan American School of Travel, 648 F. Supp. 1026, 1037 (S.D.N.Y. 1986)).

Plaintiff's unfair competition claim is based on allegations that defendant falsely advertised, or intended to advertise, that he distributed or intended to distribute a newspaper published, sponsored, authorized by, or affiliated with plaintiff. Such acts would unfairly use the reputation and goodwill associated with plaintiff's marks, and would cause confusion among the public concerning such a publication. Neither the defendant nor the corporation he formed produce any newspaper, publication or other goods, nor did they provide any services. In the absence of goods

or services produced by defendant, there can be no public confusion.

Plaintiff also brings a claim under Missouri's anti-dilution statute, Mo. Rev. Stat. §§ 417.061 *et seq*. "The gravamen of a dilution complaint is that the [defendant's] continuing use of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that . . . the plaintiff's mark will eventually be deprived of all distinctiveness." <u>Frosty Treats Inc. v. Sony Computer Entertainment America Inc.</u>, 426 F.3d 1001, 1011 (8th Cir. 2005) (quoting <u>WSM, Inc. v. Hilton</u>, 724 F.2d 1320, 1332 (8th Cir. 1984)) (alteration in original). Once again, plaintiff contends that defendant "used" its mark by placing it on documents that remain on file in the office of the Missouri Secretary of State. Because such use is not in connection with "goods or services," plaintiff's dilution claim must fail.

Plaintiff asserts that defendant has hindered its efforts to prosecute its case by failing to preserve evidence. Defendant acknowledges that, once litigation commenced, he continued his practice of deleting his e-mails, including those in which he communicated with others regarding this litigation and the dispute between the students and the university. Plaintiff contends that defendant's conduct amounts to spoliation of evidence and has, by separate motion, moved for sanctions. Plaintiff argues that the

destruction of these documents gives rise to an inference that their contents were adverse to the defendant. The Court does not condone the flouting of rules of procedure and court orders and will separately address the sanctions motion. With respect to the summary judgment motion, however, information communicated in e-mails made its way to websites, published articles, and blog postings, which have been provided to the Court. Review of these sources establishes that the public debate has focused on the larger dispute having to do with control of the "University News." Nothing has appeared in these sources that indicates that defendant communicated the accused marks to the public in a manner likely to cause confusion.

## IV. Conclusion

Defendant has established that he is entitled to summary judgment on plaintiff's claims in Counts I through VI of its complaint. In Count VII of the complaint, which asserts a violation of Mo. Rev. Stat. §§ 417.150, plaintiff seeks only injunctive relief. Thus, defendant's alternative motion for summary judgment on the ground that plaintiff is not entitled to monetary damages on its claims will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment on Counts I through VI of plaintiff's complaint [Doc. #55] is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment as to monetary damages [Doc. #57] is **denied as moot**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a sur-reply [Doc. #74] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of December, 2008.