IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAINT LOUIS UNIVERSITY, a Missouri benevolent corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:07CV1733 CEJ |
| AVIS MEYER, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF SAINT LOUIS UNIVERSITY'S
TRIAL BRIEF**

**I.     INTRODUCTION**

The facts and law of Count VII are little in dispute. Plaintiff Saint Louis University is a Missouri benevolent corporation. As such, Missouri statutory law and well recognized equitable principles afford Saint Louis University the exclusive right to its name and the power to exclude others from (1) assuming, adopting or using its benevolent corporation name in identical form, (2) assuming, adopting or using a name so similar to its benevolent corporation name that it is a colorable imitation, or (3) assuming, adopting or using a name that in any way is calculated to deceive any person with respect to the benevolent corporation. *See* Mo. Rev. Stat. § 417.150.

The evidence to be submitted at trial will establish that Defendant Avis Meyer is an individual who has been employed by Saint Louis University for three decades. In March of 2007, Meyer assumed and adopted "Saint Louis University" within the name of his own non-profit corporation. He registered his corporation with the Missouri Secretary of State, and in doing so, effected a clear violation of § 417.150.

Saint Louis University v. Meyer    Doc. 85

1508126.07

Dockets.Justia.com

Then, in August of 2007, Meyer further violated § 417.150 when, after being notified by Saint Louis University that it did not approve of his adoption of the Saint Louis University name as part of the name of his non-profit corporation, Meyer acted to deceive the public when he submitted Saint Louis University letterhead, along with documents listing Saint Louis University's contact information and fax line (which lists "SLU Communication" as the origin), to the Missouri Secretary of State on behalf of his non-profit corporation as if they were his own, or as if he were acting with the authority of Saint Louis University. He was not. This conduct again violated § 417.150.

As explained in more detail below, by way of Count VII of the Complaint, Saint Louis University seeks a declaration that Meyer's acts were wrongful, not authorized by Saint Louis University, and in violation of the statute. Saint Louis University seeks a corresponding injunction against any further adoption or assumption of Saint Louis University's name or any colorable imitation by Meyer (who has refused to provide any written assurances against further violations, although requested well before this lawsuit was instituted). As part of the declaration and injunction mentioned above, Saint Louis University additionally seeks an order to correct the deceptive public record so that it can restore the integrity of its name and any effect Meyer's acts could cause in the future, and other appropriate relief, all set forth in the Proposed Findings of Fact, Conclusions of Law, and Declaratory, Injunctive and Other Relief attached hereto as Exhibit 1.

## II. THE INTEGRITY OF A BENEVOLENT CORPORATION'S NAME IS TO BE PROTECTED IN FULL AND REMEDIES ARE TO BE LIBERALLY APPLIED.

The Eighth Circuit has a long and solid history of protecting with some fervor the absolute integrity of the name of a religious, benevolent or charitable entity. *See, e.g., Talbot v. Independent Order of Owls*, 220 F. 660, 662 (8th Cir. 1915) (discussing the non-statutory right

2

of a charitable entity and stating that "this principle of equity is just and salutary, and that it should be liberally applied and enforced, and is self-evident"). Almost a century ago, Missouri (along with several other states) codified the principle that a religious, benevolent or charitable organization is entitled to prevent any encroachment upon its name. *See* Mo. Rev. Stat. § 417.150 (first enacted 1919); *see also* Ga. Code § 10-1-470 (first enacted 1909); Mich. Comp. Laws § 430.51 (first enacted 1929); NY CLS Gen Bus § 135 (first enacted 1909); Nev. Rev. Stat. § 601.010 (first enacted 1911). The Missouri statute, § 417.150, provides great latitude in the relief to be afforded the plaintiff, stating that "the organization which was first organized and used the name and first became incorporated or organized under the laws of the United States or of any state in the union, shall be entitled in this state to the prior ***and exclusive use of such name***, and the rights of such societies, associations, corporations or organizations and of their individual members ***shall be fixed and determined accordingly***." Mo. Rev. Stat. § 417.150 (emphasis added).

In protecting the rights of religious, benevolent and charitable corporations, courts have granted "greater protection" than is afforded a "for profit" organization. *See, e.g., Cancer Research Inst., Inc. v. Cancer Research So., Inc.*, 694 F. Supp. 1051, 1056, n. 5 (S.D.N.Y. 1988) (citing cases, including *Missouri Fed. of the Blind v. Nat'l Fed. of the Blind of Missouri, Inc.*, 505 S.W.2d 1 (Mo. Ct. App. 1973)). Several courts have granted injunctions in favor of prior existing benevolent or charitable corporations to protect the integrity of their names. *Missouri Fed. of the Blind*, 505 S.W.2d at 5 (citing cases);[1] *Lincoln Ctr. for Performing Arts, Inc. v.*

---

[1] The *Missouri Fed. of the Blind* court analyzed both an unfair competition claim (including the likelihood of confusion) and a statutory claim under § 417.150 (which does not include a confusion analysis). The requested injunction was denied in that case because the plaintiff did not act diligently to protect its rights. Saint Louis University recognizes that it may not sit silent with knowledge of a misuse of its name (and any deception that has occurred) for fear of losing rights, as was the case in the *Missouri Fed. of the Blind* case. This case was therefore necessary as filed.

3

*Lincoln Ctr. Classics, Record Soc., Inc.*, 210 N.Y.S.2d 275 (1960). An injunction is appropriate where the same name is adopted or where the plaintiff's name is merely incorporated within the name selected by the defendant. *Lincoln Ctr.*, 210 N.Y.S.2d at 276.

III. **THE EVIDENCE AT TRIAL WILL ESTABLISH THAT DEFENDANT AVIS MEYER VIOLATED § 417.150 WHEN HE ADOPTED, ASSUMED AND/OR MISUSED SAINT LOUIS UNIVERSITY'S BENEVOLENT SOCIETY NAME, A COLORABLE IMITATION THEREOF, OR ACTED IN A WAY CALCULATED TO DECEIVE WITH REGARD TO PLAINTIFF.**

The evidence in this case will establish that Saint Louis University is a duly organized and existing Missouri benevolent corporation. Its charter, then using the name "St. Louis University," was adopted by the Missouri legislature in 1832. It has operated as a religious, educational institution using either St. Louis University or Saint Louis University since that time.[2] Saint Louis University has gained great stature within the St. Louis community and is well known nationally for its educational and benevolent missions. Based upon these facts, which are not in dispute for purposes of trial, Saint Louis University is entitled pursuant to § 417.150 to maintain, without intrusion, the integrity of its name.

The evidence will also show that in March of 2007, Avis Meyer formed his own Missouri non-profit corporation. He named his non-profit corporation "The University News, a Student Voice Serving Saint Louis University Since 1921." The name incorporates in its entirety Saint Louis University's benevolent corporation's name or a colorable imitation of "St. Louis University." The name he adopted additionally is almost identical to the name of the University's own student newspaper – "*The University News, a Student Voice of Saint Louis University Since 1921.*" The evidence at trial will establish that he purposefully selected a name as close as possible to the name of Saint Louis University's campus paper so that any

---

[2] This slight alteration between "St." and "Saint" is insignificant for purposes of § 417.150 because the statute protects both the incorporated name and any "colorable imitation" thereof. Both are pronounced the same.

4

independent paper published under his new non-profit corporation would benefit from the history and recognition of the paper Saint Louis University had published for nearly a century.

Meyer has been a Saint Louis University employee for over three decades. The evidence at trial will show that at the time Meyer submitted his Articles of Incorporation to the Missouri Secretary of State, he was keenly aware of Saint Louis University's name and its status as a Jesuit educational institution. Meyer has admitted, and it is established for purposes of trial, that he did not seek or have Saint Louis University's permission to include the name "Saint Louis University" within the registered name of his non-profit corporation. It is also established that Meyer did not notify his employer, Saint Louis University, of his intention to include "Saint Louis University" in the name of his non-profit corporation before he submitted the Articles of Incorporation to the Missouri Secretary of State.

As a matter of law, Meyer's mere formation of his non-profit corporation was an assumption and adoption of Saint Louis University's benevolent society name (or a colorable imitation) in violation of § 417.150. Saint Louis University seeks a Declaration of such and an injunction against Meyer's further adoption or assumption of "Saint Louis University" in any manner. *See* Exhibit 1, Proposed Findings of Fact and Conclusions of Law.

Meyer may claim that his intent was innocent and that he never published a paper. As noted above, there are no use or competition requirements for a violation of § 417.150, and additionally, granting the declaration and injunction requested "rests upon the unfairness of a subsequent use which misappropriates a name already identified by the public with the activities of another; the owner may not be deprived of the benefits of a valid tradename, whatever may be the motives of the infringer." *Missouri Fed. of the Blind*, 505 S.W.2d at 7. Moreover, the evidence at trial will show that the intended purpose of the non-profit corporation was to

"reserve" the name for an independent paper. The benefit of using the same name as Saint Louis University's own campus paper was to capture Saint Louis University's reputation and goodwill. Meyer's conduct was a calculated effort to deceive with regard to the independent paper's history as it relates to Saint Louis University. This is a further violation of § 417.150. The requested declaration and injunction are authorized and justly warranted.

Meyer also violated § 417.150 when he created a permanent public record that shows Saint Louis University as affiliated with the wrongfully registered non-profit corporation.[3] The evidence at trial will establish that in August of 2007, after being notified that Saint Louis University did not approve of his adoption of its name or the registration of his non-profit corporation incorporating the "Saint Louis University" name, Meyer proceeded to assume the Saint Louis University name again by using as his own the University's letterhead to correspond with the Secretary of State as if his non-profit corporation was affiliated with or sponsored by Saint Louis University. He also submitted forms which listed Saint Louis University's name and contact information. Those forms are now a public record.

These acts invade Saint Louis University's right to maintain the integrity of its name and to "exclusive use of such name" in violation of § 417.150. The evidence at trial will show that this conduct was a deliberate act. Meyer did this to cover his tracks and deceive the public as to Saint Louis University's involvement in and approval of his actions. *See Lincoln Center*, 210 N.Y.S.2d at 277 (granting injunction despite defendant's "laudable purpose" where the intent was to so resemble the plaintiff's name to give the impression the two were affiliated). Saint Louis University seeks an order from the Court requiring that Meyer take steps to remove or

---

[3] Section 417.150 is violated by any act that "adopts," "assumes" or "uses," among other things, a benevolent corporation's name or any colorable imitation thereof or, separately, any act that is "calculated to deceive" with regard to the benevolent corporation.

correct the record with the Missouri Secretary of State. *See* Exhibit 1, Proposed Findings of Fact and Conclusions of Law (and attached Certificate of Correction Form) at p. 4, ¶ B.

IV.  **MEYER SHOULD BE ORDERED TO PAY SAINT LOUIS UNIVERSITY'S ATTORNEYS' FEES AND COSTS RELATED TO THIS ACTION.**

Missouri law provides that even in the absence of a statutory or contractual provision, a court may award attorneys' fees and costs to a plaintiff where the case involves "unusual circumstances." *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 557-558 (Mo. Ct. App. 1985). As the Court is aware, and as will be presented at trial, this case could and likely would have been avoided had Meyer heeded the request in the two cease and desist letters sent to him to properly dissolve his non-profit corporation (in his name, not the University's) and to give Saint Louis University some assurances that he had not used, and would not use, the name of his registered non-profit corporation to publish a newspaper. Meyer dissolved the corporation after receiving the second letter, but did so flippantly as if he *were* Saint Louis University (using its letterhead, contact information, and fax), perhaps to add credence to his prior wrongful acts after he was caught red-handed or to intentionally create a false impression. He never, however, told Saint Louis University to what extent he had used the name to set up an independent newspaper under the auspices of the non-profit corporation and never promised not to use the name in some other unlawful way.

It truly is "unusual" for a benevolent corporation to be forced to sue one of its own tenured professors because that professor stubbornly refused to remedy his first misuse of his employer's name and to promise not to adopt *again*, as he stated in an interview, the benevolent entity's name as his own. Saint Louis University was forced, quite unnecessarily, to proceed with this lawsuit and incur attorneys' fees and costs to get those simple assurances, to learn the additional extent to which Meyer violated its rights, to clarify the public record with regard to its

involvement with the non-profit corporation, and to avoid any claim in the future that it slept on its rights (diminishing under the law the value of its name). The litigation was then multiplied due to Meyer's discovery abuses, including completely inaccurate and false interrogatory answers (for which the Court granted a motion to compel and took an itemization of fees under advisement) and intentional spoliation of evidence after receiving a litigation hold letter (for which the motion for sanctions remains before the Court).[4] As a benevolent corporation, Saint Louis University should not be required to bear the expense of this type of litigation. Public policy dictates that benevolent entities not have to use their resources to the extent Meyer's conduct during this litigation has required to simply maintain the integrity of their name under this statute.

Attorneys' fees are also particularly appropriate in this case because of the nature of the claim. Section 417.150 essentially extends trademark rights to a religious, benevolent, or charitable corporation that might not otherwise be able to protect its name because it does not engage in a particular type of commercial activity, to the extent that might be necessary. Attorneys' fees are routinely awarded to trademark plaintiffs when the conduct of the defendant is willful (*i.e.*, an "exceptional case" under the Lanham Act, 15 U.S.C. § 1117). It only makes sense that when there is, as in this case, a willful adoption, assumption or use of a benevolent entity's name, the same remedies, including an award of attorneys' fees for the plaintiff, should be allowed.

---

[4] Indeed, the litigation very likely would have been avoided altogether if Meyer had sent the letter he claims he created on his home computer. Meyer Dep., at p. 84-85, 94-95. Even that letter was apparently destroyed and wiped clean from his hard drive because he has never produced it in this litigation.

## V. CONCLUSION

As explained above, the evidence at trial will establish a violation of Mo. Rev. Stat. § 417.150. To recapture its exclusive right to use of its name, Plaintiff Saint Louis University requests that the Court enter the Proposed Findings of Fact, Conclusions of Law, and Declaratory, Injunctive and Other Relief attached hereto as Exhibit 1, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By:    /s/ Frank B. Janoski
       Frank B. Janoski, #3480
       Bridget Hoy, #109375
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Fax: (314) 612-7837
Email: fjanoski@lewisrice.com
Email: bhoy@lewisrice.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I further certify that on the 31st day of December, 2008, the foregoing was filed with the Clerk of Court to be served via the Court's ECF system upon all counsel of record.

/s/ Frank B. Janoski
Frank B. Janoski
LEWIS, RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Facsimile: (314) 612-1307
E-mail: fjanoski@lewisrice.com
