1           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION
2

3

4    SAINT LOUIS UNIVERSITY, A            )
     MISSOURI BENEVOLENT CORPORATION,     )
5                                         )
                      PLAINTIFF,          )
6                                         )
7                    vs.                  ) Case No.  4:07-CV-1733-CEJ
                                          )
8    AVIS MEYER,                          )
                                          )
9                    DEFENDANT.           )
                                          )
10   - - - - - - - - - - - - - - - - - - - - - - - - - - -

11

12

13           BEFORE THE HONORABLE CAROL E. JACKSON
                UNITED STATES DISTRICT JUDGE
14              PRETRIAL MOTION HEARING
                    MARCH 2, 2009
15

16

17   COURT REPORTER:        GARY BOND, RMR, RPR
                            THOMAS F. EAGLETON COURTHOUSE
18                          111 S. TENTH STREET, THIRD FLOOR
                            ST. LOUIS, MISSOURI 63102
19                          314.244.7980

20

21

22

23

24

25

1                           APPEARANCES

2

3

4    FOR THE PLAINTIFF:

5                        LEWIS, RICE & FINGERSH
                         BY:   FRANK JANOSKI, ESQ.
6                              DAVID VEDER, ESQ.
                         500 N. BROADWAY, SUITE 2000
7                        ST. LOUIS, MISSOURI  63102-2147
                         314.444.7600
8                        FJANOSKI@LEWISRICE.COM

9

10   FOR THE DEFENDANT:

11                       POLSTER, LIEDER, WOODRUFF & LUCCHESI,
                         L.C.
12                       BY:   BRIAN GILL, ESQ.
                               NELSON NOLTE, ESQ.
13                       12412 POWERSCOURT DRIVE
                         SUITE 200
14                       ST. LOUIS, MISSOURI  63131
                         314.238.2400

15

16

17

18

19

20

21

22

23

24

25

ST. LOUIS, MISSOURI; MARCH 2, 2009

9:45 a.m.

THE COURT:   Good morning.

MR. JANOSKI:   Good morning, Your Honor.

THE COURT:   This is St. Louis University v. Avis Meyer.   It is before the Court for trial.   Who is here for the plaintiff?

MR. JANOSKI:   Frank Janoski from Louis Rice, Your Honor.   Also my associate David Weder is here and Danielle Uy, St. Louis Univesity General Counsel and also Bridgette Gehm, one of our paralegals.

THE COURT:   All right.   Good morning to all of you. And for the defendant?

MR. GILL:   Good morning, Your Honor.

THE COURT:   Good morning.

MR. GILL:   My name is Brian Gill from the law firm of Polster, Lieder Woodruff & Lucchesi.   With me is cocounsel, Nelson Nolte, and paralegal Marissa Lucchesi.

THE COURT:   Good morning to you.   Mr. Janoski, I noticed you don't have a lot of witnesses on your witness list.   About how long do you think it will take for the plaintiff to present its case?

MR. JANOSKI:   About four or five hours, Your Honor.

THE COURT:   Okay.   All right.   I note also that there were some motions in limine filed.   I guess the only

one that really concerns me, and it is not really a motion in limine.  It is a motion to I believe to strike two witnesses.  Well, it is a motion in limine by the defendant to exclude witnesses whom the defendant contends were not timely disclosed in disclosure and in discovery.

My questions is:  What do either of these witnesses have to do with the issue that's involved in this case?

MR. JANOSKI:  Well, with regard to the two witnesses, Your Honor, some of these witnesses will testify on the -- and let me get that -- with regard to various matters concerning this and going to as much the remedy that we're looking for and the motive as to looking at what the defendant has argued in his trial brief.

They would be anticipatory of showing why the or the control the university has over the University News and its name and the usage of its name; the usage of its name with regard to Mr. Porterfield; and also when the students had decided that they were going to accept the charter, which has become an issue here as to why the defendant or would the defendant have dissolved the corporation without the Cease and Desist letters at all.

Certainly, the defendant has stated that, you know, that he intends to take the newspaper independent at some point in the future.  And, certainly, Mr. Porterfield is going to address that from our standpoint.

1          As it relates to Dr. Weixlmann, he will also testify

2     in that regard of what the negotiations were at that time.

3     These certainly are individuals that were disclosed we

4     believe, Your Honor, in discovery; that in response to

5     interrogatory responses, we referred to documents that were

6     produced, and they were named in those documents.   They

7     certainly have had four months in which to take their

8     deposition.   We've made that offer to them a long time ago,

9     and they've had their affidavits for over four months now.

10          THE COURT:   Well, were they identified as witnesses

11    who had information or evidence on the issues that you tell

12    me today they're going to testify about?

13          MR. JANOSKI:   In the documents, they do.   Yes, Your

14    Honor and also in their affidavits.

15          THE COURT:   Okay.   And when were these affidavits

16    produced?

17          MR. JANOSKI:   They were with regard to the summary

18    judgment.   I think it was over four months ago that we had

19    done that.

20          THE COURT:   Okay.   But when you made your Rule 26

21    disclosures, they weren't mentioned or were they?

22          MR. JANOSKI:   No.   No, Your Honor.   However, we said

23    that other people would be mentioned as discovery went along;

24    and they were mentioned in discovery.   And responses to

25    interrogatories, we said that there was information, and they

1    were mentioned in Miss Banantes (phonetic) and Dr. Meyer's

2    deposition.

3              They were also mentioned, as I said, in the

4    documents; and there is a discovery response that said

5    Individuals with knowledge were in those documents.   Now,

6    they were mentioned in about 200 documents each.   They

7    weren't just slipped in somewhere.

8              THE COURT:   Well, their names may have been

9    mentioned.   But my question is whether the substance of the

10   information that they had was disclosed adequately in these

11   materials?

12             MR. JANOSKI:   We think it was open as to what they

13   would, because they're going to be referred to.   And as a

14   matter of fact, the defendants, some of their exhibits

15   themselves are from those particular individuals.   So they

16   couldn't have been surprised.

17             THE COURT:   All right.   All right.   Mr. Gill or Mr.

18   Nolte?

19             MR. NOLTE:   Your Honor, these witnesses were never

20   disclosed in interrogatory responses directly relating to

21   this issue, asking them for who they were going to call at

22   trial.

23             In fact, that interrogatory answer was not answered

24   at all with any of the witnesses that are being called today.

25   We are just going after Mr. Porterfield and Mr. Galli,

1   because we have no idea --

2          THE COURT:   And who's the other one?

3          MR. NOLTE:   Mr. Porterfield and Mr. Weixlmann.   I

4   apologize.

5          THE COURT:   Okay.

6          MR. NOLTE:   Also in this case, Avis Meyer was

7   sanctioned $3,900 for failure to properly supplement

8   interrogatory response.   And I think in this case where the

9   Rule 26(a) disclosures, which provided only Avis Meyer as a

10   witness was never supplemented with any witnesses or the

11   Interrogatory Number 16 response, which was not provided any

12   witnesses is telling that they are sandbagging on these

13   people.

14          The fact that they submitted affidavits in response

15   to summary judgment motions after the end of the discovery

16   still doesn't excuse the fact they were never disclosed in

17   interrogatory response or Rule 26(a) disclosures.   The fact

18   that they were mentioned in documents that they were produced

19   doesn't mean that they were going to testify at trial or we

20   understand the substance of their testimony.

21          So just merely being mentioned in documents as well

22   as many other people, basically, if they're allowed to

23   testify now, then SLU is allowed to sandbag on their

24   requirements and their responsibilities under the rules of

25   discovery.

THE COURT:  Okay.  All right.  Well, I don't like to
deal with discovery problems at trial, for obvious reasons.
It delays the proceedings.  But, you know, this has come up
so I have to address it.

I also feel that the parties should follow the rules
of discovery and disclosure.  You all know what they are, and
you know what your responsibilities are.  The issue here, it
seems to me, involves these two individuals who didn't just
materialize out of nowhere.  These were individuals who were,
I believe, known to both sides.  The extent to which the
knowledge of their testimony or their anticipated testimony
is known remains to be seen.

But I'm not convinced that, even if this is an
untimely disclosure, I'm not convinced that the defendant is
prejudiced by it.  So here's what I'm going to do.  I'm also
not 100 percent convinced that these witnesses are relevant
to the sole remaining issue involved in this case.  But I'll
deal with that when they testify.

I'm going to let them testify.  I'm going to deny
the motion in limine to exclude witnesses, which is Document
Number 96.  I'm going to deny that without prejudice.  Mr.
Nolte, I don't know if you or Mr. Gill will be handling the
cross-examination of these witnesses.  But if it appears that
their testimony gets into areas that you feel you have not
had adequate notice of and opportunity to explore before

trial, then you can raise this issue again, and I'll address it and determine whether you have sustained any prejudice by their being allowed to testify.

Okay. Now, as far as any objections that were made in your pretrial submissions directed to exhibits, you can make those objections during trial as those exhibits are offered, and I'll rule on them in that manner. The same applies to any objections to depositions or interrogatory responses. I'll rule on those as they are made during the course of the trial.

There are some additional motions in limine. The defendant has a motion in limine to preclude certain testimony that he anticipates will be provided or presented by the plaintiff; likewise, the plaintiff has a motion in limine that relates to some evidence that it expects the defendant to present. I'm going to deny both of these motions in limine without prejudice.

To the extent that either party attempts to elicit testimony or present evidence that I believe is not relevant to the issue remaining in this case, I will rule on that; and I will exclude that evidence. Since we don't have a jury, there isn't any concern about presenting evidence that the jury might hear and take into consideration improperly.

I will rule on all hearsay objections that may be made during the trial, as well as any objections to evidence

1   that anyone believes is not relevant.   So the motions in

2   limine Number 98 and 93 are denied without prejudice.

3          Okay.   Now, I know that sometime ago there was a

4   Motion for Sanctions filed by the plaintiff based on a claim

5   that the defendant destroyed evidence improperly.   And I

6   don't remember how much discussion we had about this motion

7   the last time we were together.   Well, it was some months

8   ago.

9          But let me just say this about the motion.   If I

10  didn't say it before, I'll say it now.   I'm very troubled by

11  the manner in which these e-mails and other items of

12  evidence -- other correspondence -- were handled Dr. Meyer,

13  given the fact that he was placed on notice not to destroy

14  evidence.   And he made the decision to delete certain e-mails

15  and apparently did so without seeking the advice of his

16  counsel in determining whether or not these were in fact

17  materials that should have been retained.

18         That's very disturbing, and I think that it was in

19  complete disregard to his obligation to maintain evidence for

20  purposes of discovery.   So I believe that Dr. Meyer acted

21  improperly in that regard.   What I don't agree with is the

22  sanction that the plaintiff requests, which is essentially

23  entry of a default judgment against the defendant by striking

24  his Answer.

25         I don't believe that that drastic sanction is

appropriate, given the conduct on the defendant's part. It was wrongful. This is no doubt about it. The extent to which the defendant has been prejudiced is very difficult to determine, in part, because the documents are gone.

And also, since this motion was filed, a good portion of the plaintiff's case has been dismissed. So we're now down to one claim And the extent to which destruction of these documents has materially affected the plaintiff's ability to prove its claim really cannot be determined. So I don't believe it is appropriate to grant a default judgment in favor of the plaintiff as a sanction; however, I believe that some sanction is appropriate. At the very least, the defendant should be required and will be required to pay the plaintiff's attorney's fees in connection with presenting this Motion for Sanctions.

Further sanctions, I will consider. But I can tell you right now that there will be an award of attorney's fees for the plaintiff. Beyond that, I can't tell you at this time what I believe will be a further sanction, if any. And I'll just say this: This is the kind of behavior that really should never have occurred.

Dr. Meyer, you were represented by able counsel. If you were unsure about whether something was important or unimportant, it wouldn't have taken you very much time to ask them in advance of your destroying it. I know that you're an

intelligent man.   And while I don't believe there was any
intent on your part to thwart the plaintiff's case -- at
least I don't have any evidence of that -- this was reckless
and perhaps thoughtless behavior on your part.   Okay.   Are
you ready?

MR. JANOSKI:   I believe there are two other motions.
Just so the Court's record is cleaned up, there is a Motion
for Leave to Amend Exhibit Lists, Your Honor.

THE COURT:   That's granted.

MR. JANOSKI:   And then there is also a Motion to
Strike Belated Pretrial Filings that we had filed.   Your
Honor, I think thaat has become moot.

THE COURT:   Oh, this relates to the Motions in
Limine?

MR. JANOSKI:   Yes, Your Honor.

THE COURT:   Okay.   Yes.   That motion, which is
Document Number 102, is denied as moot.   Are you ready to
proceed, Mr. Janoski?

MR. JANOSKI:   Yes, I am, Your Honor.

THE COURT:   All right.

MR. JANOSKI:   May it please the Court, my name is
Frank Janoski, and I'm with the law firm of Louis, Rice &
Fingersh, and I represent St. Louis University in his matter.

The plaintiff, St. Louis University, is a Missouri
Benevolent Corporation; and this is not in dispute.   Thus, it

1   is by Missouri statute and equitable principals entitled to

2   the exclusive right in its name and "the power to exclude

3   others from assuming, adopting, or using its name; a

4   colorable imitation thereof; or calculated to deceive any

5   person with respect to such corporation."  And that's

6   Missouri Statute Chapter 415.105.  And, Your Honor, under the

7   item sonance (phonetic), it doesn't matter whether the "St."

8   in St. Louis University is "St." or "Saint."  And, you know,

9   it is also a colorable imitation thereof.

10          But the evidence will show there is little dispute

11   as to the facts, and we will submit that the requested remedy

12   is justified by defendant's conduct.  The evidence will show

13   that defendant Meyer is an individual employed with St. Louis

14   University for over three decades; a tenured professor.  He

15   was very familiar with the university's campus newspaper, The

16   University News and its long-standing tag line, "A Student

17   Voice of University Since 1921."  He was, among other things,

18   a copy editor for the newspaper.

19          In March of 2007, the defendant assumed and adopted

20   the name, "St. Louis University," within the name of his own

21   nonprofit corporation.  The corporate name is nearly

22   identical to that used by St. Louis University in connection

23   with its campus newspaper.  It included the name, "St. Louis

24   University."  He created the corporation as a not-for-profit

25   and stated in it, the evidence will show, that it would

1    publish a weekly newspaper.

2    He did this so that the new not-for-profit would

3    look like The University News and would benefit from the

4    history and recognition of the newspaper and that SLU had

5    gathered through its many years of use.  The evidence will

6    show after defendant Meyer was found out with regard to the

7    formation of the corporation and notified by St. Louis

8    University on several occasions of its objection, the

9    defendant then proceeded to terminate the corporation.

10    However, Your Honor, the facts will show that,

11    unlike his incorporation papers, where he identified his home

12    address, the defendant submitted papers on St. Louis

13    University letterhead that of The University News.  The

14    letterhead that he used had a St. Louis University address on

15    it.  The defendant then proceeded to use his university

16    signature block and indicated his university address for

17    correspondence.

18    The evidence will also show a fax line at the top of

19    the documents that were submitted, which show printing,

20    stating among some other things, "SLU.Communication.  And

21    "SLU" an abbreviation for "St. Louis University."  He did

22    this on behalf of his not-profit corporation.  SLU had not

23    authorized the use of the letterhead; his address at SLU for

24    his private enterprise.  And he created a permanent document

25    in the Missouri Secretary of States's office.

1          We will submit that this is a clear violation of

2     Missouri Statute 417.150 and was willfully done to deceive.

3     It also invades St. Louis University's right with regard to

4     the integrity of its name and to the exclusive use of such

5     name under the statute.

6          So at the end of the evidence, we will be seeking a

7     remedy justified by this wrongful conduct.  We will be asking

8     for an order from this Court mandating Dr. Meyer correct the

9     record in the Missouri Secretary of State office.  We will

10    also be seeking an injunction prohibiting him from any such

11    conduct in the future.  This will be based on interviews he

12    has given, where he states that there is a plan to have a

13    student newspaper off-campus; and he further said that he

14    would take as long as he was 80 years old to have this truly

15    independent.

16         Finally, we will ask for attorney's fees, because

17    his conduct and the unusual circumstances; his discovery

18    abuses which the Court in part has already ordered monetary

19    sanctions; defendant Meyer's intentional destruction of

20    evidence; and his conduct, which has required us to be here

21    today.  Thank you, Your Honor.

22         THE COURT:  Don't sit down yet.  I have a question.

23    One of the remedies mentioned that you intend to ask for is

24    that Dr. Meyer be ordered to correct the record in the

25    Missouri Secretary of State's office?

1        MR. JANOSKI:   Yes, Your Honor.

2        THE COURT:   And what record would that be?

3        MR. JANOSKI:   That would be the record where there

4   is his incorporation documents and also the documents where

5   he has dissolved the corporation.   And it appears, I believe,

6   that St. Louis University was compliant in that.

7        We have submitted with regard to our trial brief and

8   exhibits our proposed Findings of Fact and Conclusions of

9   Law; the document that is used in the Missouri Secretary of

10  State's office for this particular purpose to amend a record.

11  And also we have submitted to the Court what we believe is

12  the required language or the language that Dr. Meyer should

13  be required to insert in that document and sign.

14       THE COURT:   Okay.   Also, you mentioned that there

15  was or there is evidence that Dr. Meyer has stated his

16  intention to move the newspaper off-campus or to start an

17  off-campus student newspaper?

18       MR. JANOSKI:   Yes, Your Honor.   It is in an

19  interview that he gave in August of 2000 or that was

20  published in August of 2007.   And I believe it is Exhibit 14

21  that you will find in your binder that we have for you; and

22  that our witness will testify; and that Dr. Meyer will be

23  examined on.

24       THE COURT:   Well, there isn't anything wrong with

25  Dr. Meyer or anyone else starting a student newspaper

Off-campus --

MR. JANOSKI: No.

THE COURT: -- as long as they don't use St. Louis University's name or any of its marks or insignia or anything that would indicate or suggest that it was a publication of the university.

MR. JANOSKI: This is true, Your Honor.

THE COURT: So was his statement that he intends to use St. Louis University's name in some way with this off-campus newspaper or that he somehow intends to have people believing that it's a St. Louis University publication?

MR. JANOSKI: Well, not necessarily in that article, but he shows his intent, number one. And I don't know what else he did in that regard, because he did destroy all of his documents. And so we don't have anything related around that or any of the communications that he had with regard to that.

Certainly, his indication was, A, that, you know, he incorporated under that name. He also said he didn't believe at that time that the university had trademark rights in that particular name, even though he used "St. Louis University."

THE COURT: Okay.

MR. JANOSKI: Well, there will also be other testimony to support why we believe that it is appropriate for an injunction to be in place with regard to the name,

1    "St. Louis University," because, in order let's say this

2    enterprise to have any credibility or for it to be able to

3    raise funds in the way that it has now, it will have to

4    associate itself with St. Louis University in some way.

5            THE COURT:  Okay.  Also I noticed and I believe it

6    was in your brief -- yes -- that you also intend to seek

7    attorney's fees and costs?

8            MR. JANOSKI:  Yes, Your Honor.

9            THE COURT:  Thank you.

10           MR. JANOSKI:  You're welcome.

11           THE COURT:  Good morning?

12           MR. GILL:  Good morning.  May it please the Court,

13   my name is Brian Gill, and I'm an attorney with the law firm

14   of Polster, Lieder Woodruff & Luchessi, and I represent

15   Dr. Avis Meyer.

16           Since the time of FDR, a select group of SLU

17   students have met to produce a student newspaper.  Despite

18   their other responsibilities, such as academics or jobs, they

19   have met on a weekly production night to produce the weekly

20   newspaper for the community of SLU.  Production night is an

21   arduous task.  Typically, production night carries over into

22   the next morning.

23           Regardless of the next day's academic commitments,

24   these students produce the weekly newspaper.  For over 30

25   years of this time period, there has been a continuum  One

1   person for 30 years has continually provided the support for
2   the student newspaper.  This person, taking time away from
3   his own family, provided his support on weekly production
4   nights for the student staff.

5           And on these nights, he advised, mentored, coached,
6   cheerleaded, and encouraged the student staff to get through
7   production night.  This man is Dr. Avis Meyer, one of most
8   honored of SLU professors.  According to the plaintiff's
9   website, an alumni survey identified him as one of the ten
10  most influential an effective teachers at SLU.  The Office of
11  Student Life has honored him by establishing an annual award,
12  the Avis Meyer Outstanding Award.

13          The evidence will show that a little over two years
14  ago, Saint Louis University and the student staff had an
15  issue with the charter of the student newspaper.  The
16  evidence will show that because of this issue, the student
17  staff briefly considered moving the student newspaper
18  off-campus.

19          The evidence will show that Dr. Meyer, thinking that
20  the name of the student newspaper belonged to the student
21  staff, filed with the Missouri Secretary of State the
22  incorporation papers under the title, "The University News, a
23  Student Voice Serving St. Louis University since 1921."  The
24  evidence will show that Dr. Meyer filed the nonprofit
25  paperwork to reserve the students' name, in case the students

1  decided to go off-campus and in case they decided to use his

2  name.  This charter issue however was resolved between St.

3  Louis University and the student staff.

4      The evidence will show -- I'm sorry -- that part of

5  the resolving of the issue that the student staff decided to

6  remain on campus.  The evidence will show that a few months

7  after filing this corporation paperwork Dr. Meyer filed the

8  dissolution paperwork.  Yes, Dr. Meyer filed the nonprofit

9  paperwork without seeking authorization from St. Louis

10  University; and Dr. Meyer filed a seldomly used letterhead as

11  part of the dissolution of this corporation; however, this

12  ensuing litigation would impress even one of Victor Hugo's

13  inspectors.

14      This trial is over a single count of the Missouri

15  misuse of a benevolent society's name.  And on the screen,

16  the statute is put up for us.  And on the screen, there are

17  portions highlighted of the statute.  The statute calls out

18  different portions, such as "assuming, adopting, or using the

19  name of a benevolent society or assuming, adopting, or using

20  a name so nearly resembling to be a colorable imitation of

21  that name or a name that is calculated to deceive any

22  person."

23      The at-issue statute recites a colorable imitation

24  standard, which is a higher started and a more stricter

25  standard that a likelihood of confusion.  SLU's recorded

benevolent society name is "St. Louis University." Dr.
Meyer's not-for-profit corporation was titled, "The
University News, a Student Voice Serving St. Louis University
Since 1921."

The plaintiff's evidence will not show that Dr.
Meyer assumed, adopted, or used the plaintiff's benevolent
name in this corporation paperwork. The plaintiff's evidence
will not show that Dr. Meyer assumed or adopted or used a
name so similar to be a colorable imitation thereof. And,
finally, the plaintiff's evidence will not show that Dr.
Meyer, assumed, adopted, or used the name calculated to
deceive any person.

Further, under equitable injunction principles, the
plaintiff's evidence will not demonstrate that SLU has
suffered irreparable injury. The evidence will also show
that SLU admitted that it has not suffered an irreparable
injury. The evidence will also show that Dr. Meyer dissolved
this nonprofit corporation before this lawsuit was even
filed.

Further, the evidence will show that Dr. Meyer has
provided assertions to SLU that he has not used this
corporation name, other than a registration and dissolution
thereof. The parties have been in a relationship longer than
most marriages. So there's a disconnect here; however, the
disconnect is not a violation of Missouri Revised Statute

1    417.150 by Dr. Meyer.   Thank you.

2            THE COURT:   Don't sit down yet.   I have a question

3    for you.

4            MR. GILL:   Sure.

5            THE COURT:   This is a case in which the plaintiff is

6    seeking some specific injunctive relief, one of which is the

7    filing of this Statement of Correction with the Missouri

8    Secretary of State's office.   Now, I know that the Articles

9    of Dissolution have been Filed --

10           MR. GILL:   Correct.

11           THE COURT:   -- by Dr. Meyer.   But this particular

12   document -- this Statement of Correction -- has never been

13   filed; is that right?

14           MR. GILL:   Not yet.   No, Your Honor.

15           THE COURT:   All right.   That's just one of the items

16   of equitable relief that the plaintiff is seeking.

17           The other is an order enjoining Dr. Meyer from using

18   St. Louis University's name either spelled out "S-a-i-n-t" or

19   any similar variation except in the context of identifying

20   himself as being associated with the school.   And that's the

21   only equitable relief that's being requested?

22           MR. GILL:   Correct.

23           THE COURT:   Okay.   I don't understand what the

24   problem is.   I don't understand why we're here.

25           MR. GILL:   If I may, I mean Dr. Meyer is being

1    called as a witness.   And I -- you know, I would assume that

2    I can't answer for him -- but he would testify that he has no

3    plans on forming any paper or any corporation using SLU's

4    names or any variant thereof.

5             THE COURT:   Well, that's fine.   But here's the

6    thing:   You know, I think that the filing of this piece of

7    paper with the Secretary of State's office, that doesn't seem

8    to be some something that would cause anybody any problem,

9    particularly Dr. Meyer, since he has already dissolved the

10   corporation.   And you all have entered into this Stipulation

11   of Facts in which you've agreed that Dr. Meyer used St. Louis

12   University's name or did not seek the school's permission to

13   use St. Louis University's name in connection with the

14   nonprofit corporation he created.   Quite honestly, I'm very

15   baffled by this.   I mean, did you all go to ADR?

16             MR. JANOSKI:   Yes, Your Honor.

17             THE COURT:   Well, that was before, when they were

18   more claims.   But I mean it just seems to me if Dr. Meyer is

19   willing to submit this Statement of Correction and if he is

20   willing to or if you all can reach some kind of stipulation

21   about what use he can and cannot make of St. Louis

22   University's name in the future, those don't seem like very

23   difficult things for you all to agree to, in light of what

24   you've stipulated to.

25             Now, I understand that you don't believe that Dr.

1    Meyer has violated the statute.  I understand that there is

2    an issue of attorney's fees, and I understand that there is

3    some distrust on both sides, in light of some things that

4    have been said and that have been done in the past.  But

5    there is really not a whole lot here.

6            I mean, clearly, Dr. Meyer knows he can't use St.

7    Louis University's name, except in a limited context.  I mean

8    this whole lawsuit, I guess, stemmed from perhaps the

9    Articles of Incorporation but also this newspaper being --

10   well, there was never a newspaper published by the nonprofit

11   corporation but certainly there was some discussion of that

12   possibly happening.

13           And I'm sorry.  I just don't know why this isn't

14   something that you all can't reach some resolution of.  If

15   you can't, that's fine.  I mean I know you're all here and

16   you're ready to go to trial; and I'm more than happy to hear

17   your testimony.  But given the limited relief here -- at

18   least the equitable relief -- I don't know.

19           MR. GILL:  I agree, Your Honor.  In the last round

20   of motions with respect to summary judgment, you know, it did

21   come out that an offer of judgment was made.  And obviously

22   back in the beginning of the lawsuit, it was not accepted.

23   But that's come out in both parties' motions.

24           You know, he would agree to file this paperwork with

25   the Secretary of State.  He would agree he is not going to

1   have any plans on having a corporation or any newspaper at

2   all more or less using any of SLU's names or variants

3   thereof.  You know, I agree, and I wish we could work

4   something out.  We have to defend this.

5            I mean we have to defend this.  And, you know, if we

6   could come to an agreement, if he would.  I mean it is an

7   issue then of I don't know what the plaintiff would ask for

8   with respect to whether this is an admission of wrongdoing?

9   Is this a violation off statute?  I don't know what kind of

10  repercussions that would have for him  I agree.  Mr.

11  Janoski, I know you want to say something.

12           MR. JANOSKI:  Your Honor, we probably wouldn't be

13  here if we would have gotten the assurances up front.  We

14  didn't.  Contrary to what Mr. Gill has said, St. Louis

15  University has never gotten any assurance that Dr. Meyer

16  wasn't going to do what he said in that article.  Never ever.

17           He said that he sent me a letter that had those

18  assurances.  Never been produced.  Probably been destroyed,

19  if it was ever created at all.  And that was, you know, part

20  of the problem that we had.  Then we didn't know exactly what

21  he had done; who had contacted.  He destroyed all that

22  evidence that we've got here.  He's never before offered to

23  make the Correction document.

24           I mean we're here because there's been no

25  representation, as Mr. Gill is now making, let's say, to St.

Louis University.  And St. Louis University has to protect its name.  It does it in many, many instances, whether it's a commercial activity or whether it is a noncommercial activity; not treating Dr. Meyer any differently than anyone else that goes out and violates their rights.  And they've expended money to do this.  I mean they didn't want to do.

I mean we could have had this thing all put aside if early on when he dissolved it, he would have said, "Hey" -- well, first of all, he ignored the first letter and we had to draft a Complaint and everything.  But, you know, we've gone down the road because there has never been any assurances, among other things, that he's going to do forward with this. And that's why we're here.

THE COURT:  Okay.  Well, I understand the history of it.  And I didn't mean to suggest that you all didn't make good-faith efforts to try to resolve this, but here we are. And now what I'm hearing from Mr. Gill is that Dr. Meyer is willing to submit this Statement of Correction.  So that takes care of one item of equitable relief that the plaintiff is asking for.

Now, as far as the second part about using the university's name, I think that that's something that Dr. Meyer understands he's not allowed to do that in order to publish a newspaper or to make any kind of representation about the university that he doesn't have authority to make.

1        So putting aside before today, where are we?  I mean

2    do we need to have all of these witnesses come in and

3    testify?

4        MR. JANOSKI:  Do you want to give us some time?

5        THE COURT:  I would be happy to give you some time.

6    So we'll take a short recess, and you all let me know what

7    you're ready to resume.  Okay?  All right.

8        (Whereupon, a recess took place.)

9        THE COURT:  Well, here we are again.

10        MR. JANOSKI:  Here we are again, Your Honor.  Your

11    Honor, we have settled Count 7.  And what we would like to do

12    is tomorrow morning have counsel back with a proposed order.

13    We've taken there of the things that we've submitted to the

14    Court that we have agreed to and that the defendant has

15    agreed to entry of judgment on that.  And so that we can

16    bring that in the morning.  I don't think that we have the

17    ability to do the it right now.

18        THE COURT:  That's fine?

19        MR. JANOSKI:  So that takes care of that.  I have a

20    question though and certainly with regard to the spoliation.

21    Would you like us to submit like we did on the other --

22        THE COURT:  Yes.  I will need from you a verified

23    statement of your attorney's fees and costs in connection

24    with the spoliation motion.

25        MR. JANOSKI:  Okay.

1      THE COURT:   I don't know how long it'll take you to

2  do that.

3      MR. JANOSKI:   I could probably have it done -- today

4  is Monday.   By the end of the week.

5      THE COURT:   Okay.   That's fine.   Why do not you

6  submit that?

7      MR. NOLTE:   Your Honor, Nelson Nolte.

8      THE COURT:   Yes.

9      MR. NOLTE:   We would like the opportunity if we

10  could to respond to that written submission before you order,

11  if you would allow that, Your Honor?

12      THE COURT:   Of course.   If you've got some concerns

13  or some challenges to the amounts that are claimed, you'll

14  have the opportunity to do that.

15      MR. NOLTE:   Thank you very much.

16      THE COURT:   All right?   All right.   So, tomorrow,

17  are you going to want to put something on the record

18  tomorrow?

19      MR. JANOSKI:   We could probably just bring it to

20  your chambers, I guess, and just be ready for your signature

21  Really --

22      THE COURT:   All right.

23      MR. JANOSKI:   -- is what we anticipate.

24      THE COURT:   Okay.   That's fine.   All right.

25      MR. JANOSKI:   Is there a good time for the Court for

1  us to come back?

2  THE COURT:  No, I'll be here.

3  MR. JANOSKI:  Okay.

4  THE COURT:  So whenever you --

5  MR. JANOSKI:  We can call ahead?

6  THE COURT:  Why don't you do that?  I know I've got

7  some things scheduled tomorrow.  But, generally, I'll be

8  here.  Morning, definitely, I'll be here.

9  MR. JANOSKI:  We should be able to do this and have

10  it here; and we'll just call ahead.

11  THE COURT:  Okay.  That's fine.

12  MR. JANOSKI:  Thank you, judge.  We appreciate your

13  time.

14  THE COURT:  Thank you.  We're in recess.

15

16  (Proceedings concluded at 3:45 p.m)

17

18              *    *    *

19

20

21

22

23

24

25

UNITED STATES OF AMERICA                          )
                                                  )    ss:
EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION    )

C E R T I F I C A T E

I, Gary Bond, Certified Shorthand Reporter in and for the United States District Court for the Eastern District of Missouri, do hereby certify that I was present at and reported in machine shorthand the proceedings had the 2nd day of March, 2009, in the above mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys in this action, nor financially interested in the action.

I further certify that this transcript contains pages 1 through 29 and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

IN WITNESS WHEREOF, I have hereunto set my hand at St. Louis, Missouri, this 3rd day March, 2009.


                    /s/ Gary Bond
                    Gary Bond, RPR, RMR
                    Certified Shorthand Reporter