IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAINT LOUIS UNIVERSITY, a Missouri benevolent corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:07CV01733 CEJ |
| AVIS MEYER, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR ENTRY OF SANCTIONS AND MEMORANDUM IN SUPPORT REGARDING DEFENDANT'S DESTRUCTION OF EVIDENCE

**I.    INTRODUCTION**

The Court indicated during the pre-trial hearing that it would grant Plaintiff Saint Louis University's ("Plaintiff" or "SLU") Motion for Sanctions Against Defendant Avis Meyer for Spoliation of Evidence [dkt # 36]. It reserved, however, pending further briefing, a ruling as to the precise sanction to be entered. In response to the Court's request, Plaintiff delineates herein and further explains below the relief its seeks as appropriate sanctions for Defendant's destruction of evidence, including:

- an award of its attorneys' fees in the amount of $ 10,167.74;

- a monetary penalty against Defendant in an amount not less than $ 30,503.22;

- a monetary penalty against counsel for Defendant in an amount not less than $ 30,503.22; and

- a finding that Defendant Meyer willfully destroyed evidence that would have been adverse to him and his defenses.

## II. SANCTIONS TO BE ENTERED AGAINST DEFENDANT MEYER FOR DESTRUCTION OF EVIDENCE.

The Court has already recognized the egregiousness of Defendant's destruction of evidence and has stated that *"[a]t the very least,* the defendant . . . will be required to pay plaintiff's attorney's fees in connection with presenting this Motion for Sanctions. Further sanctions, I will consider." Pre-trial Hearing of March 2, 2009, Transcript [dkt # 122] at 11:12–16 (emphasis added). Set forth below is Plaintiff's itemization of fees for the award the Court is to enter and its request for additional sanctions.

### A. Award of Attorneys' Fees

The Court has already ruled that an award of attorneys' fees related to the preparation and filing of Plaintiff's Motion for Sanctions [dkt # 36] is appropriate because Defendant's conduct throughout this entire litigation has shown a "complete disregard to his obligation to maintain evidence for purposes of discovery," thereby hindering a speedy, efficient resolution of the issues in this case. See Pre-trial Hearing [dkt # 122] at 10:19–20; see also id. at 10:10–21 ("I'm [the Court] very troubled by the manner in which [this evidence was] handled [by] Dr. Meyer, given the fact that he was placed on notice not to destroy evidence."; "That's very disturbing . . ."; ". . . Dr. Meyer acted improperly in that regard."); id. at 11:1–2 ("[Defendant's conduct] was wrongful. This is no doubt about it. The extent to which the [Plaintiff] has been prejudiced is very difficult to determine, in part, because the documents are gone."); id. at 11:19–21 ("And I'll just say this: This is the kind of behavior that really should never have occurred."); id. at 12:3–4 (" . . . this was reckless and perhaps thoughtless behavior on [Defendant's] part."). Plaintiff submits that it incurred attorneys' fees in the amount of $ 10,167.74 directly related to its efforts to seek relief for Defendant's destruction of evidence. See Affidavit of F. Janoski, attached

hereto as Exhibit 1. As the Court has recognized, those amounts should be borne by Defendant; not Plaintiff. See Pre-trial Hearing of March 2, 2009, Transcript [dkt # 122] at 11:12–16. Because the Court has already found the hourly rate of Plaintiff's attorneys to be reasonable (See [dkt # 114] at p. 3), Plaintiff's attached submission sets forth the hours and descriptions of work performed.[1] Id. Plaintiff requests that the Court enter an award of attorneys' fees accordingly.

B.  **Additional Monetary Sanctions Against Meyer**

Defendant's intentional destruction of evidence is by far the most egregious and blatant case of spoliation imaginable. After being put on notice of his duty to preserve evidence, Dr. Meyer systematically destroyed an untold amount of relevant evidence—*and he blatantly admits to it*. See, e.g., EEOC v. Jacksonville Shipyards, Inc., 690 F. Supp. 995, 998 (M.D. Fla. 1988) ("the Court believes that failure to insure the preservation of records after receiving official notice is 'willful' behavior") (applying Fed. R. Civ. P. 37 sanctions analysis in the context of the court's "inherent power" to sanction discovery misconduct). This Defendant is not a corporation which must try to control the action of its employees. He is a well-educated individual who knows what he is doing. Moreover, it appears that his counsel sat by and let it happen, and apparently made no efforts to stop the ongoing destruction. As a result, Plaintiff has been forced to rely only on whatever evidence Defendant did not destroy and evidence that Plaintiff could track down from other sources. Consequently, Plaintiff and this Court have been permanently deprived of learning the full truth regarding Defendant's use of SLU's name and marks.

Under circumstances such as this, the Court is well justified in awarding a monetary penalty against Defendant above and beyond the award of attorneys' fees directly related to the

---

[1] Plaintiff submits that this issue was not as straightforward as the Motion to Compel wherein the Court awarded almost $ 4,000.00 in sanctions. Plaintiff submits that more research was involved and Plaintiff needed to carefully consider the remedies for this unusual scenario. Therefore, Plaintiff's counsel spent more time preparing the Motion for Sanctions than the average discovery motion.

bringing of the Motion for Sanctions. Particularly, Capellupo v. FMC Corp., 126 F.R.D. 545, 546–50 (D. Minn. 1989), instructs that where the defendant systematically destroys relevant evidence a monetary penalty is appropriate. There, the court awarded the plaintiff two times its attorneys' fees related to the motion for the express purpose of "punish[ing] defendant and deter[ing] future transgressions." Capellupo, 126 F.R.D. at 553.

Dr. Meyer's intentional and personal misconduct has severely prejudiced Plaintiff's ability to prosecute its case, has frustrated the judicial process, and has "defiled the temple of justice." See Stevenson v. Union Pac. R.R., 354 F.3d 739, 745, 750 (8th Cir. 2004) (entering sanctions for destruction of evidence). While an award of attorneys' fees in connection with presenting Plaintiff's Motion for Sanctions remedies *part* of the harm caused by Defendant's misconduct, such a sanction by itself does not sufficiently address the egregiousness of the conduct, the severe harm it has caused, nor does it deter similar future misconduct by this Defendant or others.

If the Court wishes to send a clear message that such blatant, intentional flouting of the discovery rules will not be tolerated, and that parties may not use spoliation as just another strategic litigation tool, a severe monetary penalty is necessary. Otherwise, after engaging in a simple cost-benefit analysis where the potential costs (the *chance* of having to pay the other side's attorneys' fees related to a single motion) are relatively low and the benefits (undermining the opposing party's claims or defenses) are extremely high, litigants may simply destroy the evidence knowing that, at most, they may have to write a check for a small portion of their opponent's overall fees *if* they are caught. Even if Defendant claims the amount of fees which are awarded against him is a relatively substantial sum, in the vast majority of cases, any fees related to a motion for spoliation sanctions will be a relatively insignificant amount when

compared to the potential upside to the spoliator. For the price of a few thousand dollars in sanctions, a party would be allowed to reap the windfall of dismissal, summary judgment, or even a verdict in his favor because of a perceived lack of evidence. Such a perverse result, which appears to have happened in this case and which is well within the Court's power to rectify, must be avoided.[2] Plaintiff was harmed to a greater extent than just having to present its Motion. It was robbed of valuable evidence and precluded from fully developing its case. Thus, a severe monetary penalty should be imposed.

In trying to avoid a monetary penalty, Defendant should not be allowed to hide behind his litany of self-serving, after-the-fact excuses. Throughout his deposition testimony and through his counsel at various hearings, Defendant has attempted to brush off his misconduct by claiming he just did not know any better. For example, during this Court's August 20, 2008, hearing on Plaintiff's Motion for Sanctions [dkt # 36] and other discovery abuse motions, Dr. Meyer's counsel flippantly tried to explain away Dr. Meyer's disregard to his discovery obligations, by excusing him as "not technically savvy. . . . He is not technical. You know, he is not a technology person." Motion Hearing [dkt #123] at 23:5–8. The Court properly noted, however, that Dr. Meyer is "an intelligent man." Pre-trial Hearing [dkt # 122] at 11:25–12:1.

---

[2] See, e.g., NHL v. Metro. Hockey Club, 427 U.S. 639 (1976):
> . . . [H]ere, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, *but to deter those who might be tempted to such conduct in the absence of such a deterrent.* If the decision of the Court of Appeals [reversing entry of sanctions] remained undisturbed in this case, it might well be that these respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But *other parties to other lawsuits would feel freer* than we think Rule 37 contemplates they should feel *to flout other discovery orders of other district courts.* Under the circumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismissal was appropriate in this case by reason of respondents' "flagrant bad faith" and their counsel's "callous disregard" of their responsibilities. Therefore, the petition for a writ of certiorari is granted and the judgment of the Court of Appeals is reversed.

Id. at 643 (emphasis added).

Indeed, Dr. Meyer is a tenured professor with a doctorate degree in English. Meyer Dep. at 33:21–35:20, attached hereto as Exhibit 2. He knew exactly what he was doing when he prevented SLU from ever reading his communications with alumni and others about the circumstances underlying this case — just like he knew what he was doing when he wrongfully used SLU's name to form his nonprofit corporation. Dr. Meyer testified that before he formed his corporation, he asked Dr. Weixlmann, SLU's Provost, whether a local business would violate SLU's intellectual property by using a slogan, "serving Saint Louis University students for more than 20 years." Ex. 2, Meyer Dep. at 78:1–7. Likewise, Dr. Meyer knew what he was doing when he formed his corporation using his home address instead of his SLU office address. See Ex. 2, Meyer Dep. at 6:16–21; Pltf.'s Trial Ex. 9, attached hereto as Exhibit 3. He needed to insure that all correspondence on this came to his home because he did not want to take any chances that Saint Louis University might find out about his deceptive and illegal use of its name. But when he dissolved his corporation, he wanted to give the impression that SLU was somehow affiliated with or approved of the formation and dissolution. That is why he used SLU's official letterhead for the University News as a cover letter to his dissolution papers filed with the Missouri Secretary of State, why he used his SLU office address on those filings for receipt of correspondence, and why he sent the dissolution papers for his corporation to the Missouri Secretary of State's Office using a SLU fax machine which he knew would leave a "SLU Communication" fax header and SLU's fax number on each of the filings. See Pltf.'s Trial Ex. 10 & 11, attached hereto as Exhibit 3. Dr. Meyer further showed he was acting intentionally when, in his cover letter to the Secretary of State on SLU official letterhead with his office address and title at SLU, he indicated he was "terminating *our* certificate of nonprofit incorporation." See Deft.'s Trial Ex. B, attached hereto as Exhibit 3 (emphasis added). Since

6

this letter was written on SLU's letterhead, the use of the word "our" clearly shows an intent to connect SLU to the nonprofit corporation. Defendant knew what he was doing. He did not use the article "the" or the pronoun "my." Conversely, in his deposition, he quibbled with Plaintiff's counsel over the use of the word "they." See Ex. 2, Meyer Dep. at 181:18–182:14. Dr. Meyer knows the meanings and effect of the words he uses (he is a tenured professor at Saint Louis University, he was a copy editor for the St. Louis Post Dispatch, and has a Ph.D. in English) and he knows the consequences of his actions. As a further illustration, when questioned about an inflammatory comment he made during an interview, Dr. Meyer admitted he made the statement because he knew the effect it would have: "I knew he'd make it the lead sentence, which he did, it's what I would have done if I were writing it because it's a pretty outrageous thing to say." Ex. 2, Meyer Dep. at 103:7–11. Dr. Meyer is calculating in his actions.[3]

In light of all of the foregoing, Defendant cannot be allowed to deny the intentional nature of his conduct or simply claim ignorance in an effort to avoid the consequences of his actions. He knew what he was doing when he formed and dissolved his nonprofit in a particular manner. He knew what he was doing when he refused to be forthcoming with interrogatory answers. And he knew he was preventing Plaintiff from gaining access to his communications when he destroyed emails and copies of other correspondence, even if he did not know the technical legal term for it (i.e., spoliation). See Ex. 2, Meyer Dep. at 13:7–25.

In this case, as in Capellupo, simply requiring Defendant to pay Plaintiff's actual fees incurred related to the Motion for Sanctions will not suffice to deter similar conduct before this Court. Because the spoliation here was far more egregious than in Capellupo, Plaintiff

---

[3] Dr. Meyer also has been misleading when he said that he had never registered an entity with the Secretary of State. See Ex. 2, Meyer Dep. at 83:24–84:2. He testified the he really did not know what he was doing. See Ex. 2, Meyer Dep. at 89:8–90:6, 143:12–20. This is simply false. See Fictitious Name Registration, Pltf.'s Trial Exhibit 31, attached hereto as Ex. 3. Defendant continually has not been forthright in his testimony.

respectfully requests this Court impose a monetary penalty of at least $ 30,503.22, which represents three times the attorneys' fees expended by Plaintiff with regard to Defendant's conduct.

### C. Additional Remedies for Violation of 28 U.S.C. § 1927

The record in this case indicates that Plaintiff's counsel clearly provided Defendant and his counsel with notice of their duty to preserve evidence in this case. Pre-trial Hearing [dkt # 122] at 10:10-17; Motion Hearing [dkt #123] at 24:19-21, 26:2-5. Indeed, the same day this suit was filed, October 11, 2007, counsel for Plaintiff sent a letter to Defendant's counsel, McPherson Moore and Brian Gill, notifying all concerned of Dr. Meyer's obligation to preserve evidence:

> Because litigation has been anticipated for some time and is now pending, we would like to take this opportunity to ask you to remind your client of his obligation against destruction or spoliation of any letter, contract, form, note, e-mail, computer file, metadata, voice recording, dvd, or other written or electronic document related to either Saint Louis University, The University News campus paper, Mr. Meyer's attempts to create a competing newspaper, or any other document relevant to the allegations set forth in the enclosed Complaint. Please also advise him that any destruction of documents will be considered and argued to be spoliation for the purposeful reason of avoiding detrimental information in those documents.

Letter from F. Janoski dated Oct. 11, 2007, Memorandum in Support [dkt # 37] at Ex. 1. That duty was re-emphasized a few months later, in January of 2008, in the Joint Proposed Scheduling Plan agreed to by both sides and submitted to this Court regarding "preservation of evidence, including electronically stored information." See Joint Proposed Scheduling Plan, at p. 2 [dkt # 9].

A sanction solely against Defendant in this case does not address any misconduct by Defendant's counsel. See, e.g., Nat'l Assn. of Radiation Survivors v. Turnage, 115 F.R.D. 543, 558 (N.D. Cal. 1987) (imposing sanctions for spoliation against both defendant and defendant's

counsel "since responsibility for the conduct of the litigation was shared and since culpability could not be accurately apportioned between the two"); Olga's Kitchen of Hayward v. Papo, 108 F.R.D. 695, 700 (E.D. Mich. 1985), aff'd in part, rev'd in part, 815 F.2d 79 (6th Cir. 1987) (monetary sanctions against party and its counsel when culpability was shared). Under 28 U.S.C. § 1927, the Court may award monetary sanctions against counsel whose conduct multiplies the proceedings.[4] The Eighth Circuit has held that "Section 1927 warrants sanctions when an attorney's conduct 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1011 (8th Cir. 2006) (quoting Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003)). Likewise, this Court also has authority to sanction an attorney under its inherent power to manage its own affairs and "achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). The Court's inherent power, while similar to its sanction authority under Section 1927, provides an independent basis to impose sanctions. See Katoch v. Mediq/PRN Life Support Services, Inc., No. 4:04-CV-938 CAS, 2007 U.S. Dist. LEXIS 61907, *21 (E.D. Mo. Aug. 22, 2007).

In February of 2008, SLU sent requests for documents to Defendant Meyer through his counsel, seeking among other things, all documents and communications regarding the formation, existence, or dissolution of the non-profit corporation that underlies the claims brought in this case, and all documents and communications regarding this lawsuit, the disputes raised in this case, or any attempts to resolve the matter. In response, Meyer produced a total of six pages of documents. Motion for Sanctions [dkt # 36] at Exhibit 3. *Not a single e-mail was*

---

[4] 28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*produced.* With the exception of the cover letter to the Missouri Secretary of State, *not a single written communication was produced either.* Eventually, and only after the expenditure of considerable effort and resources by Plaintiff in bringing and arguing its Motion for Sanctions, did Defendant produce some e-mails and other written communications. Missing from this supplemental production, however, were many documents which, by Defendant's own admission, had been but no longer were, in his possession because he deleted or destroyed them. Plaintiff learned of these communications, months after requesting them, from Defendant's own deposition testimony and from references to those documents in various media articles and internet postings.

During his June 4, 2008, deposition, Dr. Meyer blatantly admitted that the reason he had not produced any communications in response to Plaintiff's requests was not because they never existed but because he destroyed them. Ex. 2, Meyer Dep. at 14:22–26. Certain portions of his deposition testimony call into question whether or not his attorneys at the law firm of Polster Lieder properly advised him of his duty:

> Q. (Mr. Janoski) I want to hand you what's been marked as Plaintiff's Exhibit 2 and ask you to please review that document and let me know when you're finished.
>
> A. (Dr. Meyer) Define "spoliation" for me. What does "spoliation" mean?
>
> \*\*\*
>
> Q. Destruction, destruction --
>
> A. Destruction of?
>
> Q. Throwing away, destroy.
>
> A. All right, I think I've got it.
>
> Q. Have you seen this document before?
>
> A. No.

Q. And this document is a letter dated October 11th, 2007; is that correct?

A. Correct. I don't remember seeing it.

Ex. 2, Meyer Dep. at 13:7–25.

Q. And with regard to your testimony that you didn't believe that documents were relevant, did you seek legal advice from your attorney about relevancy of the documents you deleted?

A. I didn't know I wasn't supposed to do it, so, I wouldn't have asked.

Q. You didn't talk to your attorney about whether the documents were relevant or not?

A. Not that, no.

Q. Why not?

A. It didn't occur to me. I thought it was private, private communication. It had very little to do with this lawsuit, it had something to do with me and the school paper, that's what it was about.

Q. Okay. And that is your opinion, correct?

A. That's what it was about.

Q. Now, I want to just ask you again to refer to Exhibit No. 2.

A. Okay.

Q. And ask whether you have seen that letter before today.

A. This is the October 11th letter.

Q. October 11th, 2007, letter.

A. Yes.

Q. Have you seen this letter before today?

A. I have.

Q. You have seen it before today?

A. Is this -- no, no. You're asking me about No. 2?

Q. I'm asking you about --

A. On October 11th.

Q. On October 11th, the letter that I sent to your counsel, have you seen that letter before today?

A. Today?

Q. Before today.

A. Oh, no. I don't remember if this was sent to me or not. It may have been. I just don't remember.

Q. Okay.

A. I don't remember.

Q. If it was sent to you, you read it, correct?

A. Presumably.

Q. If it wasn't sent to you, did your counsel talk to you about preservation of documents?

A. It's hard to remember what happened in October, this being June.

MR. GILL: Objection again --

A. Awful lot of paperwork.

MR. GILL: Attorney-Client Privilege.

Q. (Mr. Janoski) Well, I think that this is pretty darn important and I know that you know that, Brian, and so I'll ask you one more time. Do you recall, if you did not receive this letter, your counsel telling you to preserve evidence?

A. I don't recall hearing this, but it's possible he told me. There is a lot going on and this has been six or seven months ago.

Ex. 2, Meyer Dep. at 202:21–205:1.

It appears from this record that Defendant's lawyers may not have fulfilled their obligation to notify Dr. Meyer of his discovery obligation or the October 11, 2007 litigation hold letter. Additionally, even if Defendant's counsel did do so, there is a question as to how they did not know of Dr. Meyer's spoliation of documents when the requests for documents were forwarded to him in February of 2008, months before Dr. Meyer revealed his systematic destruction during his June 2008 deposition. Dr. Meyer's counsel must have discussed with him the document requests and why there essentially were no documents to be produced.

Also, as noted above, there was apparently no corrective action taken to stop the systematic destruction. Given the prejudicial consequences of Dr. Meyer's destruction of evidence and his other discovery abuses, Plaintiff cannot ignore the alarming nature of the foregoing passages. Consequently, Plaintiff respectfully requests that this Court enter a monetary penalty, equal to the monetary penalty referenced above, against counsel for Defendant.[5]

### D. Adverse Inference

If a party knew or should have known that certain evidence was material to the litigation and the destruction of the evidence prejudices the opposing party, the Court has the inherent power to impose sanctions, including among other things, an inference which permits the trier of fact to assume that the destroyed evidence would have been unfavorable to the position of the offending party. Moyers v. Ford Motor Co., 941 F. Supp. 883, 884–85 (E.D. Mo. 1996); Ameriwood Indus., Inc. v. Liberman, 2007 U.S. Dist. LEXIS 74886, *13 (E.D. Mo. July 3, 2007) (entering default due to destruction of evidence); Meredith v. Paccar, Inc., 2005 U.S. Dist. LEXIS 45728, *27–*28 (E.D. Mo. Aug. 18, 2005) (awarding adverse inference sanction).

---

[5] Plaintiff's request for "such other and further relief . . . as the Court deems just and proper" includes not only sanctions against Dr. Meyer but also against his counsel. See Motion for Sanctions [dkt # 36] at p. 5.

In this case, the prejudice to Plaintiff due to Defendant's destruction of evidence is clear. During a pre-trial hearing, the Court noted that "[t]he extent to which the [Plaintiff] has been prejudiced is very difficult to determine, in part, because [the evidence] is gone." Pre-trial Hearing [dkt # 122] at 11:2–4. The Court further noted, "the extent to which destruction of these documents has materially affected the Plaintiff's ability to prove its claim really cannot be determined." Pre-trial Hearing [dkt # 122] at 11:7–9; see also Motion Hearing of Aug. 20, 2008, Transcript [dkt #123] at 25:22–26:5 ("All we have is apparently Dr. Meyer's recollection of what was in [the destroyed communications]. . . . You can't reproduce this information . . . . I just don't understand why this happened. . . . This is very troubling to me now."). Even Defendant's own counsel admitted, "only [Dr. Meyer] can testify as to what [was in the destroyed communications]." Motion Hearing [dkt #123] at 26:23–24. Since it is impossible to determine what the actual substance was of all the evidence Defendant destroyed, it is absolutely impossible to say Plaintiff was not prejudiced in the prosecution of its Count I – VI, which were dismissed at the summary judgment stage for lack of evidence as to "use." Defendant's intentional, personal, wrongful conduct has unfairly tilted the weight of the evidence. To the extent Defendant's counsel turned a blind eye to what was occurring, this further exasperates the conduct. The only way to restore any balance is to grant Plaintiff's request for an adverse inference or default. See Stevenson v. Union Pac. R.R., 354 F.3d 739, 750 (8th Cir. 2004) (affirming adverse inference sanction); Conner v. Sun Trust Bank, 546 F. Supp. 2d 1360, 1377 (N.D. Ga. 2008) (awarding adverse inference sanction); Ameriwood Indus., Inc., 2007 U.S. Dist. LEXIS 74886 at *13 (entering default due to destruction of evidence).

In its Order granting summary judgment for Defendant as to Counts I through VI of the Complaint, the Court noted, but did not conclusively rule upon, Plaintiff's request for an adverse

14

inference with regard to the destroyed evidence. See Order of Dec. 24, 2008 [dkt # 79], at 11–12. It is very likely that the emails and other documents destroyed by Defendant gave, for example, some additional indication of his selection of a name for his independent paper, his plans to use the name being used by Plaintiff's own paper, his efforts to raise funds, his attempts to find space to start the paper, and his communications to "rally the troops" behind his effort to compete with Plaintiff's own campus paper and stick-it to the University once and for all. Unfortunately, the content of those communications will never be known and their bearing on Plaintiff's Lanham Act and other claims will forever remain a mystery. That is the exact reason for an adverse inference (or even default). Plaintiff therefore reiterates its request for an adverse inference, and to the extent it is granted, seeks reconsideration of this Court's Order granting Defendant's Motions for Summary Judgment on Counts I – VI, as explained more fully in the contemporaneously filed Motion for Reconsideration.

## III.  CONCLUSION

Throughout this suit, Defendant has shown a complete disregard for his obligations to Plaintiff, the discovery process, and this Court. Despite being notified of his duty to preserve relevant evidence, he intentionally destroyed it, by his own admission. As a direct result, Plaintiff has been severely prejudiced and is entitled to the full measure of sanctions which are within this Court's power to grant.

Plaintiff Saint Louis University therefore prays that this Court grant Plaintiff's Motion for Sanctions, enter an award of attorneys' fees incurred in connection therewith, grant Plaintiff an adverse inference which would then have a direct bearing as to its claims under Count I through VI, award monetary sanctions against both Defendant and his counsel, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By:   /s/ Frank B. Janoski
      Frank B. Janoski, #3480
      Bridget Hoy, #109375
      David A. Weder, #5212905
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone:   (314) 444-7600
Fax:          (314) 612-1307
Email: fjanoski@lewisrice.com
Email: bhoy@lewisrice.com
Email: dweder@lewisrice.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I further certify that on the 17th day of March, 2009, the foregoing was filed with the Clerk of Court to be served via the Court's ECF system upon all counsel of record.

    /s/ Frank B. Janoski
Frank B. Janoski, #3480
LEWIS, RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO 63102
Telephone:   (314) 444-7600
Facsimile:   (314) 612-1307
E-mail: fjanoski@lewisrice.com