IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAINT LOUIS UNIVERSITY, a Missouri benevolent corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:07CV01733 CEJ |
| AVIS MEYER, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES UNDER THE LANHAM ACT**

**I.   INTRODUCTION**

This case is not "exceptional" within the meaning of 15 U.S.C. § 1117, and Defendant Avis Meyer ("Defendant" or "Dr. Meyer") is not entitled to an award of his attorneys' fees against Plaintiff Saint Louis University ("SLU" or "Plaintiff"), because the filing of the case was necessitated by Defendant's own wrongful conduct and refusal to provide simple assurances and information about his activities with regard to the use Plaintiff's name and marks. Simply put, Plaintiff took the steps it deemed necessary to protect its rights by initiating this lawsuit after Defendant otherwise failed to give a timely and appropriate response to Plaintiff's requests for assurances as to the extent of the wrongful use and Defendant's intent going forward. To grant Defendant's request for attorneys' fees, the Court would have to find Plaintiff's claims to have been completely without merit, baseless, and frivolous. Such a finding would be improper in light of Defendant's brazen and wrongful registration of a non-profit corporation for the purpose

Saint Louis University v. Meyer

Dockets.Justia.com

1525766 04

of publishing a student newspaper using a name that was virtually identical to the student newspaper that Plaintiff has published for many decades.

Indeed, before filing suit, Plaintiff repeatedly reached out to Dr. Meyer, in an attempt to address Plaintiff's concerns over Dr. Meyer's misuse of SLU's name (which Defendant subsequently admitted) and to determine to what further extent he had used SLU's name and marks. When no meaningful or satisfactory response was forthcoming, Plaintiff was forced to file this suit to protect the integrity of its name and property.[1] Plaintiff was forced to take action based in part upon Dr. Meyer's public indication that he intended to use his improperly formed corporation to establish an independent newspaper which would also use Plaintiff's name and marks. See *St. Louis Magazine* Article (Complaint [dkt # 1] ¶ 20, Ex. D); see also Cushman v. Mutton Hollow Land Dev., 782 S.W.2d 150, 155, 161, 163 (Mo. Ct. App. 1990) (enjoining defendant from using plaintiffs' tradename in violation of Missouri common law unfair competition and the Missouri antidilution statute, Mo. Rev. Stat. § 417.061, when defendant merely proposed to use such name in conjunction with future land development project but had not yet publicized such use). Furthermore, SLU was aware at the time that Dr. Meyer used SLU's official letterhead to correspond with a Missouri State governmental office on behalf of his nonprofit entity and that this SLU letterhead had been placed in the permanent, official records of the Missouri Secretary of State. This conduct gave the false indication that SLU was affiliated with the nonprofit entity and approved of its creation and dissolution. SLU could only

---

[1] See, e.g., Kellogg Co. v. Exxon Corp., 209 F.3d 562, 574 (6th Cir. 2000) (stating that the point at which a trademark owner "knew or should have known that it now had a provable claim for infringement" was the point that the trademark owner's "duty to defend its trademark was triggered, and it was from this point that any delay must be measured [for purposes of laches]"); see also Cushman v. Mutton Hollow Land Dev., 782 S.W.2d 150, 155, 161, 163 (Mo. Ct. App. 1990) (enjoining defendant from using plaintiffs' tradename in violation of Missouri common law unfair competition and the Missouri antidilution statute, Mo. Rev. Stat. § 417.061, when defendant merely proposed to use such name in conjunction with future land development project but had not yet publicized such use).

guess at the time what other inappropriate uses Dr. Meyer had engaged in.[2] Letter from A. Meyer dated Aug. 21, 2007, attached hereto as Exhibit 1; Secretary of State Filings, attached hereto as Exhibit 2. Thus, supported by this evidence, Plaintiff's claims were neither groundless nor unreasonable and SLU was permitted at least injunctive relief. Additionally, Defendant failed to respond to Plaintiff's prior requests for information, thus Plaintiff's only option was to pursue litigation to protect its rights and, further, to avail itself of the various discovery tools available only via litigation to learn the full extent of Defendant's activities. It is irrelevant that the Court ultimately ruled in Defendant's favor on some of Plaintiff's claims. The fact that a litigant advances a position which the Court later does not accept does not, without more, mean the position was meritless.[3] For these and the other reasons discussed herein, this case is not and cannot be considered "exceptional" within the meaning of 15 U.S.C. § 1117, and therefore, Defendant's request for attorneys' fees must be denied.

## II. DEFENDANT IS NOT ENTITLED TO AN AWARD OF FEES BECAUSE THIS IS NOT AN EXCEPTIONAL CASE

Defendant's argument that this case is "exceptional" because the Court ultimately found Plaintiff lacked sufficient evidence to establish Defendant's "use in commerce" of Plaintiff's marks is a misapplication of the law and a distortion of the facts.[4] For at least the reasons discussed below, this case is not exceptional and Defendant is not entitled to an award of its fees.

---

[2] Of course, the full extent of the wrongful uses will never be known because Dr. Meyer has not been forthcoming with the information and has deleted emails and other documents that might have revealed other bold and wrongful conduct.
[3] Plaintiff respectfully submits that there was enough evidence of record for a finding that Defendant violated the law as set forth in Plaintiff's Complaint Counts I through VI and that at least a portion of Plaintiff's requested relief was warranted. The spoliation of evidence is further reason to find against Defendant not only on this motion but also on Counts I through VI.
[4] In his Memorandum, Defendant incorrectly asserts that Plaintiff's Lanham Act claims are completely coextensive with its Missouri state law claims. As more fully explicated in Plaintiff's Memorandum in Opposition to Summary Judgment, "use" is not a necessary element to either Plaintiff's claim under Count V for Missouri common law unfair competition nor its claim under Count VI for dilution under Mo. Rev. Stat. § 417.061. See Memorandum in Opposition [dkt # 66] at pp. 9–15, incorporated herein by reference. Should the Court grant Defendant's Motion for

A.  **Standard for Awarding a Prevailing Defendant Fees under 15 U.S.C. § 1117**

In the Eighth Circuit, fees are properly awarded to a prevailing defendant under § 1117 only in truly "exceptional cases." A case is "exceptional" if "the plaintiff's cause of action was groundless, unreasonable, vexatious, or was pursued in bad faith." Hodge Chile Co. v. KNA Food Distributors, Inc., 575 F. Supp. 210, 214 (E.D. Mo. 1983), aff'd 741 F.2d 1086, 1087 (8th Cir. 1984). A case is not exceptional where the "plaintiff had a legitimate difference of opinion on the issues relevant to [the] litigation." Id. (denying defendant's claim for fees under § 1117 after plaintiff lost its Lanham Act infringement claims). A ruling against a plaintiff on its Lanham Act claims does not automatically entitle a prevailing defendant to an award of its fees. Id.

B.  **Defendant's Conduct was Sufficient Evidence of His Use in Commerce of Plaintiff's Marks Such That Plaintiff's Lanham Act Claims Were Not Meritless; Therefore this Case is Not Exceptional under 15 U.S.C. § 1117**

Defendant's incorporation and subsequent dissolution of his nonprofit corporation, and other admitted acts, constituted sufficient use of Plaintiff's marks to expose him to liability under the Lanham Act and to justify Plaintiff's prosecution of Counts I, II, and IV of its Complaint. A plaintiff need not ultimately prevail on its claims for those claims to have merit. See Hodge Chile Co., 575 F. Supp. at 214.

Plaintiff extensively detailed the basis for its claims in its Memorandum in Opposition to Summary Judgment [dkt # 66]. All of the facts and reasoning contained therein have direct bearing on the issues raised by Defendant's instant Motion for Fees. However, in the interest of brevity, Plaintiff does not repeat *in toto* those arguments here, but does incorporate them herein by reference. As a review of Plaintiff's Memorandum clearly indicates, Plaintiff had a sound

---

Fees, Plaintiff respectfully reserves the right to object to the amount of fees claimed and to more fully brief the issues.

basis in both law and fact for pursuing its Lanham Act claims. Therefore, this case is not exceptional and Defendant is not entitled to an award of his fees.

Significantly, this case is extremely similar to Committee v. Yost, wherein a U.S. Court of Appeals reversed a district court's grant of summary judgment to a defendant, finding sufficient use in commerce. 92 F.3d 814, 823 (9th Cir. 1996). There, the defendant, aware of plaintiff's use of its name, checked the state corporate records to determine whether the name was registered with the State. Id. at 817. Upon finding the plaintiff had inadvertently let its corporate registration lapse, the defendant registered a new entity using the same name. Id. at 817–18. The defendant apparently intended to use the name for itself and to benefit from the goodwill already established by the plaintiff. See id. at 817–18, 823. The only other activity by the defendant before plaintiff filed its trademark infringement suit was a presentation given by one of defendant's incorporators. Id. at 823. The Court of Appeals held that the acts of forming a corporate entity under the name and referring to itself with that name during the presentation were sufficient uses to create a genuine issue of fact as to whether the defendants were liable under the Lanham Act. Id.

In both Yost and this case, the defendant knew of the plaintiff's use of its marks and checked the state records to see if the plaintiff held a valid corporate registration. Id. at 817; Meyer Dep., attached hereto as Exhibit 3, 88–89. Both defendants chose to register the same name, with the intent to provide nearly identical services under that name. Yost, 92 F.3d at 817; Ex. 3, Meyer Dep., 88–89. In Yost, the defendants made a single presentation using the name to give it an air of credibility based upon the plaintiff's reputation. Yost, 92 F.3d at 818, 823. Likewise, Dr. Meyer announced to others that he captured Plaintiff's name so that *The University News* would not "die," he had discussions with others about the logistics of operating an

independent paper under that name, and although "informally," by his words, he also apparently looked into funding for the anticipated publication. Ex. 3, Meyer Dep., pp. 106–08, 112–13, 124, 133–34, 138–43, 145–46; Benanti Dep., attached hereto as Exhibit 4, pp. 61–69, 80–81; *St. Louis Magazine* Article (Complaint [docket no. 1] ¶ 20, Ex. D). Dr. Meyer even went further than did the defendants in Yost, when he dissolved his nonprofit entity using SLU's official letterhead and contact information, thus establishing a permanent, deceptive public record and creating a public perception that SLU was somehow involved in, approved of, or affiliated with the nonprofit entity's formation and dissolution. See Memorandum [dkt # 66], pp. 7–8.

In light of the foregoing, it cannot be found that Plaintiff's claims were wholly "groundless, unreasonable, vexatious, or pursued in bad faith." See Hodge Chile Co., 575 F. Supp. at 214. SLU's claims had sound basis in both law and fact. As the Fifth Circuit properly recognized, "A party that predicates its legal claim on controversial and unsettled legal theory should not face sanctions under . . . § 1117(a) when the court ultimately rejects the claim." Procter & Gamble Co. v. Amway Corp., 280 F.3d 519, 531 (5th Cir. 2002).[5] Because Plaintiff's claims has both basis in fact and a reasonable interpretation of the law, this is not an exceptional case and Defendant is not entitled to an award of his fees.

### C. § 1117 Fees are Available to Prevailing Defendant's Only in Truly Exceptional Cases

Defendant argues the case now before this Court is "exceptional" because Plaintiff did not submit any evidence of Defendant's "use in commerce" of Plaintiff's marks. As outlined above, Plaintiff has submitted such evidence. Regardless, Defendant's request for attorneys'

---

[5] Additionally, as the Court is aware, Plaintiff has formally submitted its reasoning as to why summary judgment for Defendant on Counts I through VI was improper. Plaintiff respectfully submits that the reasoning contained in its related Motion for Entry of Sanctions [dkt # 126] and its Motion to Alter or Amend [dkt # 125], both incorporated herein by reference, further serve to illustrate why Plaintiff's Lanham Act claims were neither baseless nor without merit and why this is not, for those reasons, an exceptional case entitling Defendant to an award of its fees under § 1117.

fees is fatally flawed in light of the Eighth Circuit's holding in Hartman v. Hallmark Cards, Inc., a case cited by Defendant, that a plaintiff's claims are **not** meritless (warranting a finding that the case is exceptional) merely because a plaintiff is unable to prove an essential element of its claim. 833 F.2d 117, 123 (8th Cir. 1987) (affirming district court's denial of § 1117 fees when plaintiff could not prove secondary meaning to support its § 1125(a) claims under the Lanham Act).

In Hartman, the Eighth Circuit stated, "the existence of one weak element in a potential theory of recovery did not convince the district court [plaintiff's] case as a whole was flawed to the degree she should bear the cost of her opponent's attorney fees for obtaining summary judgment. Under these circumstances . . . this is [not] an exceptional case . . . ." Hartman, 833 F.2d at 123–24. Importantly, the district court found that far from merely having "one weak element," plaintiff failed to present any evidence of secondary meaning. Hartman v. Hallmark Cards, Inc., 639 F. Supp. 816, 824 (W.D. Mo. 1986) *aff'd* 833 F.2d 117 (8th Cir. 1987) ("Furthermore, there is no evidence before this Court to suggest that plaintiff's [product] has acquired any secondary meaning or identifying feature or mark which is associated in the public mind with the plaintiff or its product. . . . Without some evidence of a secondary meaning . . . [plaintiff's Lanham Act claims] must fail."). Nevertheless, the Eighth Circuit found the case was not baseless, thus not exceptional, and affirmed the district court's refusal to award fees to the defendant under § 1117. Hartman, 833 F.2d at 123–24.

Defendant's reliance on a Seventh Circuit case, S Industries, Inc. v. Centra 2000, Inc., 249 F.3d 625 (7th Cir. 2001), to support his argument that this is an exceptional case because this Court ultimately found SLU did not establish sufficient use in commerce by Defendant, is also misplaced because the facts in that case are nothing like those here. In S Industries, the plaintiff

engaged in repeated, egregious "procedural maneuvering [which] multiplied the cost of defending against the suit," in addition to being unable to establish a key element of its claims. 249 F.3d at 626. The list of plaintiff's dilatory behavior is far too long to include here in whole. See id. at 627–28. By way of example, however, the court noted plaintiff's repeated failure to respond to discovery requests, repeated failure to properly serve or sign filed motions, and refusal to follow local rules of procedure. Id. The court also found important the fact that the plaintiff's "behavior in this case [was] not isolated. . . . its actions here look to be part of a pattern of abusive and improper litigation with which [the plaintiff has] burdened the courts of this circuit. As . . . noted in a different case, the [plaintiff] filed at least 33 trademark lawsuits in the district court between 1995 and 1997." Id. at 628–29. No such extreme circumstances by SLU exist in this case (as contrasted to Defendant's conduct) and the S Industries case is not applicable.

Likewise, Defendant's heavy reliance on Viola Sportswear, Inc. v. Mimun, further demonstrates that Defendant is pushing the envelope in asking for his attorneys' fees in this case because Viola is wholly distinguishable. The court there found the case to be exceptional and awarded defendant's fees under § 1117 when the plaintiff pursued baseless Lanham Act claims. 574 F. Supp. 619 (E.D.N.Y. 1983). Like the plaintiff in S Industries, the plaintiff in Viola Sportswear engaged in extreme conduct. The subject of plaintiff's claims was the sale of a single pair of jeans, for which plaintiff claimed to have an exclusive license from one of the defendants. Viola Sportswear, 574 F. Supp. at 619–20. Plaintiff filed a complaint which alleged trademark infringement as part of a nationwide conspiracy amongst the defendants. Id. at 620. Plaintiff did so only eight days after the sale was made and without making any effort to perform a factual investigation or to inquire of the defendants as to the validity of the charges made in the

complaint. Id. Furthermore, the plaintiff filed its suit in Texas and stubbornly refused to consent to removal to New York. However, when the defendants filed a motion to transfer, the plaintiff did not respond at all, thus the case was transferred. Id. Unlike the plaintiff in Viola Sportswear, SLU made every effort to investigate the facts and even reached out to Defendant on multiple occasions to determine the extent to which he had used SLU's marks before filing suit. Neither Viola Sportswear nor S Industries has any applicability to the this case and Defendant is left essentially without authority for his request, which should be denied.

### D. Defendant Cannot be Allowed to Destroy Relevant Evidence, Thereby Preventing Plaintiff From Prosecuting Its Claims, and Then Argue This Case is "Exceptional" for Want of Evidence

As this Court is all too aware, Plaintiff's attempts to discover the full extent of Defendant's uses of Plaintiff's marks has been actively thwarted by Defendant's intentional, wholesale destruction of relevant evidence. Indeed, the Court has indicated it will grant Plaintiff's Motion for Sanctions for Spoliation which is currently pending before the Court. To allow Defendant to blatantly destroy evidence and then point to Plaintiff's inability to recover that evidence to justify an award of fees in Defendant's favor would be manifestly unjust. Plaintiff will not here reargue its Motion for Entry of Sanctions [dkt # 126] and Motion to Alter or Amend [dkt # 125] which are currently pending before the Court. However, the facts and arguments contained therein weigh heavily upon the issues raised by Defendant's instant Motion for Fees [dkt # 129]. Therefore, Plaintiff fully incorporates herein by reference both of its Motions [dkt ## 125 and 126].

Furthermore, and contrary to Defendant's characterization of this Court's Order of December 24, 2008 [dkt # 79], the Court recognized that Defendant's choice of the name for his nonprofit entity would infringe Plaintiff's marks, but for the Court's determination, with which Plaintiff respectfully disagrees, that there was insufficient evidence of Defendant's use in

commerce. This Court stated, for example, that "defendant took steps to make the <u>infringing name available to the students</u>" and that Plaintiff's allegations that Defendant "advertised, or intended to advertise, that he distributed or intended to distribute a newspaper published, sponsored, authorized by, or affiliated with plaintiff . . . <u>would unfairly use the reputation and goodwill associated with plaintiff's marks, and would cause confusion</u> among the public concerning such a publication." Order [dkt #79], pp. 9, 10 (emphasis added). As a direct result of Defendant's intentional spoliation, however, Plaintiff was unable to satisfy this Court that there was sufficient evidence of Defendant's commercial use of SLU's marks to preclude summary judgment in Defendant's favor. Plaintiff respectfully disagrees with this ruling, for, as the Court stated with regard to the content of the evidence destroyed by Defendant, "All we have is apparently Dr. Meyer's recollection of what was in [the destroyed communications]. . . . You can't reproduce this information," Motion Hearing Transcript [dkt # 123] at 25:22–26:5, and "the extent to which destruction of these documents has materially affected the Plaintiff's ability to prove its claim really cannot be determined." Pre-trial Hearing Transcript [dkt # 122] at 11:7–9. After publicly chastising Defendant for such conduct, allowing an award of attorneys' fees in favor of Defendant Meyer would be an absurd result and send the wrong message to litigants and their attorneys about the need to preserve evidence in cases pending before this Court.

### III. CONCLUSION

From the outset of this suit, Plaintiff has properly performed legal research and conducted factual investigation to establish a solid basis for its claims under the Lanham Act. Furthermore, Plaintiff's investigations gave strong indications that, through the discovery process, further evidence of Defendant's misuse of Plaintiff's marks would come to light. Thus, Plaintiff's claims did have merit and a sound basis in law and fact. Plaintiff did submit sufficient evidence

of such uses to create, at the very least, a genuine issue of material fact as to whether Defendant violated Plaintiff's rights under the Act, even though Plaintiff could not document the full extent of Defendant's use because of Defendant's willful spoliation of evidence. Plaintiff should not now be further penalized for Defendant's bad acts, including the intentional destruction of evidence, by improperly being forced to fund Meyer's defense of SLU's properly asserted claims. Therefore, and for the other reasons stated herein, this is not an exceptional case and Defendant's claim for attorneys' fees under 15 U.S.C. § 1117 should be denied.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ Frank B. Janoski
    Frank B. Janoski, #3480
    Bridget Hoy, #109375
    David A. Weder, #5212905
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Fax: (314) 612-1307
Email: fjanoski@lewisrice.com
Email: bhoy@lewisrice.com
Email: dweder@lewisrice.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I further certify that on the 2nd day of April, 2009, the foregoing was filed with the Clerk of Court to be served via the Court's ECF system upon all counsel of record.

/s/ Frank B. Janoski
Frank B. Janoski, #3480
LEWIS, RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Facsimile: (314) 612-1307
E-mail: fjanoski@lewisrice.com
