IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAINT LOUIS UNIVERSITY, a Missouri benevolent corporation, <br><br> Plaintiff, <br><br> v. <br><br> AVIS MEYER, <br><br> Defendant. | Case No. 4:07CV01733 CEJ |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF SANCTIONS REGARDING DEFENDANT'S DESTRUCTION OF EVIDENCE**

**I.   INTRODUCTION**

Plaintiff's Motion for Entry of Sanctions [dkt # 126] has as its sole focus the scope of the sanctions to be entered in light of the Court's previous conclusion that relevant evidence was systematically destroyed to Plaintiff's prejudice. Defendant Meyer, in his response [dkt # 131], tries to minimize the intentional nature of the destruction and the extent of the prejudice to Plaintiff, both of which have already been decided by this Court, in an obvious attempt to lessen the amount of the monetary sanctions and to avoid the necessary adverse inference.

It is clear at this point that the destruction of evidence could only have occurred by one of two possible scenarios: either (1) Defendant's counsel told Defendant of his duty to preserve evidence, in which case Defendant's wrongful destruction of that evidence can only be characterized as blatant and intentional, or (2) Defendant's counsel did not inform Defendant of his duty, in which case the fault for loss of evidence properly rests with counsel. Defendant makes absolutely no attempt to resolve this question in his response. Because Defendant and his counsel are unwilling (or as they claim, unable) to assist this Court in determining how this

egregious breach of the judicial process occurred, there is no option but to sanction them both. The amount of the sanctions against them as requested in Plaintiff's opening papers is appropriate and justified, as further described below.

In addition, Defendant's response does not refute that an adverse inference is proper, but rather wrongly claims this issue has already been addressed fully by the Court in its Summary Judgment Order. Certainly for appeal purposes, it has not. Furthermore, the Court has already recognized the prejudice caused by the destruction of evidence. Because Plaintiff never received access to a host of relevant documents, its ability to conduct a full investigation was completely thwarted. As discussed more below, there is no way to fully remedy the prejudice absent granting an adverse inference that the destroyed documents would have led Plaintiff to additional evidence of Defendant Meyer's improper uses of Plaintiff's name and marks.

## II. THE FULL MONETARY AWARD REQUESTED AND THE ADVERSE INFERENCE ARE BOTH JUSTIFIED AND NECESSARY SANCTIONS.

The Court is well aware of Defendant's wrongdoing which was thoroughly established through Plaintiff's original Motion for Sanctions and the hearings which followed. Plaintiff has suffered extreme prejudice as a direct result of Defendant's misconduct because no one will ever know what was evidenced in the documents that Defendant Meyer destroyed. Plaintiff now seeks an appropriate remedy to counter that prejudice, to compensate Plaintiff for the expenses it was forced to incur as a direct result of Defendant's intentional destruction of evidence, and to protect the integrity of the judicial process by deterring future similar misconduct by the Defendant, his counsel, and others who appear before this Court. As discussed below, the sanctions should take the form of both (1) full reimbursement of Plaintiff's attorneys' fees with additional monetary sanctions against Defendant and counsel and (2) an adverse inference as to Defendant's improper use in commerce.

A. **The Amount of Plaintiff's Requested Attorneys' Fee Award and An Additional Monetary Sanction Against both Defendant and his Counsel is Proper.**

Plaintiff is entitled to reimbursement of the full $10,167.74 in attorneys' fees it expended seeking sanctions against Defendant for his destruction of evidence[1] and additionally three times that amount against Defendant and his attorneys each as a monetary penalty. Defendant makes several efforts in his Response to attack the amounts and seeks to avoid entry of the monetary penalties, but none of those efforts are availing.

*i. The attorneys' fee amount is supported and justified.*

Defendant first attacks the $10,167.74 in fees by wrongly asserting that the issue of his spoliation of evidence, which is now in its second round of briefing and which the Court took up during two separate hearings, is "uncomplicated" and unworthy of the effort devoted to it by Plaintiff's counsel. See Opposition [dkt # 131] at pp. 5–6. To the contrary, Defendant's conduct necessitated careful legal and factual research and consideration of the appropriate remedies available, all of which justified the time spent by Plaintiff's counsel. Indeed, this Court has already awarded Plaintiff almost $4,000.00 in fees (almost twice the amount Defendant asserts should be awarded here) related to Plaintiff's Motion to Compel [dkt # 34], which indeed was much more straightforward. See Order dated Feb. 25, 2009 [dkt # 114], at p. 4. Furthermore, the stakes are much higher here given the egregiousness of Defendant's misconduct and the greater prejudice to Plaintiff.

---

[1] This Court already has stated that "at the very least, the defendant … will be required to pay plaintiff's attorney's fees in connection with presenting this Motion for Sanctions." Pre-trial Hearing [dkt # 122] at 11:12–15. Accordingly, this Court requested that Plaintiff submit a verified statement of its fees and costs. Id. at 27:22–24. Incredibly, Defendant now attempts to reargue in his Response to the Motion for Entry of Sanctions this already-decided issue. See Opposition [dkt # 131] at p. 5. Because the Court has already ruled that Plaintiff is entitled to an award of attorneys' fees, any such argument is improper and should be disregarded.

Defendant next argues, without any citation, that Plaintiff should not be awarded any fees attributable to its request for an adverse inference remedy which Defendant incorrectly alleges has been denied. The original Motion for Sanctions remains pending to date.[2] Moreover, whether or not the Court ultimately awards this aspect of Plaintiff's requested remedy, Plaintiff is still entitled to recoup the fees it was forced to incur as a result of Defendant's spoliation in researching and submitting the issue to the Court. Pre-trial Hearing [dkt # 122] at 11:12–16. Similarly, Plaintiff's Supplemental Memorandum [dkt # 51] was also occasioned by Defendant's misconduct. This Court accepted the Supplemental Memorandum, and the fees related to it should be included in the award. See Order dated Sept. 16, 2008 [dkt # 59].

Defendant additionally, but without merit, takes issue with Plaintiff's method of proving its fees. The Affidavit attached to Plaintiff's Motion for Entry of Sanctions is identical in form to the Affidavit accepted by this Court in connection with Plaintiff's Motion to Compel. The Court awarded close to $4,000.00 for Defendant's other discovery abuses based upon that Affidavit. Obviously, there is no requirement to submit "actual" bills.

Finally, Defendant's argument that lead counsel in this case should not have reviewed the documents underlying his own Affidavit is patently absurd. It is perhaps this lack of accountability and involvement by Defendant's counsel that places us where we are today with this issue of spoliation.

For at least the foregoing reasons, the amount of attorneys' fees requested by Plaintiff in connection with its Motion for Sanctions is appropriate, and the Court should enter an award in the full amount of $10,167.74.

---

[2] Plaintiff submits that until the Motion for Sanctions is formally ruled upon, Plaintiff cannot appeal the entry of summary judgment in Defendant's favor on Counts I – VI because the requested adverse inference directly affects that ruling. The contemporaneously filed Rule 59(e) Motion addresses this procedural issue.

### ii. Three times the attorneys' fees should be awarded as a monetary penalty against each of Defendant and his counsel.

As already discussed, further monetary sanctions against both Defendant and Defendant's counsel are appropriate in light of their shared and unapportioned misconduct. Despite the opportunity to clarify the issue in their Response, Defendant and his counsel hide behind the attorney-client privilege and hinting at an unexplained conflict of interest rather than answer the question of where the fault lies. The privilege, even if it applies, is Defendant Meyer's to assert, not counsel's, and at this point has likely been waived.[3] As for the claimed conflict of interest, if indeed one exists, a motion to withdraw would have been filed. See Mo. S. Ct. Rules 4-1.7(a)(2), 4-1.16(a)(1).

If it were clear on the record whether Defendant or his counsel is at fault for the failure to preserve evidence, then it would perhaps be appropriate for this Court to enter sanctions against one or the other of them. Because that information is not before this Court, it is appropriate to sanction both. See, e.g., Nat'l Assn. of Radiation Survivors v. Turnage, 115 F.R.D. 543, 558 (N.D. Cal. 1987) (imposing sanctions for spoliation against both defendant and defendant's counsel "since responsibility for the conduct of the litigation was shared and since culpability could not be accurately apportioned between the two"). Such sanctions are necessary to remedy

---

[3] Defendant has yet to establish that the privilege even applies to the simple fact of whether his counsel forwarded or notified Defendant of the written litigation hold notice sent by Plaintiff's counsel. Cf. Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1205 (8th Cir. 1982) ("Clients cannot refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from independent sources."). To the extent Defendant's counsel are now attempting to invoke the privilege to avoid their own liability for failure to notify Defendant of his duty to preserve evidence, such an attempt is improper. Henderson v. United States, 815 F.2d 1189, 1192 (8th Cir. 1987) ("[T]he attorney-client privilege belongs to and exists solely for the benefit of the client."). In any event, Defendant has waived any privilege which may have existed here to the extent he would argue his counsel failed to notify him of his duty to preserve evidence and, thus Defendant should not be held to account for his spoliation. See Sedco Int'l, 683 F.2d at 1206 ("Courts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense.") (internal citations omitted); Baker v. General Motors Corp., 209 F.3d 1051, 1055 (8th Cir. 2000) (same) (applying Missouri law); Medical Protective Co. v. Bubenik, No. 4:06CV01639 ERW, 2008 U.S. Dist. LEXIS 34697, at *6 (E.D. Mo. Apr. 28, 2008) ("A client consents to disclosure by voluntarily revealing the protected information, ... or by placing the subject matter of the privileged communication in issue in the litigation.") (applying Missouri law) (citations and quotations omitted).

the harm caused by Defendant's and/or his counsel's misconduct and, at least as importantly, to deter similar misconduct in the future by Defendant, his counsel, and others who appear before this Court. Memorandum in Support [dkt # 126] at pp. 3–13.

Defendant also claims that the three times ratio is too hefty, but attaches no affidavit or other support for his empty claim that he would be unable to satisfy an order imposing a significant penalty. Simply put, nothing short of a three times multiplier will act as the necessary deterrent. Without such a sanction, others will undoubtedly be emboldened to ignore this Court's orders and the rules of procedure and simply destroy evidence as it suits them knowing that, at most, they will merely have to pay a few thousand dollars in attorneys' fees. This Court must exercise its power to protect the judicial process and prevent such a damaging result.

Accordingly, Plaintiff requests that the Court enter additional monetary sanctions against Defendant and Defendant's counsel as set forth in Plaintiff's Motion and Memorandum.

### B. An Adverse Inference is Warranted Because Plaintiff Suffered Severe Prejudice as a Direct Result of Defendant's Destruction of Highly Relevant and Discoverable Letters, Emails, and Other Documents.

Defendant admits to destroying letters, emails, and other documents dealing with this litigation and its underlying circumstances, all after being put on written notice of his duty to preserve evidence. Among the documents Defendant Meyer admits to having destroyed are letters and other correspondence between Defendant Meyer and various news agencies, alumni, and others regarding his non-profit corporation and the other facts underlying this case. Memorandum in Support [dkt # 37] at pp. 3–7. Defendant also admits to destroying a highly relevant letter which he claims to have sent to counsel for Plaintiff but which was never received. The letter allegedly was prepared before the filing of the instant litigation and supposedly discussed Defendant's uses of SLU's name and marks. Counsel for Plaintiff first learned of this

"phantom" letter during Defendant's June 4, 2008 deposition. This letter was never produced. Memorandum in Support [dkt # 37] at pp. 6–7. The record contains no evidence of steps taken by Defendant to recover this letter from his home computer, or elsewhere. The prejudice is clear.

In his Response and in an apparent effort to avoid the adverse inference, Defendant Meyer relies heavily on language from this Court's Summary Judgment Order in which the Court, in considering the content of "websites, published articles, and blog postings," stated, "Nothing has appeared in <u>these</u> sources that indicates that defendant communicated the accused marks to the public in a manner likely to cause confusion." Memorandum in Opposition [dkt # 131] at pp. 2–3; Order dated Dec. 24, 2008 [dkt # 79] at p. 12 (emphasis added). Defendant stretches the Court's language beyond its limits in arguing that the Court, in that passage, held or even implied that absolutely none of the evidence Defendant destroyed was adverse to Defendant and, hence, its destruction could not have prejudiced Plaintiff. Such a reading is absurd. By the Order's own plain language, it is apparent the Court was referring only to "information communicated in e-mails [which] made its way to websites, published articles, and blog postings ... ." See Order [dkt # 79] at p. 12. Furthermore, Defendant's reading of the Order completely ignores this Court's explicit recognition that now that the evidence is gone, there is absolutely no way to know the full content of that evidence. See Motion Hearing of Aug. 20, 2008, Transcript [dkt # 123] at 24:22–25:16; 25:22–26:1. Without knowing the full content of the destroyed evidence, the Court could not have possibly, as Defendant suggests, intended to issue a ruling as to the legal import of that evidence.

Perhaps realizing the precarious nature of his argument, Defendant attempts to divert this Court's attention by seeking to improperly impose on SLU the burden to mitigate the prejudice.

7

See Opposition [dkt # 131] at p. 5 n.1. This argument, too, is absurd and easily dismissed. Indeed, this Court has already considered and rejected this proposition. During its hearing on SLU's original Motion for Sanctions, the Court stated:

> ... [W]e only have Dr. Meyer's word as to what was in those communications, because they don't exist any more. They've been deleted.
>
> It may be possible to find out from the people who wrote to him, you know, what they wrote. But, you know, I'm not sure that we even know who those people are. Apparently, there were a number of people that he had contact with; and we don't know what he wrote back. I think in the defendant's response, you refer to — and this is on page four — "Letters of support from the students who are aware of the litigation are questioning me about why it's happening; what's going on." That sort of thing. I think that's a quote from the deposition.
>
> You know, that may generally describe what was in the content of these communications but certainly doesn't describe it very specifically. Also, what Dr. Meyer's response was to these people who were writing to him, we have no idea what that was. And I don't think that the defendant can say, "Well, these documents weren't relevant." We don't know that.
>
> And the whole point of holding onto these things is that so that there can be some decision about whether they're relevant or not. If you had them and they weren't relevant, then you could make that objection and, you know, have some determination made about the relevance of the documents. But you don't have the documents. And all we have is apparently Dr. Meyer's recollection of what was in them. He didn't remember word for word of what was written to him or what he may have written back to people. You can't reproduce this information.

Motion Hearing [dkt # 123] at 24:22–26:1 (emphasis added). As the foregoing makes clear, it would have been utterly pointless for Plaintiff to attempt to recreate evidence "[y]ou can't reproduce."[4]

---

[4] Underlying Defendant's arguments is the false assumption that any documents he destroyed, had they been relevant to Plaintiff's claims, would have essentially become a permanent public record and, thus, come to light despite Defendant's intentional spoliation. This assumption is seriously flawed. Once Defendant ignored his legal obligation to preserve evidence and intentionally destroyed relevant documents, there was absolutely no guarantee that other parties who may hold that evidence (and were not under a similar obligation) would preserve it, much less hold it out in such a way as to alert Plaintiff and this Court to its existence. It also is of no moment whether the destroyed communications were "personal" or not. It is very likely that Defendant described his public acts in "personal" emails, and if SLU had had access to those emails during the course of the litigation, it could have conducted follow-up discovery to get to the source of the information. Because his communications were forever destroyed, SLU was not able to find additional evidence of "use in commerce" to satisfy this Court at the summary judgment stage.

Defendant's argument is fatally flawed on a much more basic level, however. Essentially, Defendant argues the only way a party could ever be prejudiced by spoliation is if the destroyed evidence either proved or disproved an ultimate issue in the case. What Defendant ignores is that built into the discovery process is a recognition that the parties must have access to the full range of relevant discoverable evidence so that they may fully develop the facts. There is absolutely no limitation that parties may only discover that evidence which either proves or disproves an ultimate issue. Indeed, the guiding principle of discovery is that, subject to privilege, a party has a right to all evidence reasonably calculated to lead to the discovery of admissible evidence. The documents Defendant destroyed, and which he admits related to this case, certainly met this minimal standard. By destroying these documents, Defendant permanently denied Plaintiff the ability to know where the information contained in those documents may have led. The destroyed documents could have identified other potential witnesses, indicated the existence of other relevant evidence, or other additional facts previously unknown which, had they been known, would have led Plaintiff to other lines of inquiry, including but not limited to taking additional depositions of the individuals identified by Defendant or in the other evidence. But, as the Court noted, "we have no idea what that [destroyed evidence] was," and we "can't reproduce this information." Motion Hearing [dkt # 123] at 25:13–14, 25:25–26:1. It is wholly disingenuous for Defendant to now argue Plaintiff should be estopped from showing its prejudice because Plaintiff did not choose to waste its time in a vain attempt to piece together the destroyed correspondence by seeking it from the other parties to that correspondence. See Opposition [dkt # 131] at p. 5 n.1. Without the actual evidence itself, Plaintiff could not effectively determine who those other parties even were. Motion Hearing [dkt # 123] at 25:1–16.

By destroying relevant evidence, Defendant unfairly tipped the evidentiary scales in his favor and the only way to restore any balance is to impose an adverse inference sanction. While SLU still maintains that the evidence submitted in opposition to Defendant's motion for summary judgment created a genuine dispute of material fact with regard to "use in commerce," it also appears that Meyer communicated with third-parties about additional uses but that those communications were destroyed, preventing SLU from finding the actual evidence of use in any cost-efficient manner. Additionally, SLU respectfully submits that the evidence of Defendant's use which did survive and find its way into the record was more than sufficient to entitle SLU to at least injunctive relief. See Cushman v. Mutton Hollow Land Dev., 782 S.W.2d 150, 155, 161, 163 (Mo. Ct. App. 1990) (enjoining defendant from using plaintiffs' tradename in violation of Missouri common law unfair competition and the Missouri antidilution statute, Mo. Rev. Stat. § 417.061, when defendant merely proposed to use such name in conjunction with future land development project but had not yet publicized such use). To the extent Defendant destroyed similar evidence, SLU was further prejudiced regarding its claims for injunctive relief.

Having already laid out the justification for this sanction in its original papers [dkt ## 36, 37, 45, 51, and 126], incorporated herein by reference, Plaintiff will not reiterate those arguments here. However, Plaintiff does point out that, despite Defendant's misreading of this Court's Summary Judgment Order [dkt # 79] and this Court's statements during its March 2, 2009 hearing, the Court has yet to definitively rule on Plaintiff's request for an adverse inference. See Opposition [dkt # 131] at pp. 2, 6 (citing Order [dkt # 79] at pp. 11–12; Pre-trial Hearing [dkt # 122] at 10:3–12:4); see also Motion to Alter or Amend [dkt # 125]. Again, Defendant completely misconstrues this Court's rulings. In its Summary Judgment Order, this Court expressly withheld a decision on Plaintiff's Motion for Sanctions. Order [dkt # 79] at p. 12

("The Court does not condone the flouting of rules of procedure and court orders and <u>will separately address</u> the sanctions motion.") (emphasis added). Then, during its March 2, 2009 hearing, the Court stated it would grant Plaintiff's Motion and "at the very least" award Plaintiff its attorneys' fees. Pre-trial Hearing [dkt # 122] at 11:12–15. The Court also indicated it would consider further sanctions. Id. at 11:16. The <u>only</u> sanction which the Court expressly declined to enter was that of a default judgment. Id. at 10:21–24. In light of the Court having twice expressly reserved judgment on the adverse inference issue, it is absolutely incredible that Defendant now so boldly asserts that this Court has "held" such a sanction is denied. See Opposition [dkt # 131] at p. 6.

Therefore, and for at least the reasons stated herein, Plaintiff respectfully requests that the Court enter an adverse inference sanction against Defendant.

### III. CONCLUSION

As a direct result of Defendant's and his counsel's misconduct, Plaintiff has been severely prejudiced and is entitled to the full measure of sanctions which are within this Court's power to grant. The remedies requested by Plaintiff in its Motion for Entry of Sanctions go to the very heart of our judicial process and the orderly administration of justice. That system is dependent upon the faith that litigants and their counsel will abide by the rules and play fairly, or suffer the consequences. If a party is allowed to intentionally destroy relevant evidence, either entirely on his own, or as the result of his counsel's negligence or willful blindness, without being made to face the full consequences of his actions, the entire system suffers. It is absolutely vital that this Court avoid condoning complacent litigants and counsel with regard to discovery obligations and protect the judicial process by awarding the proper measure of sanctions against Defendant and his counsel, thereby restoring the faith that the rules will be followed. For at least

these and the other reasons set forth herein and Plaintiff's opening Motion and Memorandum, Plaintiff respectfully requests that its Motion for Entry of Sanctions [dkt # 126] be granted in full.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ Frank B. Janoski
    Frank B. Janoski, #3480
    Bridget Hoy, #109375
    David A. Weder, #5212905
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Fax: (314) 612-1307
Email: fjanoski@lewisrice.com
Email: bhoy@lewisrice.com
Email: dweder@lewisrice.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I further certify that on the 8th day of April, 2009, the foregoing was filed with the Clerk of Court to be served via the Court's ECF system upon all counsel of record.

/s/ Frank B. Janoski
Frank B. Janoski, #3480
LEWIS, RICE & FINGERSH, L.C.
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
Facsimile: (314) 612-1307
Email: fjanoski@lewisrice.com